## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUZ GONZÁLEZ BERMÚDEZ** | **CIVIL NO. 14-** |
| **Plaintiff** | |
| **v.** | **AGE DISCRIMINATION; RETALIATION; DAMAGES** |
| **ABBOTT LABORATORIES P.R. INC; KIM PÉREZ** | **TRIAL BY JURY DEMANDED** |
| **Defendants** | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Luz González Bermúdez ("González"), through the undersigned attorneys, and very respectfully alleges, states and prays:

### I. NATURE OF THE ACTION AND JURISDICTION

1. This action is brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 601 *et seq.*, Puerto Rico's Law No. 100 of June 30, 1959, 29 L.P.R.A. § 146 *et seq.*, ("Law No. 100"), Puerto Rico's Law No. 115 of December 20, 1991, 29 L.P.R.A. § 194 *et seq.*, ("Law No. 115") seeking compensatory, double and liquidated damages and equitable and injunctive relief to seek redress for defendants' discrimination on the basis of age and retaliation against González.

2. This court has jurisdiction to entertain this action pursuant to Section 7 of the ADEA, 29 U.S.C. § 626(c)(1), and under 28 U.S.C. §§ 1331 and 1343(a)(4). Its supplemental jurisdiction is also invoked pursuant to 28 U.S.C. § 1367(a) to hear the Commonwealth of Puerto Rico law claims because these are so related to the other claims as to which this court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

1

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1) and (2), as the defendants reside in Puerto Rico and all the discriminatory employment practices alleged were committed within the judicial district comprising the Commonwealth of Puerto Rico.

4. González filed a timely charge of employment discrimination on the basis of age and retaliation with the Anti-Discrimination Unit of the Department of Labor ("ADU") on October 29, 2013.   The charge number with the ADU is uadau13-715C and the charge number at the Equal Employment Opportunity Commission ("EEOC") is 16H-2014-00078C.   Subsequently, González filed another charge of retaliation before the EEOC on March 17, 2014.   The charge number is 16H-2014-00409C.   After more than sixty (60) days had elapsed since each of the charges was filed, González requested that the EEOC issue the corresponding Notice of Right to Sue as to each charge.

## II. THE PARTIES

5. González is a citizen of the United States and a resident of Cataño, Puerto Rico, who began working for Abbott Laboratories P.R., Inc. in November 1984.

6. González was born on June 6, 1960.

7. At all relevant times, González was an employee under the provisions of ADEA, 29 U.S.C. § 630 (f), and is within the protected class under ADEA, 29 U.S.C. § 631(a).

8. González is an employee under all of the federal and local statutes upon which she bases her request for relief.

9. Co-defendant Abbott Laboratories P.R., Inc. ("Abbott") is, and at all times hereinafter mentioned was, a corporation duly created under the Laws of and with its principal place of business in the Commonwealth of Puerto Rico.

2

10. Abbott is a for profit corporation registered with the Commonwealth of Puerto Rico Department of State.

11. At all times relevant herein, Abbott has been González' employer.

12. Abbott is a "person" within the meaning of 29 U.S.C. § 630(a).

13. Abbott is an "employer" under the ADEA, 29 U.S.C. § 630(b).

14. Abbott is engaged in an "industry affecting commerce" within the meaning of 29 U.S.C. § 630(h).

15. Abbott employs more than twenty (20) employees on a daily basis as the term is defined in 29 U.S.C. § 630(b).

16. Abbott is an "employer" under Puerto Rico Law No. 100.

17. Abbott is an "employer" under Puerto Rico Law No. 115.

18. Co-defendant Kim Pérez ("Pérez") was, at all times relevant to this complaint, Marketing Manager at Abbott and González' immediate supervisor.

19. Pérez was recently promoted to the position of General Manager, which was previously held by Matthew Harris.

20. Pérez is an "employer" under Laws Nos. 100 and 115.

21. All co-defendants may be collectively referred to as "defendants".

### III. THE FACTS

22. González repeats and incorporates by reference each and every preceding allegation as if fully set herein.

23. González was born on June 6, 1960 and is within the protected class under the ADEA.

24. González obtained a Bachelor of Sciences degree with a specialty in Nutrition.

25. González began working for Abbott on November 1984 as a Medical Representative.

3

26. Abbott uses a grade system to classify its employment positions. The positions are classified by grade numbers.

27. In 2007, González' position at Abbott was that of Health Care Professional ("HCP") Business Unit Manager, which was Grade 17.

