## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUZ GONZÁLEZ BERMÚDEZ, <br><br> Plaintiff, <br><br> v. <br><br> ABBOTT LABORATORIES P.R. INC.; KIM PÉREZ, <br><br> Defendants. | Civil No.: 14-1620 (PG) |

## MOTION AND MEMORANDUM OF LAW FOR A NEW TRIAL

**COME NOW** Defendants, Abbott Laboratories P.R., Inc. ("Abbott" or the "Company"), and Kim Pérez ("Mrs. Pérez"), through counsel, timely move for a new trial or alternatively for remittitur, under Rules 50(b), 59(a) and 59(e) of the Federal Rules of Civil Procedure, within 28 days after entry of the Final Judgment on November 1, 2016 (Dkt. No. 150).

## I.    INTRODUCTION AND RELIEF REQUESTED

This Court should set aside the Judgment and order a new trial on all issues of liability and damages, on the following grounds: (a) Plaintiff's counsel made unfairly prejudicial and improper statements about the credibility of Defendant's witness Mr. Matt Harris and misrepresented evidence during closing argument that poisoned the jury's verdict; (b) the Court committed legal error by refusing to instruct the jury on Defendants' statute of limitations defense that precluded liability and recovery of damages for any adverse employment acts on or before January 1, 2013; (c) the damages awards of back-pay and emotional distress are wildly excessive, beyond any rational appraisal of the evidence, are punitive in nature, and shocking to the conscience, and must be vacated as a miscarriage of justice, or alternatively, remitted; and (d) the clear weight of the evidence is such that no reasonable juror could have found liability for age discrimination or retaliation based on the admissible evidence at trial that, when coupled with the cumulative effect of all the other errors, mandates a new trial on all issues.

1

## II.      APPLICABLE STANDARD FOR NEW TRIAL OR REMITTITUR

A court's "power to grant a motion for a new trial is much broader than its power to grant a JMOL [judgment as a matter of law]." Jennings v. Jones, 587 F. 3d 430, 436 (1st Cir. 2009). A new trial may be warranted if "the verdict is against the weight of the evidence" or if "the action is required in order to prevent injustice." Id. at 436. With respect to the damages awards, the court has wide discretion to set the verdict aside and order a new trial, or "order a remittitur if such an action is warranted in light of the evidence adduced at trial." Trainor v. HEI Hosp., LLC, 699 F.3d 19, 29 (1st Cir. 2012); Betancourt v. J.C. Penney Co., Inc., 554 F. 2d 1206, 1207 (1st Cir. 1997). "In reviewing an award of damages, the district court is obliged to review the evidence in the light most favorable to the prevailing party and to grant remittitur or a new trial on damages only when the award exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it." Wortley v. Campli, 333 F. 3d 284, 297 (1st Cir. 2003) (citation omitted). A jury's verdict on damages will be vacated when it is grossly excessive, inordinate, shocking to the conscience or so high that it would be a miscarriage of justice to let it stand. Betancourt, 554 F.2d at 1209; McDonald v. Fed. Labs., 724 F. 2d 243, 246 (1st Cir. 1984).

## III.      ARGUMENTS AND AUTHORITY

### A. Plaintiff's counsel's unfairly prejudicial statements during closing argument that Defendants' witness, Mr. Matt Harris, lied and a material misrepresentation of the evidence require a new trial on all issues.

The First Circuit has held that:

> [i]n assessing the effect of improper conduct by counsel, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.

Forrestal v. Magendantz, 848 F. 2d 303, 309 (1st Cir. 1988) (adopting Sixth Circuit's test; case citation omitted); Fonten Corp. v. Ocean Spray Cranberries, 469 F. 3d 18, 22 (1st Cir. 2006) (closing argument cases require a showing of prejudice for a new trial).

2

During her case in chief, Plaintiff's counsel questioned Ms. Luz Miriam Adames, Abbott's Human Resources ("HR") Director, extensively about an email from Mr. Matt Harris to Plaintiff dated March 19, 2014. (Pl. Ex. 21). Mr. Harris was Abbott's General Manager from 2011-2014. (Dkt. No. 153 at pp. 38-39). Mr. Harris stated in his email that, "during the last (3) three years we have been managing with [Plaintiff] several key competency issues that require significant improvement" and Plaintiff "consistently failed to meet Abbott's minimum expectations…". (Pl. Ex. 21; Dkt. No. 153 at pp. 49-53). Mr. Harris's email stated that Plaintiff was not qualified for a Regional Sales Manager position. (Id.; Dkt. No. 153 at pp. 45-46, 49-53). Mr. Harris also wrote that Abbott denied Plaintiff's allegations of retaliation or discrimination. (Pl. Ex. 21; Dkt. No. 130 at p. 117; Dkt. No. 153 at pp. 45-46). Plaintiff never responded to that e-mail. (Dkt. No. 130 at p. 117; Dkt. No. 153 at p. 53).

The seeds for Plaintiff's counsel's improper closing arguments, specified below, were planted early in the case. As a witness for Plaintiff, Ms. Adames answered extensive questions as to how Mr. Harris could have stated in his email that Plaintiff was not performing on core competency issues, if she did not receive "not achieve" expectations evaluations for three consecutive years. (Dkt. No. 125 at pp. 79-88 & 92-96). At the end of Ms. Adames's second day of testimony, after redirect, *the Court* resumed the topic of the March 19, 2014 email and interrogated Ms. Adames extensively on the issue, reiterated Plaintiff's counsel's loaded questions and *openly expressed "confusion"* after she finished testifying. (Dkt. No. 126 at pp. 68-72). Although a court is allowed to interject in the process of direct or cross examination to "throw light upon testimony or expedite the pace of a trial," the "judge's participation [in a trial] must be balanced; he cannot become an advocate or otherwise use his judicial powers to advantage or disadvantage a party unfairly." Logue v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997). "This is true even where a judge's innocently intended statements have 'impermissibly exceeded the limitations on his power to comment,'" because "[p]rejudice is always a risk when a judge comments during a trial." Owens v. U.S., 483 F.3d 48, 66-67 (1st Cir. 2007) (citations omitted).

During Defendants' case in chief, Mr. Harris testified that Plaintiff's evaluations, including the "achieve expectations" evaluation in 2012, reflected her overall performance, despite his assessment that her performance had been poor in certain key competency areas for three years in a row. (Dkt. No. 153 at pp. 52-53). Mr. Harris explained that Plaintiff could not be eligible for the Regional Sales Manager position because she had received an unsatisfactory "partial achieve" evaluation the year before, in 2013. (Id. at pp. 49-53; Pl. Ex. 21). In fact, the evidence was undisputed that Plaintiff received "partial achieve" overall ratings in the evaluations for 2011 and 2013. (Deft. Ex. S & V; Dkt. No. 130 at pp. 89-90; Dkt. No. 153 at pp. 52-53). Throughout cross-examination, Mr. Harris denied that any inconsistencies existed between his statements in the March 19, 2014 email and Plaintiff's job evaluations, or any other evidence in the case. (Dkt. No. 153 at pp. 74-75, 93-98 & 107-13). Also during cross-examination, Mr. Harris testified that Plaintiff had failed to take advantage of training opportunities offered to her by Abbott and had not signed up for a marketing training program. (Id. at pp. 124-25).