28. In 2008, González was changed to the position of HCP National Sales Manager, which was also Grade 17.

29. On April 20, 2009, González remained in the position of HCP National Sales Manager, but she was promoted to Grade 18.

30. At Abbott, a promotion to Grade 18 signifies an increase in salary and a right to receive stock options, among other benefits, as part of the compensation.

31. Abbott provides its employees with yearly written work performance evaluations.

32. González' work performance evaluation at Abbott corresponding to the year 2009 reflected that González "Achieved Expectations" during said year.

33. In October 2010, González was notified by Abbott that her position had been eliminated and that she would no longer belong to the group of leaders of her division.

34. Together with the elimination of González' position, Abbott disposed of two District Manager positions.

35. These two positions were occupied at the time by Rocío Oliver ("Oliver") and Dennis Torres ("Torres").

36. The District Manager positions held by Oliver and Torres were classified as Grade 15 positions.

37. González was informed that she would be transferred to Abbott's marketing group, under the supervision of Pérez, and that this would be effective in January 2011.

38. González' work performance evaluation at Abbott corresponding to the year 2010 reflected that González "Achieved Expectations" during said year.

39. In January 2011, Pérez began to supervise González.

40. Prior to January 2011, Pérez' position was in the same hierarchical position as that of González.

41. Pérez has less seniority than González at Abbott.

42. Pérez was born on or after 1970.

43. Upon becoming González' immediate supervisor, Pérez began to pressure González and to treat her in a hostile manner.

44. Pérez would treat González differently than she would treat the Abbott employees who were substantially younger than González.

45. As a result of Pérez' hostile and discriminatory behavior, González had to begin treatment with a psychiatrist, Dr. Fernando Martínez, on September 8, 2011.

46. On November 28, 2011, González filed a formal complaint of hostile work environment and discrimination at Abbott's Human Resources Department.

47. González had been emotionally injured as a result of Pérez' hostile and discriminatory treatment.

48. As a result, González had to submit herself to treatment with the Puerto Rico State Insurance Fund Corporation ("SIFC") on December 28, 2011.

49. The SIFC recommended that González take medical leave.

50. González was on medical leave until June 8, 2012, when she resumed her work at Abbott.

51. In July 2012, approximately one month after González returned to Abbott, González received a work performance evaluation.

52. The work performance evaluation had been completed by Pérez, González' immediate supervisor.

53. In this work performance evaluation, Pérez rated González' work performance as "Partially Achieve" ("PA").

54. During the entirety of her employment at Abbott, this was the first occasion in which González received a "PA" rating.

55. There was no valid reason and/or justification for the "PA" rating because González had met all of her employer's expectations.

56. Defendants' rating of González' work with a "PA" constitutes discrimination against González because of her age.

57. González' substantially younger counterparts were not rated "PA".

58. Furthermore, the rating of González' work "PA" was in retaliation against González for having filed an internal formal complaint of discrimination by Pérez and Abbott and for having reported to the SIFC for treatment.

59. Pursuant to Abbott's policies, the "goals" portion of work performance evaluations accounts for 80% of the evaluation.

60. A rating of 100% is given to those employees who "achieve expectations".

61. A rating of 50% is given to those employees who "partially achieve" expectations.

62. A rating of 0% is given to those employees who "do not achieve" expectations.

63. González was not evaluated in accordance to these policies because she was granted no points.

64. Conversely, those employees who were similarly situated to González and substantially younger than her, were given points in specific portions of their evaluation.

6

65. The points given to González' peers in their evaluations positively contributed to their performance ratings.

66. Defendants used an all-or-nothing approach in the assignment of points in the preparation of González' evaluation in order to justify the "PA" rating.

67. The application of that unique approach in González' evaluation was intended by defendants to discriminate and retaliate against her for having filed an internal formal complaint for discrimination and for reporting for treatment at the SIFC.

68. If González had not unjustly been deprived of the evaluation points to which she was entitled, she would have received an "Achieves Expectations" rating pursuant to Abbott's evaluation policies.

69. As an inevitable result of the "PA" rating, González did not receive an increase in salary.

70. That result was mandated by Abbott's policies.

71. The name of the position that González held at Abbott while under the supervision of Pérez and until March 19, 2013 was that of "Manager, HCP, Institutional Marketing".