During closing argument, Defendants' counsel relied on the testimony admitted at trial of both Mr. Harris and Mrs. Kim Pérez to argue that Abbott had legitimate business justifications to promote other, more qualified candidates over Plaintiff, and that Plaintiff's job evaluations were unsatisfactory for two out of three years. (Dkt. No. 152 at pp. 95-102). Defendants argued that Plaintiff was advised that her performance at work needed improvement. (Id. at pp. 98-100). Defendants also argued that Mr. Harris testified that Plaintiff failed to take advantage of opportunities offered for improvement, such as her failure to sign up for Abbott's marketing training program. (Id. at p. 100). Defendants' counsel neither vouched for the credibility of any of the witnesses nor accused Plaintiff of lying.[1]

---

[1] Nothing was said by Defendants' counsel during closing that could have provoked or justified Plaintiff's counsel to call Mr. Harris *a liar* other than Plaintiff's own strategy to decide the credibility issue for the jury, after having failed to get any admissions from Mr. Harris on cross-examination. In fact, Plaintiff's counsel interrupted the flow of Defendants' closing argument at least four (4) times with meritless objections that, nevertheless, went either without a clear ruling on the record, or were reinforced as permissible by the Court in other ways. (Dkt. No. 152 at pp. 93-94, 98, 103 & 104). On another occasion, Plaintiff objected to a factually-correct statement that Plaintiff admitted on the stand that the two positions she had applied for required experience that Plaintiff did not have. (Id. at p. 97). The objection was sustained, even though Plaintiff's admission was irrefutably supported by the record. (Dkt. No. 130 at pp. 75-79).

Nevertheless, during rebuttal, Plaintiff's counsel strongly voiced his personal opinions about the credibility of Mr. Harris. Over Defendants' timely objection and without any provocation, Plaintiff's counsel, through loaded questions, affirmed **three times** to the jury during rebuttal that Mr. Harris **"lied"**:

> MR. GONZALEZ:   Can I have Plaintiff's 6 and 21 [the March 19, 2014 email], please, and 11 and 12.
>
> Ladies and gentlemen of the jury, since I sat down after completing my opening statement -- closing argument, one thing hasn't changed; they haven't produced a document, contemporary document, that proves that what they were saying is correct. Not one. Not one. I have four that I want to talk to you about.
>
> The first one is his statement was that Ms. Gonzalez had a bad performance for two years. **Is that what Mr. Harris says? Why do you have to lie? Why do you have to lie?**
>
> MR. CASELLAS:     Objection, Your Honor. Objection.
>
> THE COURT:   Denied.
>
> MR. GONZALEZ:     **Why do you have to lie** when giving a manual to an employee? ...

(Id. at p. 106) (emphasis added). A "lie" was not remotely an accurate description of anything that Mr. Harris said on the stand. Despite the clearly prejudicial nature of these statements, the Court failed to admonish Plaintiff's counsel and overruled Defendants' objection. (Id.) First Circuit precedent mandates a new trial for unfair prejudice caused to Defendants.

In Polansky v. CNA Insurance Company, 852 F. 2d 626 (1st Cir. 1988) ("Polansky"), plaintiff counsel's unprovoked attacks on the credibility of defendant's witnesses during the closing argument in a civil case were grounds for a new trial where, as here, defendant timely objected and the court gave an ineffective, untargeted, and untimely boilerplate jury instruction that "argument of counsel are not evidence." Id. at 628. "This was error." Id. "[S]tatements of counsel's opinions or beliefs have no place in a closing argument of a civil or criminal trial." Id.; U.S. v. Carter, 236 F. 3d 777, 785 (6th Cir. 2001) (prosecutor's attack in rebuttal that defense counsel lied about the testimony of a witness was plain

reversible error). In addition, the court's curative instruction must be both timely and "directed particularly to counsel's comments." Polansky, 852 F. 2d at 628.

The first factor to prove prejudice is the nature and severity of the remarks. Prejudice flows from Plaintiff's counsel's improper and unethical arguments in violation of the Model Rules of Professional Conduct (the "Model Rules") and the timing of the violation. Gilster v. Primebank, 747 F. 3d 1007, 1011 (8th Cir. 2014) ("Counsel made a deliberate strategic choice to make emotionally-charged comments at the end of rebuttal closing argument, *when they would have the greatest emotional impact on the jury, and when opposing counsel would have no opportunity to respond*.") (emphasis added). Plaintiff's counsel's argument to the jury that a witness has lied is one of the greatest sins that a trial lawyer can commit, and one that undermines the integrity of the court. Local Civil Rule 83 E (a) requires attorneys to comply with the Model Rules to "maintain the effective administration of justice and the integrity of the Court…" In turn, Rule 3.04(e) of the Model Rules commands that "*a lawyer shall not in trial, allude to any matter* that the lawyer does not reasonably believe is relevant or *that will not be supported by admissible evidence*, assert personal knowledge of facts in issue except when testifying as a witness, *or state a personal opinion as to* the justness of a cause, *the credibility of a witness*, the culpability of a civil litigant or the guilt or innocence of an accused." (Emphasis added). Plaintiff's rebuttal arguments are ethically wrong and indefensible.

A second factor supporting a showing of prejudice is the Court's failure to give a specific curative instruction. Gilster, 747 F. 3d at 1012. In Polansky, the First Circuit held that plaintiff counsel's closing remarks violated the rules of professional conduct and it was reversible error for the district court "by not dealing promptly with counsel's remarks, upon timely objection by opposing counsel, and informing offending counsel that his expression of personal beliefs or opinions would not be tolerated by the court." 852 F. 2d at 628. In that case, there were also repeated incidents of improper conduct by counsel throughout trial some of which, standing alone and even without a timely objection, would have been plain error requiring a new trial. Id. at 630. The cumulative impact of plaintiff counsel's improprieties in that case, as

6

here, compromised the integrity and fairness of the trial.[2] Id. at 632. The verdict was vacated and a new trial ordered on all issues. Id. at 633.

In this case, Plaintiff's counsel's improper and most damning of arguments came during closing and over Defendants' timely objections. In many respects, Plaintiff's lawyer's conduct in the present case was more egregious and inflammatory than in Polansky, where the lawyer had implicitly challenged the credibility of the witnesses and the court did not overrule Defendants' objections in front of the jury. Plaintiff's lawyer here did most of his damage during his rebuttal, after which Abbott had no opportunity to respond. U.S. v. Ayala-García, 574 F. 3d 5, 20 (1st Cir. 2009) ("…the rebuttal context increased the likelihood of prejudice because the improper remarks were among "the last words spoken to the jury by the trial attorneys") (citation omitted). In rebuttal, Plaintiff's lawyer explicitly and unambiguously accused Mr. Harris **three times of lying** over critical pieces of evidence supporting Plaintiff's unsatisfactory job evaluations and Abbott's business justifications for its employment actions. (Dkt. No. 152 at p. 106). Defendants immediately objected to the improper argument and the court overruled the objection. (Id.). This sounded the death knell to Defendants' case. For the jury hearing this, and not being instructed by the Court to disregard counsel's comments, *it could only have confirmed that Mr. Harris in fact lied and Defendants' liability on all counts was a foregone conclusion.*