72. When González was assigned to this position in January 2011, she was informed by Abbott's Human Resources Director, Nancy Blay ("Blay"), that the Grade number assigned to the position was "18 I".

73. The numbers that are used to classify positions at Abbott usually do not have letters next to them.

74. According to Blay, in the case of the "18 I" position which González held from January 2011 until March 19, 2013, the letter "I" next to the number meant that the position was "Incumbent".

7

75. This meant that González would occupy it for a period of approximately two (2) years and that, during that period, Abbott would assess the need for the position without changing the salary that corresponded to it and, upon conclusion of the two-year period, Abbott would re-evaluate the position *within the corresponding numerical classification*.

76. When González was originally assigned to an "18 I" position in January 2011, González asked Blay whether or not González' assignment to that position was a demotion.

77. Blay responded to González by claiming that it was not a demotion.   However, Blay stated that she did not know if there would be a Grade 18 position for González during the two-year period.

78. Blay further added that, pursuant to the Job Description of the "18 I" position to which González was assigned in January 2011, its real classification was Grade 17.

79. Despite Abbott's claim that the assignment of González to an "18 I" position was not a demotion and despite Abbott's policy that, after the expiration of the two-year period, an employee holding an incumbent ("I") position would be reclassified within the same numerical class, once the two-year period expired (in March 2013), González was demoted to a Product Manager position.

80. The Product Manager position was classified at Grade 15.

81. Miriam Adames ("Adames"), Human Resources Representative at Abbott, notified González that she would be occupying this Grade 15 position.

82. González would begin occupying this position on March 18, 2013.

83. González met on March 19, 2013 with Adames and Pérez because the two-year period of González' "Incumbent" appointment had expired.

8

84. During this meeting, González asked why she had not been assigned to a *Senior* Product Manager position, rather than a Product Manager position.

85. The Senior Product Manager position was Grade 16.

86. Pérez responded that "there were no Senior positions available".

87. Contrary to Pérez' representations, Senior positions at Abbott are not assigned based on availability, but rather, they are assigned to employees based on the execution of their duties.

88. The assignment to a Senior status means that the employee remains in the same position, but is moved up in the pay scale.

89. The new position to which González was demoted was lower than the position occupied at that point by Marisabel Aponte ("Aponte"), who was a Senior Product Manager at that moment, and held a Grade 16 position.

90. Aponte was a peer of González in the marketing division, under Pérez' supervision.

91. Aponte was between 33 and 36 years of age at all times relevant to this complaint.

92. González has more seniority than Aponte at Abbott.

93. As a result of being demoted from the Grade 18 to the Grade 15 position, González' yearly salary was reduced from $120,000.00 to $110,700.00.

94. As a result of being demoted from the Grade 18 to the Grade 15 position, González' annual incentive at Abbott was reduced from $25,000.00 to $12,500.00.

95. As a result of being demoted from the Grade 18 to the Grade 15 position, González lost the right to stock options at Abbott.

96. As a result of being demoted from the Grade 18 to the Grade 15 position, González' car level was reduced from 4 to 3.

97. González' demotion to the Grade 15 position, and defendants' decision to place González in a Product Manager position rather than a Senior Product Manager position, were all done with the purpose of discriminating and retaliating against González for having engaged in protected conduct.

98. When the meeting with Adames and Pérez concluded, González went to the offices of Dr. Rosángeles Santiago.

99. Santiago is an occupational physician at Abbott.

100. After evaluating González, Dr. Santiago referred her to the SIFC, where her case was still open.

101. On March 20, 2013, González went once again to receive treatment at the SIFC.

102. The SIFC ordered González to rest until July 20, 2013.

103. On April 3, 2013, while González was resting pursuant to the SIFC's orders, Abbott sent her a letter warning her to report to Abbott's Human Resources Office.

104. The letter stated that if she did not report to Human Resources by April 8, 2013, she would be terminated from employment on April 9, 2013.

105. Despite the SIFC's order for González to rest until July 20, 2013, she reported to work on April 9, 2013, in order to make sure that she would not lose her employment.

106. Abbott's letter dated April 3, 2013 to González constituted an unlawful and retaliatory attempt to pressure González and to try to terminate her from employment.