---

[2] Plaintiff's counsel's improper remarks were by no means limited to the closing argument. In the opening, Plaintiff's counsel made an analogy that Matt Harris and Kim Pérez, who presided as judges over the oral presentation that Plaintiff was asked to give as part of the selection process for the Senior Product Manager position, were like the "goats guarding the lettuce" suggesting that Abbott's managers could not fairly judge Plaintiff's performance. (Dkt. No. 154 at p. 53). This remark motivated the jury to decide the case based on bias or prejudice. Another example was Plaintiff's counsel's gratuitous and argumentative remark in his cross examination of Mr. Harris, repeated in the closing, that Mr. Harris made employment decisions behind Plaintiff's back. (Dkt. No. 153 at pp. 94-96; Dkt. No. 152 at pp. 79, 86). During closing, Plaintiff's counsel also criticized Defendants' witnesses as misbehaving children. (Dkt. No. 152 at pp. 73-74). The trial would have been filled with constant interruptions had Defendants objected to each and every one of Plaintiff's counsel's instances of improper arguments. Suffice to say, that Defendants specifically and timely objected during closing to the two most important and prejudicial transgressions by Plaintiff's counsel of arguing about the untruthfulness of a witness's testimony and materially misstating the evidence. The rest of the transgressions throughout the one-week trial, when put together, add to the undue prejudice suffered by Defendants and qualify as legal or plain error in any case. See McWhorter v. City of Birmingham, 906 F.2d 674, 677-78 (11th Cir. 1990) ("A contemporaneous objection to improper argument is certainly the preferable method of alerting the trial court to the error and preserving such errors for review," but "'where the interest of substantial justice is at stake,' improper argument may be the basis for a new trial even if no objection has been raised") (citation omitted); see also Fonten Corp., 469 F.3d at 22-23.

There was more unfair prejudice coming to Defendants. Regardless of whether counsel's remarks were deliberate or not, a misstatement of a fact not in evidence is error. <u>U.S.</u> v. <u>Watson</u>, 171 F. 3d 695, 700 (D.C. Cir. 1999); <u>Davis</u> v. <u>Zant</u>, 36 F. 3d 1538, 1548 n. 15 (11th Cir. 1994); <u>see also</u> Rule 3.04(e), Model Rules; <u>Berger</u> v. <u>U.S.</u>, 295 U.S. 78, 84 (1935) (misstating facts is basis for new trial). Adding more harm to an already unfairly prejudicial closing, Plaintiff's counsel misstated testimony relevant to the issue of emotional distress damages. During Plaintiff's cross-examination, Defendants had elicited from Plaintiff an admission that she took a one-week cruise while on her second medical leave. (Dkt. No. 130 at pp. 127-128). Plaintiff also admitted attending Abbott's annual holiday parties (<u>Id.</u> at p. 135); to be feeling emotionally better over the past few years (<u>Id.</u> at p. 134); and to be achieving her employer's expectations at work during 2014-2015. (<u>Id.</u> at pp. 68-70). No medical records, medical expenses, or expert testimony were offered in evidence. (<u>Id.</u> at pp. 135-136). Plaintiff's testimony was relevant to prove that she had not suffered any permanent or severe emotional distress from any alleged acts of retaliation or discrimination. The jury had an undisputed factual basis from which to infer that the cruise was a joy ride taken by a plaintiff abusing her medical leave privileges, that is, until Plaintiff's counsel purported to debunk the inference with inadmissible evidence. Plaintiff's counsel ended his rebuttal closing statement with the assertion that Plaintiff took the cruise *on her doctor's advice or recommendation.* (Dkt. No. 152 at p. 108). Defendants timely objected to this statement as a mischaracterization of the evidence. However, not only did the Court overrule Defendants' objection, but assented in open court and in the presence of the jury, that Plaintiff lawyer's statement of the evidence was *correct*:

> MR. GONZALEZ: .... These documents are what I ask to you to base your verdict on. These are evidence. The case is not based on stories. The case is not based on interpretations. **What if the psychiatrist at the State Insurance Fund told her to go on a cruise to relax?**

> MR. CASELLAS: Objection; there is no foundation for that on the record.

> THE COURT: **Yes, there is testimony on the record; her testimony**.

(<u>Id.</u>) (emphasis added).

This surprising and unfairly prejudicial development was inconsistent with an evidentiary ruling that the Court had made during trial, concerning the inadmissibility under the Federal Rules of Evidence of any statements by non-testifying doctors or psychiatrists. (Dkt. No. 130 at pp. 7-8). *During trial, the Court had sustained Defendants' objection under Fed.R.Evid. 701 and excluded at trial any opinions by Plaintiff about psychiatrists' or doctors' diagnoses or recommendations as inadmissible hearsay or improper lay opinion.* (Id.) The Court should have stricken from the record Plaintiff's counsel's evident misstatement of the evidence.

The trial transcripts prove that there was no admissible evidence of any health care professional telling Plaintiff to take a cruise while on medical leave.[3] Unlike Polansky, where the district court did not overrule a contemporaneous objection to an improper argument during closing, the Court in this case overruled all of Defendants' objections in front of the jury and gave the judicial *imprimatur* to the statement, expressly validating to the jury Plaintiff's lawyer's mischaracterization of the evidence. See Whittenburg v. Werner Enter., 561 F. 3d 1122, 1132 (10th Cir. 2009) ("[t]he district court's decision to overrule the objection to counsel's argument and deem it appropriate was never undone and remained the most specific and timely guidance from the court to the jury with respect to the propriety of counsel's closing remarks"). It was only after the jury had been excused and moments later returned to the courtroom, that the Judge gave a general instruction, but still failed both to specifically reprimand Plaintiff's counsel for the clearly improper and unethical arguments and to instruct the jury to disregard those improper arguments. (Dkt. No. 152 at p.

---

[3] During a sidebar after the jury was excused, Defendants' counsel renewed the objection regarding Plaintiff's counsel's "liar" remarks, and requested the Court to issue a strong cautionary instruction for the jury to disregard the improper arguments. (Dkt. No. 152 at pp. 108-109 & 110-111). The Court fell far short of giving the specific and targeted curative instruction mandated by Polansky and applicable law. (Id. at 111). During the same sidebar, the Court remarked that Plaintiff's counsel's additional statements about the psychiatrist's recommendation to take the cruise had been established by the evidence. (Id. at pp. 109-110). Defendants' counsel replied that he differed from the Court's recollection of the facts admitted in evidence at trial, because the undersigned recalled Plaintiff had given that testimony in her deposition, not at trial. (Id.). The trial transcripts show that the only mention of the cruise ship vacation taken by Plaintiff during her second medical leave was in cross-examination, and at no point did Plaintiff bring up whether the cruise had been recommended by her doctor. (Dkt. No. 130 at pp. 127-128). Such testimony would have been, in any event, improper lay opinion and inadmissible hearsay, as explained above.

111) ("THE COURT: ... there was an argument to the effect that one of the witnesses lied, but as you will hear from my instructions, the credibility of the witnesses is up for you to decide.").

The Court's bland instruction amounted to no curative instruction at all. Polansky, 852 F.2d at 628. By then, severe and unfairly prejudicial damage had been done to Defendants' case. Plaintiff's counsel's improper closing arguments on issues relevant to liability and damages, and the Court's ineffective response, had a devastating and unfairly prejudicial impact on the minds of the jurors at the critical last stage of this case. In Forrestal, the manner in which the court treated the comments was a factor deserving weight. See 848 F.3d at 309-310. As noted, after the "lies" rebuttal argument, the Court overruled Defendants' objection and did not issue the Polansky curative instruction. The Court's treatment of the line of interrogation involving the March 19, 2014 email during trial emboldened Plaintiff's counsel to unethically cross the line at closing and, when he did, it was met with the Court's acquiescence or indifference. The jury was left to conclude that Mr. Harris lied. Case lost.