107. González filed a charge of employment discrimination on the basis of age and retaliation with the ADU on October 29, 2013.

108. The charge number with the ADU is uadau13-715C and the charge number at the Equal Employment Opportunity Commission ("EEOC") is 16H-2014-00078C.

10

109. On November 18, 2013, González sent a letter to Matthew Harris ("Harris"), who at that point was the General Manager at Abbott.

110. In her letter, González informed Harris that she had received information that Abbott, through Pérez, was seeking to recruit someone from outside Abbott to occupy a Product Manager position, with Senior status.

111. This is a Grade 16 position.

112. González further informed Harris that she had not been notified that this position was available, and that the failure to inform her of the same constituted age discrimination and retaliation for having filed an administrative complaint of retaliation against defendants.

113. González also informed Harris that she was being sidelined by Pérez from access to information and meetings in which González should have been a participant.

114. González also requested that she be considered for the Senior Product Manager position.

115. González applied for the Senior Product Manager position.

116. In spite of González' request to Harris and of the fact that she applied for the position, on February 21, 2014, Abbott recruited Glorimar Molina ("Molina") to occupy the position of Senior Product Manager of PediaSure.

117. Molina is substantially younger than González.

118. González has more seniority than Molina at Abbott.

119. Defendants' choice of Molina over González to occupy the position of Senior Product Manager of PediaSure constitutes discrimination against González due to her age and retaliation for having filed a charge of discrimination and retaliation against them.

120. On February 27, 2014, Pérez gave González the evaluation of González' work performance corresponding to the period of January-December 2013.

121. Pérez once again rated González' work performance as "PA".

122. There was no valid reason and/or justification for the "PA" rating because González had met all of her employer's expectations.

123. Defendant's rating of González' work as "PA" constituted further discrimination against González because of her age.

124. González' similarly situated and substantially younger peers were not rated as "PA".

125. Furthermore, the rating of González' work as "PA" was in retaliation against González for having filed a claim of age discrimination and retaliation against defendants.

126. In March 2014, Abbott laterally transferred Vickybel Rosario ("Rosario") to the position of Senior District Manager of the Pediatrics Division.

127. Rosario is substantially younger than González.

128. The position to which Rosario was laterally transferred was Grade 16.

129. The position to which Rosario was transferred is a position that González had satisfactorily occupied at Abbott in the past.

130. Rosario's transfer entailed an increase in her compensation.

131. The position to which Rosario was promoted was not announced and/or published at Abbott.

132. The position was offered by Abbott to Rosario.

133. Rosario did not request to be considered for the Senior District Manager of the Pediatrics Division.

134. Defendants did not publish and/or announce that the Senior District Manager of Adults position was available so that older employees, such as González, would not be able to apply for it.

135. In March 2014, Abbott promoted Rocío Oliver to another Senior District Manager position.

136. Contemporaneously with Oliver's promotion, Dennis Torres was also promoted to a position of Category Manager.

137. Oliver and Torres are substantially younger than González.

138. The positions to which Oliver and Torres were promoted were each Grade 16.

139. The position to which Oliver was promoted is a position that González had, satisfactorily occupied at Abbott in the past.

140. The position to which Oliver and Torres were promoted were not announced and/or published at Abbott.

141. Oliver and/or Torres did not request to be considered for the positions they came to occupy.

142. The positions were each offered by Abbott to Oliver and to Torres.

143. Oliver and Torres occupied the other two positions that were allegedly eliminated by Abbott when González' was also eliminated.

144. Of the three employees affected by the elimination of positions in 2011, González was the oldest.

145. Of the three, González was the only whom Abbott did not promote after the elimination.

146. Defendants did not publish and/or announce that the Senior District Manager for Pediatrics position which was given to Oliver was available so that older employees, such as González, would not be able to apply for it.

147. In early 2014, González had applied for Regional Sales Manager, a Grade 18 position.

148. González was not even interviewed by defendants for the Regional Sales Manager position.

149. On March 11, 2014, González sent an e-mail to Harris in which she stated that the fact that she was not interviewed or even considered for the position was further evidence of age discrimination and retaliation.

150. In her e-mail to Harris, González also asked that, since she had heard that Abbott would be appointing Glamary Pérez to occupy the position of Regional Sales Manager, González be appointed to Glamary Pérez' Grade 16 position of Senior District Manager, which would become vacant.