A third factor in the prejudice calculus is the size of the damages award. Gilster, 747 F. 3d at 1012. The back-pay award of $250,000 (before doubling)[4] (see Dkt. No. 138 at p. 2) was, at the very least, over **three times** the maximum award supported by the admissible evidence. As explained fully at Part III.C., *infra*, Plaintiff proved no damages for back-pay because she earned a higher annual compensation in the grade level 15 position than she would have earned in the grade level 17 position she expected to hold in March 2013. And, even if the back-pay calculation could be made against Plaintiff's annual compensation at the grade level 18(I) position that ceased to exist in March 2013, the award could not have exceeded a total of $26,378.19 for each of the three years at issue (2013-2016), totaling a maximum recoverable back-pay amount of $79,134.57. The back-pay award of $250,000 comes out of nowhere and can only be

---

[4] On October 27, 2016, Plaintiff filed a motion requesting that judgment be entered reflecting a doubling of the compensatory damages and back pay awards (Docket No. 143). On November 1, 2016, the Court granted Plaintiff's motion (Docket No. 149) and entered Judgment in the doubled amount of $8,500,000 in both pack-pay and emotional damages, plus $250,000 in liquidated damages (Docket No. 150). We note that the Court granted Plaintiff's motion for double and liquidated damages without affording Defendants an opportunity to oppose, despite having granted Defendants' request to that effect after the verdict was read in open court. (Dkt. No. 147 at pp. 6-7).

explained as resulting from an inflamed and emotionally aroused jury. More troubling, and far more pernicious, is the stupefying size of the award for emotional distress. The monstrous, excessive, and unconscionable size of the $4 million verdict for emotional damages (before doubling) – discussed fully below – is, without more, proof of the harm caused by Plaintiff's counsel's misdeeds during closing, and speaks volumes that the jury was infected to decide this case on an improper basis. Whittenburg, 561 F. 3d at 1132 ("…the size of a verdict—whether it is large or excessive—is a significant factor suggesting prejudice sufficient to require a new trial"). "[A]wards [specially those involving emotional distress] influenced by passion and prejudice are the antithesis of a fair trial." Whitehead v. Food Max of Miss., 163 F. 3d 265, 276 (5th Cir. 2003). Here, the jury's liability verdict and the excessive awards of damages were influenced by passion or prejudice.

Another factor in the analysis is the weight of the evidence, see Gilster, 747 F. 3d at 1012, and whether this was a close case, see Forrestal, 848 F. 2d at 309. To say that this case was closer than the jury's verdict suggests does not begin to describe the meagerness of Plaintiff's evidence to support her claim of discrimination. As explained fully in "Defendants' Renewed Rule 50(b) Motion for Judgment as a Matter of Law," Plaintiff's case hinged entirely on circumstantial evidence which, by itself, should have been insufficient as a matter of law to prove that age was the determinative factor in the employment decision at issue or that Defendants retaliated because of protected conduct. Where, as here, Plaintiff's counsel committed an ethical violation and misstated evidence relevant to liability and damages causing unfair prejudice to Defendants, and those deeds went unpunished by a timely curative jury instruction directed specifically against the improper arguments of Plaintiff's counsel, Polansky mandates a new trial. See also U.S. v. González, 558 F. 2d 631 (1st Cir. 1977); Gilster, 747 F. 3d at 1013. Defendants did not receive a fair trial. A new trial is required on all issues.

**B. An error omitting the statute of limitations instruction from the charge, and other pretrial and evidentiary errors, require vacating the Judgment and ordering a new trial.**

Affirmative Defense #2 in the Answer to Complaint pleaded the statute of limitations ("SOL") defense. (Dkt. No. 13 at p. 14). Failure to instruct the jury on a party's legal theories on controlling issues, when supported by the evidence and applicable law, is prejudicial and reversible error requiring a new trial. Sullivan v. Nat'l Football League, 34 F. 3d 1091, 1107 (1st Cir. 1994). The threshold inquiry is whether the instruction is correct; and if so, whether "viewing the instruction in the light most favorable to the proponent of the instruction, justifies jury consideration of the underlying issue." Butynski v. Springfield Term. Ry Co., 592 F. 3d 272, 276 (1st Cir. 2010). The standard was met here. The requested instruction should have been given.

Defendants moved on summary judgment, in relevant part, that Plaintiff's claims prior to January 1, 2013 were barred by the applicable statute of limitations. (Dkt. No. 42 at p. 8). In Puerto Rico, an individual must initiate discrimination claims under the ADEA by filing an EEOC charge no later than 300 days after the alleged discrimination. See 29 U.S.C. § 626(d)(2); Bonilla v. Muebles J.J. Álvarez, 194 F.3d 275, 277-278 (1st Cir. 1999). It is undisputed that Plaintiff filed her administrative charge of discrimination before the ADU and EEOC on October 29, 2013. (Dkt. No. 130 at pp. 30; Dkt. No. 43, SUF ¶ 29). As such, any alleged age-related incidents and acts of retaliation that occurred *on or before January 1, 2013* were time-barred as a matter of law.[5] Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980).

Although the Court denied summary judgment, it determined, as to the SOL defense, that Plaintiff "did not oppose this time-frame" of January 1, 2013. (Dkt. No. 106 at p. 22). The Court also ruled that Plaintiff's claims of a hostile working environment were deemed waived. (Dkt. No. 106 at p. 1 n.2). While opposing Defendants' Rule 50 motions at trial, Plaintiff further limited her age discrimination claim solely to the demotion in March, 2013. (Dkt. No. 152 at p. 3). Plaintiff's retaliation claim was circumscribed in time to the protected activity of reporting to the State Insurance Fund ("SIF") in March, 2013, complaining

---

[5] Pre-January 2013 evidence was, however, admissible as background for the defense that the transfer demotion in 2013, following a bona fide reorganization in 2010, was non-discriminatory and Plaintiff had already exhausted her medical leave privileges as a recidivist by March 2013, due to her first visit to the State Insurance Fund from November 2011 to June 2012. (Dkt. 129 at pp. 10-11; Dkt. 130 at pp. 80-81; Dkt. 155 at pp. 31-32; Dkt 130 at pp. 126-128; Dkt. 152 at pp. 91-92 & 94-95).

and filing charges of discrimination on and after October 2013, and the refusals to promote her in November 2013 and 2014.

During trial, Defendants requested a specific jury instruction that any and all actionable adverse employment actions or claims on or before January 1, 2013 were time-barred by the applicable SOL. See Dkt. No. 105 at p. 22 (Defendants' Proposed Jury Instruction No. 19 – Time Barred Incidents)[6]. This instruction correctly applied substantive law to the undisputed facts of the case. In fact, during the charge conference on the record, the Court *agreed*, over no objection, to give Defendants' proposed SOL instruction, except for the last sentence of the proposed version. (Dkt. No. 152 at pp. 58-59). On this basis, there was no objection to the verdict form or to the rest of the instructions. (Id. at pp. 14-15). At the close of all the evidence at trial, however, the court withdrew the page with the SOL instruction when charging the jury, and when Defendants objected, the Judge explained at a side bar conference that he would not give the SOL instruction because it would confuse the issues, since the Court had admitted pre-January 2013 evidence not as background evidence but as substantive evidence relevant to Plaintiff's claims. (Id. at pp. 134-136). This ruling not only came as a surprise after the close of all the evidence, but was inconsistent with both the summary judgment order finding that Plaintiff had waived pre-January 1, 2013 claims, and the instructions approved by the parties and the Court at the charge conference. Defendants specifically objected on the record to the Court's refusal to give the SOL instruction after the instructions were read but before the jury retired to deliberate. (Dkt. No. 151 at p. 2). The objection was preserved. See Fed.R.Civ.P. 51(c)(2).