151. González further told Harris that she was fully qualified to occupy this position, since she had performed the duties of this position in the past.

152. Defendants did not select González to occupy the Senior District Manager position.

153. Instead defendants selected a substantially younger employee to occupy the same, in further discrimination and retaliation against González.

154. On March 11, 2014, González sent an e-mail to Abbott's Employee Relations Senior Specialist, Yolita González, with copy to Harris and Pérez.

155. In González' e-mail to Yolita González, González requested that she be allowed access to her e-mails at Abbott corresponding to the period between January to December 2013.

156. González specifically stated that she needed access to these e-mails as part of her efforts to demonstrate to Abbott that the "PA" evaluation that had been given to her for the period corresponding to January-December 2013 was unjustified.

157. Ten days later, on March 21, 2014, Yolita González denied González' request.

158. Defendants barred González from access to her e-mails corresponding to January to December 2013 so that González would not have access to documentary evidence which may support her causes of action of age discrimination and retaliation against defendants.

14

159. On Monday, March 17, 2014, González filed another charge of retaliation against defendants at the EEOC, in which she stated that she considered that defendants had engaged in further retaliation against her after she filed her charge of October 2013.

160. One day later, on Tuesday, March 18, 2014, Pérez assigned a project to González regarding a price auction for a hospital.

161. The project pertained not only to products that fell under González' responsibilities, but also to products that pertained to the responsibilities of two other Product Managers.

162. Pérez set a deadline until Friday, March 21, 2014 at 9:00 A.M. for González to complete the project.

163. On Friday, March 21, 2014 at 8:10 A.M., Pérez asked González whether or not she was ready.

164. González responded to Pérez that she was almost finished.

165. Pérez told González that she would meet with her at 10:00 A.M. to discuss the project.

166. Rosana Vázquez ("Vázquez"), a medical representative of the hospital for which the auction would be made, was also going to be present during the meeting with González and Pérez.

167. By noon, since Pérez had not yet met with González, González asked Pérez whether or not they would meet, to which Pérez responded that they would meet at 2:00 P.M.

168. Vázquez arrived at Abbott that afternoon and entered through the back hallway, so that González would not see her.

169. However, González noticed that Vázquez had arrived because she heard her voice.

170. Pérez held the meeting regarding the auction with Vázquez and with Glamary Pérez.

15

171. Pérez purposely excluded González from the meeting, despite the fact that it was González who had been in charge of the project.

172. Pérez concluded the meeting at 5:15 P.M. and sent an e-mail to González in which she ordered González to include information about an additional product in what González had prepared.

173. Pérez then went to González' office and stated that the meeting had already concluded.

174. González complained to Pérez that she had been excluded from the meeting.

175. Pérez assigned González to work with products that were not part of González' responsibilities, and which corresponded to other Product Managers, in order to pressure González and to overload her with work, as part of her discriminatory and retaliatory campaign against González.

176. Furthermore, Pérez' decision to exclude González from the meeting in which the project that González was working on was discussed constituted an attempt to continue excluding González from her duties and from meetings at Abbott, in furtherance of her discriminatory and retaliatory campaign against González.

177. On May 12, 2014, Abbott announced that Harris was being transferred to a Vice President position.   Abbott also announced that Pérez would now occupy Harris' former position as General Manager.

178. Once Pérez was appointed as General Manager, Marisabel Aponte was promoted by Abbott to occupy Pérez' former Marketing Manager position.

179. Abbott's decision to select Aponte, rather than González, to occupy Pérez' former Marketing Manager position was because Aponte is younger than González, and in

retaliation against González for having filed charges of age discrimination and retaliation against defendants.

180. Again, defendants did not publish Marketing Manager position and hand-picked Aponte to occupy it.

181. This was a promotion for Aponte to a Grade 17 position, while González was left behind at Grade 15.

182. Aponte's promotion entailed an increase in compensation.

183. Defendants' conduct constitutes further age discrimination and retaliation against González.

184. As a result of defendants' discriminatory and retaliatory conduct, González has suffered severe emotional and economic damages.

185. Defendants are jointly and severally liable for all of the damages caused to González as a result of the discriminatory and retaliatory conduct related herein.