The failure to give the SOL instruction permitted the jury to give weight to employment actions that were time-barred as a basis for liability and damages. Specifically, as can be determined from the Verdict Form, the jury found liability and awarded compensation for both age discrimination and retaliation for

---

[6] Defendants' proposed SOL instruction read: "A statute of limitations is a law providing that a suit is prohibited if a plaintiff does not bring it within a prescribed period of time. In this case, any alleged age related incidents that occurred on or before January 1, 2013 are subject to the applicable statutes of limitations of the laws under which plaintiff presents claims against defendants and therefore these incidents are time barred. As such, you may not consider any incidents that occurred on or before January 1, 2013 as evidence in this case." (Docket No. 105 at p. 22).

"complaining" or filing "charges of discrimination" and "reporting" to the SIF. (Dkt. No. 138). None of the interrogatories in the Verdict Form had a time restriction. None was circumscribed to alleged adverse employment acts that were *not* time-barred, *e.g.*, those *after* January 1, 2013. (Id.)[7] Not charging the jury with the SOL instruction created confusion and undue prejudice where none should have existed. Since the Court refused to give the SOL instruction, there is no way to read the jury's verdict narrowly to exclude time-barred actions or claims. Because Plaintiff made a complaint of harassment to Abbott's HR Department in November 2011 and reported to the SIF on her first medical leave from November 2011 to June 2012 (see Dkt. No. 130 at pp. 124-128 & 132-134; Dkt. No. 155 at pp. 59-60), the failure to give the SOL instruction had the prejudicial effect of allowing the jury to find liability and grant compensation for those time-barred "complaints" of harassment and retaliation for "reporting" to the SIF on her first medical leave, (see Dkt. No. 126 at pp. 26-30). What is more, Plaintiff testified that she was hospitalized during her *first* medical leave, whereas on her *second* leave she was on the cruise. (Dkt. No. 130 at pp. 126-128, 132-134). Without the SOL instruction, the jury was permitted to draw support for the award of emotional distress from Plaintiff's testimony that she was hospitalized because of her treatment by and her relationship with Mrs. Kim Pérez, *but all those acts or events were time-barred*. Because Plaintiff's complaint to HR also raised allegations of a hostile working environment (Dkt. No. 125 at pp. 8-10), and those claims were deemed waived on summary judgment (Dkt. No. 106 at p. 1 n. 2), the jury's verdict must be read as including a finding of liability and compensation for those waived claims.

Had the Court given the SOL instruction, as was Defendants' right and expectation after the charge conference, the jury would have been *prohibited* from considering Plaintiff's filing of the complaint and reporting to the SIF before January 1, 2013, or her hospitalization in 2011 as a basis for liability and damages. The Court's refusal to charge the jury with the SOL instruction was an error of law and a manifest

---

[7] We note that "[w]here a general verdict or special verdict question encompasses multiple claims or multiple theories of liability, one of which is unsupported by the evidence or otherwise defective, "a new trial is usually warranted."" Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 771 n.17 (1st Cir. 2010) (citations omitted).

abuse of discretion because it impermissibly allowed the jury to impose liability and award compensation for time-barred and allegedly adverse employment actions or claims pre-January 1, 2013. Wilson v. Maritime Overseas Corp., 150 F. 3d 1, 11 (1st Cir. 1998); see also Malone v. Lockheed Martin Corp., No. 07-065ML, 2009 WL 2151706, at *16 (D.R.I. July 16, 2009) (verdict against clear weight of evidence and new trial conditionally granted where evidence outside the applicable statute of limitations was presented to jury), aff'd, 610 F.3d 16 (1st Cir. 2010). Failure to give the SOL instruction affected the result of the jury's deliberations and mandates a retrial. Allen v. Chance Mfg. Co., 873 F. 2d 465, 469-470 (1st Cir. 1989). Where, as here, it is not possible to determine what portions of the damages awards were attributable to claims that were time-barred or not, and the court failed to instruct the jury on the cut-off date for SOL purposes, the damages awards must be vacated. Chin v. Port Auth. of N.Y., 685 F. 3d 135, 159 (2nd Cir. 2012).

Last, but not least, certain of the Court's pretrial rulings and errors in the admission of evidence at trial aggravated and compounded the undue prejudice to Defendants. While the court ultimately decided that there was no basis to charge the jury with an adverse inference instruction, the Court's amended summary judgment Opinion and Order granted Defendants' Motion for Reconsideration, only in part, permitting Plaintiff to introduce evidence at trial that was relevant solely to prove Defendants' bad faith or intent behind its litigation-hold policies and the loss or destruction of Plaintiff's e-mails. See Dkt. No. 106 at p. 22. Plaintiff made no threshold showing before trial and no evidence was introduced at trial proving that Defendants had *intentionally* destroyed any documents. Not only was an adverse inference instruction unwarranted but no sanction was appropriate. Booker v. Massachusetts Dept. of Health, 612 F. 3d 34 (1st Cir. 2010). The Court's amended ruling on the eve of trial was still a discovery *sanction* under Fed.R.Civ.P. 37(e)(1) for spoliation, see Virtual Studios, Inc. v. Stanton Carpet, 2016 WL 5339601 (N.D. Ga. 2016), and should not have been imposed, contributing to undue prejudice at trial. Because of the Court's pre-trial ruling allowing Plaintiff leeway to introduce evidence relevant only to spoliation, the jury heard ample

testimony about Abbott not preserving Plaintiff's e-mails for her to allegedly contest an unsatisfactory job evaluation.[8] (Dkt. No. 125 at pp. 59-60; Dkt. No. 126 at pp. 20-25 & 65-68; Dkt. No. 130 at pp. 129-130; Dkt. No. 153 at p. 87-90). Plaintiff's counsel argued this both in his opening and his closing. (Dkt. No. 154 at pp. 50; Dkt. No. 152 at p. 70). This testimony and argument by counsel were both inflammatory with the jury and irrelevant to any of the claims in the action, but for the Court's unjustified spoliation sanction.

Regarding the admission of evidence at trial, Defendants timely objected to the admissibility of Pl. Ex. 8 (lawyer's notice of age discrimination charge, dated October 15, 2013) (see Dkt. No. 126 at pp. 16-17; Dkt. No. 123 at pp. 13-14; Dkt. No. 130 at p. 30);[9] Pl. Ex. 20 (e-mail of March 11, 2014) (see Dkt No. 130 at pp. 62-66); and Pl. Ex. 30 (e-mail attachment of November 18, 2013) (see Dkt. No. 126 at pp. 37-41). The Court overruled the objections and admitted this evidence. (Id.) When read together, those communications contain unsubstantiated statements and conclusions of law made by counsel and plaintiff of "discrimination" concerning the "illegality" of Defendants' actions. They were inadmissible hearsay and improper lay opinions or should have been excluded as not probative or unfairly prejudicial. See Polansky, 852 F. 2d at 629; Fed. R. Evid. 401, 403, 701, 801. The error was not harmless. In sum, the spoliation evidence, the hearsay opinions of "illegal discrimination," the "lies" by Defendants' witness, the omission of the SOL jury instruction, and adding Plaintiff counsel's misstatement of the record to the evidentiary mix, produced the conflagration that can only serve to describe this Plaintiff's jury's verdict. A new trial serves the interests of justice.