### IV. FIRST CAUSE OF ACTION (Age Discrimination Under ADEA)

186. González repeats and incorporates each and every preceding allegation as if fully set herein.

187. Abbott's conduct constitutes discrimination against González on the basis of age.

188. As a result of Abbott's discrimination against González, she is entitled to the losses in income proximately caused by Abbott's unlawful conduct.

189. As a result of Abbott's discrimination against González, she is also entitled to injunctive relief in the form of an order to defendants to cease and desist of any further discriminatory treatment against González, including her appointment to a Grade 16 or higher position.

### V. SECOND CAUSE OF ACTION (Willful Violation Under ADEA)

190. González repeats and incorporates each and every preceding allegation as if fully set herein.

191. Abbott's discriminatory practices against González were malicious and/or carried out with reckless indifference to her federally protected right to be free from discrimination and retaliation on the basis of age.

192. Abbott's conduct constitutes a willful violation of the ADEA, and as a result thereof, Abbott is liable to González for liquidated damages equal to twice the amount of her backpay, together with an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

### V. THIRD CAUSE OF ACTION (Age Discrimination Under Law No. 100)

193. González repeats and incorporates each and every preceding allegation as if fully set herein.

194. Defendants' conduct constitutes discrimination on the basis of age under Law No. 100.

195. González has suffered severe emotional and economic damages as a result of defendants' age discrimination.

196. Defendants are jointly liable to González for double the compensatory damages proximately caused to her as a result of their age discrimination against her, together with costs and attorneys' fees.

### VI. FOURTH CAUSE OF ACTION (Retaliation Under ADEA)

197. González repeats and incorporates each and every preceding allegation as if fully set herein.

198. González engaged in protected conduct under the ADEA when she opposed discriminatory practices by complaining at Abbott's Human Resources Department and filing administrative charges of age discrimination and retaliation before the ADU.

199. As a result of González' assertion of her rights, González was subjected to a slew of adverse employment actions, including denial of promotions, demotions, baseless work performance evaluations and a hostile work environment.

200. Defendants' conduct against González constitutes retaliation in violation of the ADEA.

201. As a result of defendants' retaliation against González, Abbott is liable to González for economic damages.

## VII. FIFTH CAUSE OF ACTION (Retaliation Under Law No. 115)

202. González repeats and incorporates each and every preceding allegation as if fully set herein.

203. González engaged in "protected conduct" under Law No. 115 when she reported for treatment to the SIFC and when she filed administrative charges of age discrimination and retaliation against defendants before the ADU and the EEOC.

204. As a result of engaging in protected conduct, defendants retaliated against González in violation of Law No. 115.

205. González has suffered severe emotional and economic damages as a result of defendants' retaliation against her.

206. Defendants are liable to González for double the compensatory damages proximately caused to González as a result of their retaliation against her, together with an award of costs and attorneys' fees.

## VIII. DEMAND FOR JURY TRIAL

207. González hereby demands that all of her causes of action be tried before a jury.

**WHEREFORE**, all premises considered, González prays from this Honorable Court the following relief:

19

1.   An order directing defendants to cease and desist of any further discriminatory and/or retaliatory conduct on the basis of age against González, including her appointment to a Grade 16 position or higher;

2.   Liquidated damages equal to González lost income as a result of defendants' discrimination and/or retaliation pursuant to the ADEA;

3.   Compensatory damages in an amount not less than $500,000.00;

4.   An award of double compensatory damages under Law No. 100;

5.   An award of double compensatory damages under Law No. 115;

6.   An award of reasonable attorneys' fees, together with costs, litigation expenses and necessary disbursements;

7.   Prejudgment interests; and

8.   Any other remedies which this court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 11th day of August, 2014.

**LAW OFFICE OF CARLOS VERGNE**
24 Mariana Bracetti St., 2nd Floor
San Juan, PR 00918
Tel. (787) 753-3799
Fax (787) 759-8429
e-mail: carlosvergne@aol.com

**GONZÁLEZ MUÑOZ LAW OFFICES, PSC**
P.O. Box 9024055
San Juan, PR 00902-4055
Tel. (787) 766-5052
Fax (787) 766-5551
e-mail: polonorteprlaw@gmail.com,
jrgmlaw@gmail.com

*S/Carlos M. Vergne Vargas*
CARLOS M. VERGNE
USDCPR No. 209611

*s/Juan Rafael González Muñoz*
JUAN RAFAEL GONZÁLEZ MUÑOZ
USDCPR No. 202312