---

[8] Tellingly, *after* all the evidence was presented and before the charge conference, Plaintiff filed a motion indicating that "[a]fter fully discussing the case" she had decided "not to press" on her request for an adverse inference instruction on spoliation. (Docket No. 124 at p. 3 n.2.).

[9] Defendants timely objected to the admissibility of Pl. Ex. 8 as covered by the Court's ruling in limine that evidence of charges presented to different administrative agencies was not to be offered. (Dkt. No. 126 at pp. 16-17). The Court initially sustained Defendants' objection (id.), but later admitted the exhibit into evidence (Dkt. No. 123 at pp. 13-14; Dkt. No. 130 at p. 30).

16

**C. The jury's damages awards of back-pay and emotional distress are excessive, unsupported by a rational appraisal of the evidence, shock the conscience, and must be set aside or, alternatively, remitted.**

Should the Court deny Defendants' motions for judgment as a matter of law and for a new trial on both liability and damages, Defendants alternatively move for the Court to set aside the jury's damages awards of back-pay and emotional distress, and order a new trial, because the amounts awarded by the jury are grossly excessive, unsupported by the evidence and letting them stand would be a miscarriage of justice. See Betancourt, 554 F.2d at 1209 n.5 (reversing for a new trial on damages where an estimation of the proper award would rest solely on speculation). In the alternative, the Court should reduce the grossly excessive awards for both back-pay and emotional distress, pursuant to the applicable "maximum recovery rule" authorized by the First Circuit, which allows the Court to direct a remittitur geared to the highest amount of damages for which there is adequate evidentiary support. Trainor, 699 F.3d at 33; Koster v. Trans World Airlines, Inc., 181 F.3d 24, 36 (1st Cir. 1999). If a remittitur is warranted, Plaintiff must decide whether to accept the reduced amount, or a new trial. Trainor, 699 F.3d at 33.

Back-pay is "intended to 'fully compensate a plaintiff in a manner that suits the specific facts of the case.'" Climent-Garcia v. Aut. de Transp. Maritimo, 754 F.3d 17, 22 (1st Cir. 2014) (citation omitted). Accordingly, "in cases where the evidence presented at trial shows damages to be limited in duration or offset by alternative income, … remittitur may be appropriate to avoid granting the plaintiff a significant windfall." Id. Further, recoverable back pay is limited by law to salary and other tangible economic benefits, such as salary increases or bonuses that Plaintiff did *not* receive as a result of the adverse discriminatory action, calculated from the date of her initial salary reduction to the date of entry of Judgment, and deducting any amounts Plaintiff has earned in the interim. The amounts so calculated must, perforce, be supported by admissible evidence on the record. See Meschino v. Int'l Tel. & Tel. Corp., 661 F. Supp. 254, 258 (S.D.N.Y. 1987); Oliveras-Zapata v. Univision P.R., 939 F. Supp. 2d 82, 85 (D.P.R. 2012); see also Dkt. No. 132 at p. 24 (Jury Instruction on "Back Pay").

17

There is no basis on the record for an award of back-pay in this case, much less one amounting to $250,000. Plaintiff admitted during trial that her transfer demotion in March of 2013 to the grade level 15 position (Product Manager), was from a grade level 18(I) position (HCP Institutional Marketing Manager) that was created for Plaintiff as a result of the 2010 company restructuring that would have otherwise resulted in her termination from employment. (See Dkt. No. 129 at pp. 11-14; Dkt. No. 130 at pp. 3-5 & 80-81; see also Pl. Ex. 1 & 2; Dkt. No. 125 at pp. 46-49). Plaintiff's testimony and the documents she submitted in evidence establish that Plaintiff accepted the terms of that 2010 assignment, effective January 10, 2011, with full knowledge that she would only remain at the 18(I) grade level for a period of two (2) years, at which time the status of her "I" grade assignment would be reviewed *and her grade would be adjusted to a grade appropriate for the position she was occupying at the time.* (Pl. Ex. 1; Dkt. No. 130 at p. 84). The record shows that the grade level 18(I) position was eliminated in March of 2013, both because the agreed-upon two-year term had elapsed and Plaintiff's own request upon returning from her second medical leave, that the tasks associated with that position be re-assigned to lessen her work load. (Dkt. No. 155 at pp. 60-65 & 67-68; Dkt. No. 130 at pp. 125-26). Notwithstanding, she testified that her expectation in March of 2013 was that she would be assigned to a *grade level 17 position*, commensurate with the position she had been performing for the last two years, and not the grade level 15 position she now occupies. (Dkt. No. 130 at pp. 3-4; see also Dkt. No. 125 at pp. 47-49).

Plaintiff never testified to the value of her expected compensation at the grade level 17 position. (Id.). The only admissible evidence on the record to support an amount for the award of back-pay consisted of Abbott's Answers to Interrogatories, which provided salaries and annual incentive amounts earned by different Abbott employees from 2012 to the present. (Pl. Ex. 29 at pp. 30-31; see also Dkt. No. 152 at p. 84 (Plaintiff relying on Pl. Ex. 29 at closing)). Every employee who has held a grade level 17 position at Abbott since 2013 has earned an annual compensation totaling $116,401 ($103,441 in annual salary + $12,960 for annual incentive) (see Pl. Ex. 29 at pp. 19, 22 & 30), whereas Plaintiff's annual compensation since 2013 at

the grade level 15 position totals $124,560 ($111,977 in annual salary + $12,583 for annual management incentive + $10,000 Christmas bonus) (id. at pp. 30-31; Dkt No. 130 at pp. 74-75). Since Plaintiff has been receiving a higher annual compensation than she would have received at a grade level 17 position,[10] there is no basis for an award of back-pay, much less one totaling $250,000.[11] Watlington v. U.P.R., 751 F. Supp. 318, 331 (D.P.R. 1990) ("[D]amages for back pay cease when the plaintiff begins to earn higher wages than what he would have received from his previous job.").

Plaintiff offered no other direct testimony about the value of her claim for back-pay; she offered no expert testimony to compute economic damages; and there is no admissible evidence of the stock options she claimed to have lost or the value of other incentives she claims to have received in the grade level 18(I) (e.g., higher car grade) and lost due to Abbott's purported failure to promote, even if the Court were to use that grade level for the back-pay calculation. (Dkt No. 129 at pp. 14-15, 22-23; Dkt No. 130 at pp. 71-72 & 136-137). See, e.g., Meschino, 661 F. Supp. at 258 (where plaintiff failed to present any evidence on an element of back-pay, such as the value of lost fringe benefits, no award for such benefits may be made; plaintiff "must demonstrate the actual benefits … he received, the amount [defendant] paid for those benefits, and losses incurred due to the loss of the benefits"); Watlington, 751 F. Supp. at 330 ("In such cases involving economic loss, the jury is free to select the highest figures for which there is an adequate

---

[10] The same conclusion applies, even if the differential were calculated against the other positions that Plaintiff contends she should have been chosen for. (See Pl. Ex. 29 at pp. 22 & 23) ("Senior Product Manager" at grade level 16: $110,000 in annual salary + $0 incentive = $100,000; "Regional Sales Manager" at grade level 18: $104,995 in annual salary + $8,704 in commission = $113,699). Plaintiff has been earning a higher annual compensation at grade level 15 than her co-workers at levels 16 and 18 in those other positions. (Id. at p. 30; see also Dkt. No. 130 at pp. 74-75).

[11] Even if Plaintiff's claim for back-pay were calculated based on the differential between her current salary since March 2013 at the grade level 15 position, and her salary at the grade level 18(I) position that ceased to exist in March 2013 (see Dkt. No. 130 at pp. 136-137), the amount of back-pay awarded would still have to be remitted to no more than $79,134.57. Plaintiff's annual compensation at the grade level 18(I) position totaled $145,834 ($116,834 in annual salary + $29,000 for annual management incentive) (see Pl. Ex. 29 at pp. 30-31), which amounts to a differential in annual compensation against the grade level 15 position of $21,274, plus potential annual pay raises of 3.5% (max.), or $5,104.19 annually (calculated from a presumed base salary of $145,834 at grade level 18(I)) (see id.; Dkt. No. 129 at pp. 22 & 24; Dkt. No. 130 at pp. 74-75 & 136-137; Dkt. No. 152 at p. 84). That amounts to a difference of no more than $26,378.19 per year for the past three years, totaling a maximum recoverable back-pay amount of $79,134.57 for the period 2013-2016. In other words, even based on this calculation, the jury awarded *an excess of roughly $170,865.43 in back-pay* to Plaintiff that is completely unsupported by the record or rests solely on speculation. See Betancourt, 554 F.2d at 1209 n.5 (remittitur may be appropriate in lieu of a new trial where it is possible to roughly compute the excessiveness of the verdict; an otherwise speculative award must be reversed for a new trial).

evidentiary basis, but it cannot go higher."). Plaintiff admitted on cross-examination that pay raises at Abbott were guidelines and performance bonuses were not automatic (Dkt No. 130 at pp. 136). There is no evidence on the record of what the differential is between the bonuses and raises she is currently eligible for in the grade level 15 position, and those she would have been able to receive in either the grade level 17 or 18(I) positions other than the evidence that Abbott provided. Nor is their other evidence of any economic loss by Plaintiff, since she received her full salary and benefits during her medical leave in March 2013. (Dkt. No. 130, at p. 128). Any amounts awarded by the jury based on anything other than the admissible evidence would be speculative and unsupported by the record. See Betancourt, 554 F.2d at 1209 n.5; Oliveras-Zapata, 939 F. Supp. 2d at 85 (new trial ordered on back-pay conditioned on remittitur of amount awarded above that supported by evidence, where Plaintiff's testimony and closing arguments limited back-pay calculus to lower amount than awarded).

Further, the back-pay amount could not, as a matter of law, include any other sums not specifically requested by Plaintiff, such as front pay, because those issues or claims were waived from Plaintiff's Complaint and Pretrial Order and not submitted for the jury's consideration in the case. See Ramos, 968 F. Supp. at 770-771 (front pay waived where no specific request was made in pretrial order or submitted to jury); Putnam Resources v. Pateman, 958 F.2d 448, 456 (1st Cir. 1992) ("Silence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections."); see also Dkt. No. 68 (Pretrial Order itemizing special damages as "loss of income as a result of being demoted from a Level 18 position to a Level 15 position, and of not being promoted to higher positions thereafter;" "Deprivation of stock options;" and "Lowering car level from 4 to 3"); Dkt. No. 138 (Verdict Form expressly limiting question 5 to "amount of *back pay*" recoverable as a result of "Abbott's age discrimination and/or retaliation") (emphasis added); Dkt No. 152 at pp. 14-16 (no objection to Verdict Form question 5); Dkt. No. 132 at pp. 24-25 (Jury Instruction awardable damages limited to "Back Pay" and "Compensatory Damages – Emotional").

This back-pay analysis also applies to the Court's award of $250,000 in liquidated damages (Dkt. No. 150). As argued in Defendants' separate Rule 50(b) motion, the evidence presented at trial is insufficient to support any finding of willful violations of federal law, which is a condition for an award of liquidated damages under 29 U.S.C. § 626(b). See Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 721 (1st Cir. 1994) (Section 626(b) "entitles a prevailing plaintiff to doubled *backpay* in situations involving 'willful violations'") (emphasis added). The award of liquidated damages should be vacated on that basis alone. Notwithstanding, the Court's award for liquidated damages must also be vacated because there is no basis on the record for a back-pay award on which to base liquidated damages. Id. At most, assuming the Court adopts the alternative back-pay calculation described at footnote 8, *supra*, the liquidated damages award must be remitted to no more than $79,134.57, which is the maximum amount awardable for back-pay that could be sustained on the admissible evidence. See, e.g., Watlington, 751 F. Supp. at 330 (re-calculating liquidated damages award based on remitted amount of jury verdict for back-pay); see also Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 30 (1st Cir. 2010) (alleged political discrimination could not form basis for a $1,000,000 punitive damages award in speech retaliation case, because it was unsupported by the evidence).

Turning to the astronomical emotional damages award of $4,000,000 ($3,000,000 - Abbott; $1,000,000 - Mrs. Pérez) (before doubling), it is clear from the evidence that the amount awarded is grossly disproportionate to the proven injury, far exceeds any rational appraisal or estimate of the damages that could be based on the evidence submitted to the jury, and is excessive as a matter of law. Koster, 181 F.3d at 36; Travers v. Flight Servs. & Sys., Inc., 808 F.3d 525, 540 (1st Cir. 2015). Plaintiff's *admissible* evidence of emotional damages,[12] considered in the light most favorable to Plaintiff, is limited to her testimony that she

---

[12] As argued at Part III.B., *supra*, Plaintiff's testimony that she had a psychiatric hospitalization during the medical leave she sought in 2011, was legally time-barred and could not form the basis for an assessment of liability or damage by the jury. Plaintiff was also barred from giving lay witness testimony of her medical conditions, beyond what she "felt." (Dkt No. 130 at pp. 7-8). To the extent that the jury's emotional damages award of $4,000,000 is only sustained by reference to inadmissible testimony or arguments by Plaintiff's counsel that were unsupported by the evidence, as explained *supra*, the award is unsupported by the proper record, requiring that it be vacated and a new trial ordered or remitted, as discussed herein.

sought medical leave in March of 2013 and went to the SIF, after which she was reinstated in the same position at Abbott in April of 2013, and received the same compensation and benefits (Dkt No. 130 at pp. 8-9 & 128); that (despite this) she "feared for her employment security," after receiving Abbott's letter in April of 2013 relating to exhaustion of the medical leave period and her need to return to work (id. at p. 72); and, finally, that she "feel[s] discriminated against" and "at a disadvantage" because "other people have been given opportunities" and "the process has not been fair" (id. at p. 73). To put it in her own words, "[b]asically, that's it." (Id. at p. 72).

Although Plaintiff also testified generally that she had "emotional damages" and continued to seek "psychiatric treatment" since her first discharge from the SIF, back in 2012 (id. at p. 134), she offered no testimony as to the nature of her psychiatric condition, or her symptoms post-2013. There is no evidence on the record that Plaintiff has suffered or continues to suffer conditions such as depression, anxiety, panic attacks, sleeplessness or insomnia. Cf. Monteagudo v. A.E.E.L.A., 554 F.3d 164, 168 & 174-77 (1st Cir. 2009) (affirming $333,000 award in sexual harassment case with evidence of male supervisor's aggressive behavior, intolerable work conditions, depression, nightly bouts of crying, and insomnia); Koster, 181 F.3d at 35-36 (affirming remittitur from $716,000 to $250,000 in age discrimination case with evidence of anxiety, insomnia, damaged family life and heartburn); Rodriguez–Torres v. Carib. Forms Mfg., Inc., 399 F.3d 52, 64 (1st Cir. 2005) (affirming $250,000 award in Title VII case with evidence of impact to marriage and long-term depression).

Plaintiff did not offer in evidence any medical records or medical expenses, *nor did she offer medical expert testimony* to buttress her claim of mental anguish. (Dkt No. 130 at pp. 134-135). In comparable cases where a plaintiff "did not introduce any testimony by a medical expert," "presented no notable evidence of outward manifestations of emotional distress," or "of long term depression or medical treatment," this Court and the First Circuit have found appropriate remittitur of damages awards to sums of $300,000, $200,000 and below $100,000. Aponte-Rivera v. DHL Sol. (USA), Inc., 650 F.3d 803, 811

(D.P.R. 2011) (remitting award from $350,000 to $200,000 in Title VII, P.R. Law 17, 19 and 100 case); see Sanchez, 37 F.3d at 724 (affirming remittitur from $150,000 to $37,500 in ADEA case with testimony of humiliation after losing job and bankruptcy, but no medical testimony of mental condition); see also De Leon Lopez v. Corp. Insular de Seguros, 931 F.2d 116, 125-26 (1st Cir. 1991) (remitting award from $800,000 to $110,000 in case against hospital for switching twins at birth, lacking expert testimony, or evidence of lasting physical or mental impairment). "Although testimony from a mental health expert is not required to sustain an award for emotional distress, the absence of such evidence is useful in comparing the injury to the award of damages." Koster, 181 F.3d at 35.

In other cases where the plaintiff presented no medical expert testimony, but did present evidence of concrete emotional distress and medical symptoms, the First Circuit nevertheless found awards ranging from $350,000 to $1,000,000 excessive, and remitted those awards to sums between $200,000 and $300,000, and at times less than $100,000, based on the maximum recovery rule. See Trainor, 699 F.3d 32-33 (remitting award from $1,000,000 to $200,000 in ADEA case with testimony of both plaintiff and wife that abrupt termination changed him as a person, caused *inter alia* emotional withdrawal, strain on marriage and depletion of retirement savings upon unemployment that threatened financial security); Travers, 808 F.3d at 539-42 (affirming remittitur from $400,000 to $50,000 in retaliation case with testimony that termination and stress from more work shifts caused embarrassment, loss of interest in family activities, strain with girlfriend and depression); cf. Nieves v. Mun. de Aguadilla, Civ. 13-01132, 2015 WL 3932461, *8 (D.P.R. 2015) (affirming remittitur from $3,000,000 to $300,000 in case with medical expert testimony and testimony of fear of dying from asthma attack linked to work conditions, emotional hardship for over four years, and side effects from medication).

The proven facts of this case are far weaker and would justify an even lower award, than in all the referenced cases. Aside from the meager evidence summarized above offered by Plaintiff to establish emotional distress, the record shows that Plaintiff was never terminated from her employment and has

23

continued to receive the full salary and benefits of the grade level 15 position since her demotion transfer in 2013. (Dkt. No. 130 at p. 74). Despite having sought medical leave in March 2013 because she "had emotional damages" (id. at p. 72), Plaintiff admitted in her cross-examination that she took a one-week cruise during that leave period, (id. at pp. 127-28), and the record is undisputed that Plaintiff received her full salary and benefits during the leave period, (id. at p. 128). Plaintiff further admitted to feeling better emotionally since 2013 (id. at pp. 70 & 134), to attending Abbott's annual holiday parties and kick-off meetings since 2014, and having a good time at those events (id. at p. 135). Plaintiff also testified that she has been achieving her employer's expectations at work from 2014 to 2015, under the purview of her new direct supervisor, with whom she feels more comfortable at work (id. at pp. 68-70).

Considering these facts against comparable cases, the jury's total award of $4,000,000 ($3,000,000 - Abbott; $1,000,000 - Mrs. Pérez) (before doubling) for emotional damages is so grossly disproportionate to the evidence of injury as to require a new trial. Betancourt, 554 F.2d at 1209. Alternatively, the Court must remit the total award to no more than $100,000 total ($90,000 - Abbott; $10,000 - Mrs. Pérez), which is the highest amount of damages for emotional distress for which there is adequate evidentiary support. Koster, 181 F.3d at 36. In addition, Defendants submit that the $1,000,000 awarded against Mrs. Pérez individually is both unsupported by the evidence and excessive. There is no evidence that Mrs. Pérez ever raised her voice, insulted, scorned, or humiliated Plaintiff. In fact, Plaintiff admitted that her working relationship with Mrs. Pérez was "cordial," "professional and politically-correct." (Dkt. No. 130 at pp. 122 & 124). Accordingly, there is no basis to impose any personal liability against Mrs. Pérez on these facts, and the award against her must be set aside in its entirety or remitted to no more than $10,000.

### D.  In the alternative, a new trial should be ordered for insufficiency of the evidence and the accumulation of all the prejudicial errors affecting the jury's verdict.

A court has discretion to grant a new trial when the verdict, as here, is against the weight of the evidence. Gasperini v. Ctr. for Hum. Inc., 518 U.S. 415, 433 (1996).  For the same reasons that would justify entry of a Judgment for Defendants as a matter of law, Defendants move for a new trial for

insufficient evidence of age discrimination and retaliation. The accumulation of errors briefed in both this Motion for a New Trial and "Defendants' Renewed Motion for Judgment as a Matter of Law," requires a new trial. U.S. v. Sepulveda, 15 F. 3d 1161 (1st Cir. 2010) (cumulative error doctrine as a basis for a new trial).

**WHEREFORE**, Defendants move for a new trial on all claims and issues of liability and damages. The Judgment and the Jury's Verdict must be vacated and set aside and a retrial ordered in the interests of justice. In the alternative, a remittitur is proper of the awards of back-pay and emotional damages, to amounts no higher than $79,134.57 and $100,000, respectively, with an equivalent remittitur of the liquidated damages amount corresponding to the reduced amount for back-pay.

**WE HEREBY CERTIFY** that on this date we presented the foregoing to the clerk of the Court for filing and uploading to the CM/ECF system, which sends copy of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 28th day of November, 2016.

**CASELLAS ALCOVER & BURGOS, P.S.C.**
*Attorneys for Defendants*
PO Box 364924
San Juan, PR  00936-4924
Tel. (787) 756-1400 / Fax (787) 756-1401

By:     *s/Ricardo F. Casellas Sánchez*
        Ricardo F. Casellas Sánchez
        USDC-PR No. 203114
        rcasellas@cabprlaw.com

By:     *s/Carla S. Loubriel Carrión*
        Carla S. Loubriel Carrión
        USDC-PR No. 227509
        cloubriel@cabprlaw.com

**O'NEILL & BORGES LLC**
*Attorneys for Defendants*
250 Muñoz Rivera Ave., Suite 800
San Juan, PR  00918-1813
Tel. (787) 764-8181 / Fax (787) 753-8944

By:     *s/ José Fco. Benítez-Mier*
        José Fco. Benítez-Mier
        USDC-PR No. 212507
        jose.benitez@oneillborges.com

By:     *s/ Alberto J. Bayouth-Montes*
        Alberto J. Bayouth-Montes
        USDC-PR No. 228313
        alberto.bayouth@oneillborges.com