## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUZ GONZÁLEZ BERMÚDEZ, <br><br> Plaintiff, <br><br> v. <br><br> ABBOTT LABORATORIES P.R. INC.; KIM PÉREZ, <br><br> Defendants. | Civil No.: 14-1620 (PG) |

### OMNIBUS REPLY TO PLAINTIFF'S
### "OMNIBUS OPPOSITION TO DEFENDANTS' POST-JUDGMENT MOTIONS"

**COME NOW** Defendants, Abbott Laboratories P.R., Inc. ("Abbott" or the "Company"), and Kim Pérez ("Ms. Pérez"), through counsel, and respectfully reply to Plaintiff's "Omnibus Opposition to Defendants' Post-Judgment Motions" (Dkt. No. 170), as follows:

### I.    All Post-Judgment Arguments and Theories were Preserved in Defendants' Rule 50 motions

Plaintiff does not contest that Defendants moved for entry of judgment as a matter of law after both the close of Plaintiff's case in chief and at the close of all the evidence. Plaintiff argues, nonetheless, that Defendants waived all their challenges to the sufficiency of the evidence of the jury's verdict of discrimination and retaliation, relying primarily on Rodríguez-Marín v. Rivera, 438 F.3d 72 (1st Cir. 2006) for the proposition that Defendants allegedly misapplied the relevant standard of review over a challenge to the sufficiency of the evidence supporting the jury's verdict, and therefore, waived the issue in their Rule 50(b) motion. Nothing could be further from the truth.

**First**, Defendants argued in all their motions that, even construing *all the evidence* in the light most favorable to the verdict winner, no reasonable juror could have found retaliation or discrimination, because age was not the *but-for* reason for the alleged adverse employment actions. (Dkt. Nos. 163 & 164). Therefore, the correct legal standard was articulated and applied in the Rule 50 motions. Reeves v.

1

Sanderson Plumbing Products, 530 U.S. 133 (2000). **Second**, Rodríguez-Marín, 438 F.3d at 84, is inapposite and does not support an argument of waiver in the post-judgment motions. There, the First Circuit determined that the defendant-employer had waived in its brief on appeal a challenge to the amount of compensatory damages, by failing to cite any First Circuit precedent in support of their argument of excessive damages and by not presenting the facts in the light most favorable to the verdict winner. Here, Defendants specified the applicable law and all the facts which, even viewed in the light most favorable to Plaintiff, required entry of judgment for Defendants as a matter of law. **Third**, Rodríguez-Marín, and similar cases finding waiver on appeal, do not construe the relevant legal standard for preserving arguments and theories in post-verdict motions. That is, Fed. R. Civ. P. 50(a)(2) requires that a movant "specify the judgment sought and the law and the facts on which the moving party is entitled to judgment." The rule does not require "technical precision in stating the grounds for the motion. It does require that they be stated with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion." Lynch v. City of Boston, 180 F. 3d 1, 13 n. 9 (1st Cir. 1999), *quoting*, 9A C. Wright and A. Miller, Federal Practice and Procedure, § 2533, at 310-11 (1995). Even theories raised for the first time in a Rule 50(b) motion, but not distinctly articulated in a Rule 50(a) motion, would be preserved for post-judgment review when the court and the opposing party had pre-trial notice of the assertion of the defense. Lynch, 180 F. 3d at 13 n. 9 (qualified immunity issue not distinctly raised in Rule 50(a) motion was preserved in the Rule 50(b) motion).

Applying the relevant standards here, neither the opposing party nor the court could be surprised by any of Defendants' defenses which were raised in the Answer, the Motion for Summary Judgment, the Pretrial Memorandum, their proposed versions of the specific Jury Instructions, and during the two phases at trial. (See Dkt. Nos. 13, 42, 68 & 105; Dkt No. 155 at pp. 4-13; Dkt No. 152 at pp. 3-9). What is more, during the Rule 50(a) motions at trial, the Court cut short Defendants' arguments of the facts and the law supporting entry of judgment as a matter of law, indicating that it had knowledge of the facts and it was not

necessary to cite precedent.[1] The Court also determined that it was not permissible to argue the absence of evidence of damages in the Rule 50(a) motions. (Dkt. No. 155 at p. 11-12). Further, the record shows that when Defendants renewed the Rule 50(a)(1) motion before the case went to the jury, Plaintiff failed to object.[2]  Consequently, Plaintiff waived the right to object on specificity grounds at this stage of the proceedings. See U.S. v. Taylor, 54 F.3d 967, 972 (1st Cir. 1995) (party's pre-verdict oral Rule 50(a) motion did not contain facts and law that entitled it to judgment whereas its post-verdict written Rule 50(a) motion did; because opposing party failed to object when initially made orally, opposing party waived right to object on specificity grounds). Defendants' challenges to the sufficiency of the evidence of liability and damages and all other theories and arguments are preserved for post-judgment review. Accordingly, there is no waiver.

## II.        Defendants' Rule 50(b) Motion for Judgment as a Matter of Law[3]

**First**, Plaintiff's argument that the *prima facie* standard is inapplicable to the case at bar is misplaced. Defendants analyzed Plaintiff's claims under the *prima facie* standard to preserve the arguments, since the Court had taken under advisement Defendants' Rule 50(a)(1) motion, and did not issue a ruling prior to the filing of Defendants' Rule 50(b) motion.[4] (Dkt. No. 155 at p. 25; Dkt No. 152 at p. 11).

---

[1] Specifically, on October 17, 2016, after Plaintiff presented her case in chief, Defendants argued the Rule 50(a)(1) motion for the first time. (Dkt. No. 155). Despite their efforts, Defendants were not able to argue in detail Plaintiff's retaliation claim under P.R. Law 115 for going on leave with the State Insurance Fund Corporation ("SIFC"). (Id. at pp. 12-13). As the record shows, the Court instructed Defendants to be "very short" in arguing the motion. (Id. at p. 10). Despite this, when Plaintiff argued against the Rule 50(a)(1) motion, she was aware of Defendants' position regarding her claim. (Id. at p. 25). It is important to point out that when Defendants renewed the Rule 50(a)(1) motion the Court instructed that the arguments be limited to the testimony given by Kim Perez and Mr. Harris. (Dkt. No. 155 at p. 4). Therefore, Defendants cannot be faulted for any alleged failure to provide more details since the Court foreclosed the opportunity to make their arguments with any specificity. See Blockel v. J.C. Penny Co., Inc., 337 F.3d 17, 25 (1st Cir. 2003). The same applies to Plaintiff's waiver allegations regarding the alleged demotion of March 2013; the jury's finding of willfulness; and not being similarly situated to Rocio Oliver ("Ms. Oliver") and Dennis Torres ("Mr. Torres"). (Dkt. 170 at p.7 n. 18; id. at p. 25 n 55 & n. 57).

[2] The only claim that Plaintiff objected as not specifically raised by Defendants in the renewed Rule 50(a)(1) motion was the retaliation claim for going on leave with the SIFC. (Dkt. No. 155 at p. 11).

[3] Given the scattershot nature of Plaintiff's Omnibus Opposition, Defendants will attempt to bring order to the discussion by addressing the remainder of Plaintiff's unsupported or legally incorrect arguments in opposition, as they pertain to each particular post-judgment motion.

[4] In this regard, we note that "[a]lthough the burdens shift between the plaintiff and the defendant during the course of an employment discrimination claim, *the ultimate burden of persuading the trier of fact lies with the plaintiff*." Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 46 (1st Cir. 2013) (emphasis added).

Regardless, Defendants' Rule 50(b) motion addressed the ultimate question of discrimination and/or retaliation *vel non*. (Dkt. No. 163 at pp. 2 & 7-22). In any event, given that Plaintiff did not address Defendants' arguments under the *prima facie* standard, any opposition to those arguments should be deemed conceded or waived by Plaintiff. See Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08CV00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (recognizing "general principle that a party who fails to address an issue has conceded the issue" and citing cases); Scott v. JPMorgan Chase & Co., No. 13 CIV. 646 KPF, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014), aff'd, 603 F. App'x 33 (2d Cir. 2015) (same); Silva v. U.S. Bancorp, No. 5:10-CV-01854-JHN, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (same).

**Second**, regarding Plaintiff's age discrimination claim, Defendants argued in their motion for judgment as a matter of law that no reasonable jury could have found that Plaintiff's alleged "demotion" to the Level 15 product manager position in March 2013 was because of her age for numerous reasons, including that (1) the Level 17 HCP Institutional Marketing Manager position was eliminated and not filled by anyone else, much less a younger person, and (2) Plaintiff was not performing all of the duties of that position in March 2013, because some of the duties had been transferred to other employees in the Marketing Division at Plaintiff's request.[5] (Dkt. No. 163 at pp. 5-7). Plaintiff now claims that there was "plenty of evidence" that defendants' stated reason was a pretext for unlawful age discrimination because the "elimination of the Level 17 position was not documented." (Dkt. No. 10 at p. 25). However, the lack-of-documentation argument is a red herring. At trial, plaintiff admitted that no one filled the HCP

---

[5] In her opposition Plaintiff says nothing about the fact her position was eliminated because it became irrelevant after the duties of the position were redistributed at her request and that no younger employees assumed said responsibilities. (Dkt. No. 130 at pp. 125-126; Dkt. No. 155 at pp. 31-32). Also, Plaintiff fails to address Defendants' contention that the re-adjustment of her position when the "I" grade period ended in March 2013 was the by-product of the November 2010 reorganization when Plaintiff's HCP Sales Manager position was eliminated. (Dkt. No. 155 at pp. 31-32). Consequently, she has not placed the Court in a position to conclude that a reasonable jury could have found that age was the *but-for* reason her position was eliminated in March 2013. (Dkt. No. 163 at pp. 5-7).

Institutional Marketing Manager position after her, and no additional documentation is needed to establish that fact.[6] (Dkt. No. 130 at p. 83; Dkt. No. 164 at p. 4).

Plaintiff also claims that the jury could infer age discrimination from the fact that Ms. Oliver and Mr. Torres were younger than Plaintiff and they did not incur a "double demotion" at the end of their two-year "I" grade assignment. (Dkt No. 170 at p. 25). However, no such inference is permissible, because there is no evidence that the job duties of Ms. Oliver and Mr. Torres had changed, or that they had asked to be relieved of any of the duties of the positions they were assigned in the 2010 reorganization. In contrast, it is undisputed that in March of 2013, plaintiff was *not* performing all of the duties of the HCP Institutional Marketing Manager position she was assigned in the 2010 reorganization. (Dkt No. 163 at pp. 5-6). In fact, plaintiff admitted at trial that she could not perform all the duties of that position and that she told Perez in 2011 that "it would be good" if some of her duties could be redistributed. (Dkt. 130 at p. 126). Ms. Pérez complied with *Plaintiff's* request, and there is nothing in the record to contradict her testimony that Defendants "evaluated everything … that [plaintiff] was doing" in March 2013 and that she was in "mainly a product manager position." (Dkt. No. 155 at p. 67). In addition, contrary to Plaintiff's suggestion, Ms. Oliver and Mr. Torres were offered promotions a year *after* the end of the "I" grade period, meaning the promotions were wholly unconnected to whether or not Ms. Oliver and Mr. Torres applied to any positions during the "I" grade period itself.[7] (Dkt. No. 170 at p. 26 & 30). Defendants discuss in detail the reasons for those promotions (Dkt No. 163 at p. 20), all of which went unrebutted on the record.

**Third**, turning to the retaliation claim, Defendants argued in their motion for judgment as a matter of law that no reasonable jury could have found that Defendants denied Plaintiff the Senior Product Manager

---

[6] Plaintiff relies on Rivera-Rodríguez v. Sears Roebuck of P.R., Inc., 432 F.3d 379, 382 (1st Cir. 2005) for the proposition that the supposed lack of documentation is evidence indicative of pretext. However, nowhere in that case does the First Circuit make that finding. To the contrary, it found that the employee had failed to establish that the employer's legitimate, nondiscriminatory reasons for not hiring her were pretext for age discrimination. Id. at 381-382.

[7] Defendants clarify that Abbott did not argue in its Rule 50(b) motion that Plaintiff's position was eliminated in 2013 because of her failure to apply for a position during the "I" grade period, as asserted by Plaintiff. (Dkt. No. 170 at pp. 26). Nor was that the testimony of any of Defendants' witnesses. It is also unclear what Plaintiff's point is in this regard, since it is undisputed that neither Ms. Oliver nor Mr. Torres in fact applied for any positions during the "I" period. (Stip.-1).

position in retaliation for filing a claim of age discrimination because, among other things, Plaintiff withdrew from the selection process by failing to do the required presentation.[8] (Id. at p. 13). Plaintiff counters that the jury "could have reasonably inferred that said presentation was inserted in the process as a 'discretionary tool' that would serve to reject [Plaintiff's] selection" because (1) Plaintiff had never heard of Abbott requiring a presentation as part of a candidate selection process, and (2) her testimony was "corroborated by [Mr.] Harris' testimony." (Dkt. No. 170 at p. 11). Plaintiff misrepresents Mr. Harris's testimony and, in any event, is wrong as a matter of law.  Mr. Harris testified that the "presentation stage was something that [the] Human Resources Department had used in [other] divisions of Abbott in Central America and some other countries that they work with." (Dkt. 153 at p. 43). More fundamentally, Plaintiff is wrong to say that she can skip a required step in the application process (i.e., give the required presentation, see Dkt. No. 130, at pp. 50 & 100-102) and then ask the jury to infer that she was unlawfully denied the job because she had previously complained of discrimination. If that were the rule, then a plaintiff could compel an employer to offer her a position regardless of how unprepared or unqualified she is compared to other applicants[9] simply by filing a discrimination claim. Cf. Mesnick v. General Elec. Co., 950 F.2d 816, 829 (1st Cir. 1991) (knowledge that an employee filed an age discrimination case, without more, is not "sufficient to take a retaliation claim to a jury" because otherwise a disgruntled employee "could effectively inhibit a well-deserved discharge merely by filing, or threatening to file, a discrimination complaint").

---

[8] Plaintiff's allegations in their opposing memorandum regarding the panel of judges completely dismisses the testimony given by her during trial, where she admitted that she had given presentations to them multiple times between January 2011 and May 2014 and that she did not feel uncomfortable doing so. (Dkt. No. 130 at pp. 50, 100-103 & 112-113). This matter was fully briefed by Defendants in the Rule 50(b) motion. (Dkt. No. 163 at pp. 12 & 18-20).  Since Plaintiff did not address Defendants' arguments in her opposition to the post-trial motions, she has conceded the point.

[9] As argued by Defendants in their opening motion, the evidence shows that Plaintiff was not ultimately selected for the Senior Product Manager position because she failed to give the case presentation, and was not as qualified for the position as other candidates who did. (Dkt No. 163 at pp. 12-14). Unlike Plaintiff, all the other candidates, including the one ultimately selected for the position (Glorimar Molina ("Ms. Molina")), gave the presentation. (Dkt. No. 125, at p. 103). Further, the record is clear that Ms. Molina was more qualified for the position and Plaintiff failed to rebut this evidence. (Dkt. No. 125 at pp. 39-40 &103; Dkt. No. 130 at pp. 76-77 & 110-111; Dkt No. 163 at p. 13).

As for the Regional Sales Manager Position, Defendants demonstrated that Plaintiff was ineligible for (and not qualified to receive) that position because she had a "Partially Achieves" performance rating in 2013. (Dkt. No. 163 at pp. 14-16). Plaintiff responds that the 2013 performance rating was "unfounded" and the jury could infer it was issued in retaliation for Plaintiff's October 15, 2013 letter stating that she was filing a claim of age discrimination. (Dkt No. 170 at p. 14). However, Plaintiff's theory ignores that the 2013 performance evaluation details numerous instances of missed deadlines.[10] (See, e.g., Def. Ex. S at p. 2 (took plaintiff five weeks to complete study that should have been done in two weeks); id. at p. 4 (describing 5 brand initiatives that plaintiff failed to deliver on time in 2013). Notably, plaintiff did not testify that these statements were false, and she introduced no evidence that she had, in fact, met these deadlines. Moreover, when asked on cross examination if she was claiming that she had never missed a deadline, plaintiff *admitted* that "at some time it could be that I did not comply with or meet a deadline." (Dkt. 130 at p. 98). Plaintiff also admitted that she "los[t] her composure" and "raised [her] voice" at a colleague (Kern Woods) when he was attempting to address her missed deadlines (id. at pp. 104-05), which was another deficiency noted in the supposedly "unfounded" 2013 performance review (Def. Ex. S at p. 3).[11]   Although Rule 50(b) requires that the evidence be construed in favor of the verdict, it does not authorize the Court to assume that the jury made findings that contradict Plaintiff's own admissions or other undisputed documentary

---

[10] Plaintiff argues that there is evidence of retaliatory animus regarding her performance evaluation because Ms. Pérez admitted on the witness stand that she altered a positive comment (communication skills) in the 2013 mid-year review in her unsworn statement under penalty of perjury. (Dkt. No. 170 at p. 14 n. 36). Once more, Plaintiff mischaracterizes the evidence on the record. The mid-year review clearly states that as part of the action plan, Plaintiff needed to continue "communication with customers and sales" in order to minimize the impact on product destruction. (Pl. Ex. 7, at p. 1).

[11] In addition, Plaintiff again fails to explain how she was better qualified than the candidate ultimately selected for the position, Glamary Pérez ("Ms. G. Pérez"). The evidence shows that Abbott's decision to select Ms. G. Pérez for the Regional Sales Manager position was on her merits, and unrelated to Plaintiff's protected actions. Unlike Plaintiff, Ms. G. Pérez had better performance evaluations and had the experience required for the position given the areas of responsibility, and was identified as a "Key Talent" by Abbott for the last 3 years. (Dkt. No. 130 at pp. 54, 78-80 , 90 & 115; Dkt. No. 153 at pp. 53-54;   Pl. Ex. 36 at p. 8; Pl. Ex. 37 at pp. 9 & 12; Pl. Ex. 38 at p. 16; Pl. Ex. 39 at p. 7). Plaintiff's subjective belief that her performance was better, or even up to par in 2013, is insufficient to satisfy her burden of proof. See Franco-Santos v. Goldstar Transp., Inc., No. CIV. 09-1989 GAG, 2011 WL 570280, at *4 (D.P.R. Feb. 17, 2011). For these reasons, Plaintiff's argument that the selection of Ms. G. Pérez for the Regional Sales Manager Position was a non-age-neutral deviation from company policy that supports her age discrimination claim relating to her failure to obtain the Senior Product Manager position, also does not hold water. (Dkt No. 170 at p. 28 n. 63).

evidence. (See Dkt. No. 130 at p. pp. 98-100 & 106; Pl. Ex. 21; Dft. Ex. V at pp. 1, 4 & 5; Deft. Ex. P at pp. 1-2; Deft. Ex. S at pp. 1, 2, 3, 4, 7 & 12).

Regarding the Senior District Manager Position, the evidence presented to the jury establishes that Vickybel Rosario ("Ms. Rosario") was more qualified for the position when compared to Plaintiff, and the decision to select Ms. Rosario was unrelated to Plaintiff having engaged in protected conduct. (Dkt No. 163 at p. 17). Specifically, Ms. Rosario had excellent evaluations and had also been identified as a "Key Talent" by Abbott for the last 3 years. (Pl. Ex. 36 at pp. 6 & 7; Pl. Ex. 37 at pp. 10 & 13; Pl. Ex. 38 at p. 16; Pl. Ex. 39 at pp. 6 & 7). Plaintiff's argument in opposition boils down to the contention that Abbott deviated from its policies by not automatically offering the position to her. (Dkt. No. 170 at pp. 17; see also id. at p. 10 n. 25). However, the evidence shows that Ms. Rosario was selected for the Senior District Manager position pursuant to Abbott's Talent Management Review ("TMR") process. (Pl. Ex. 29 at p. 36; Dkt. No. 125 at pp. 25-28 & 32). Contrary to Plaintiff's contention, Abbott was in no way required to offer her the position pursuant to the TMR. Plaintiff admitted during trial that the primary consideration for a promotion was the employee's performance and meeting the Company's expectations. (Dkt. No. 130 at pp. 106-107). Plaintiff cannot avail herself of a policy deviation argument,[12] when the record is devoid of any evidence that Ms. Rosario was less qualified than her, and by Plaintiff's admission Abbott was free to base its promoting decisions on performance, not mere incumbency.

---

[12] Plaintiff alleges that Abbott also deviated from its policies by not conducting an investigation of her claims and consulting with its attorneys in the recruitment of the Senior Product Manager position. (Dkt. No. 170 p. 9 n. 22, pp. 27-28 n. 59 & n. 61). This is another example of Plaintiff's mischaracterization of the evidence presented at trial. During trial, Mr. Harris testified extensively regarding the investigations conducted by Abbott's legal department related to Plaintiff's claims. (Dkt. No. 153 at pp. 41, 62, 63, 68 & 69). The record shows that when Mr. Harris was asked by Plaintiff's counsel why Abbott's legal department investigated Plaintiff's claim, the Court stated that it was irrelevant. (Id. at p. 41 ("THE COURT: Irrelevant why they did it, Counsel. They did it."). In addition, the record shows that plaintiff's counsel pressed Mr. Harris regarding his meeting with Ms. Adames, Ms. Mendez and Ms. Perez on December 9, 2013. (Id. at p. 105). Mr. Harris testified that the meeting with the lawyers referenced by Ms. Adames during her testimony in no way played into the recruitment process for the Senior Product Manager position. (Id. at p. 106).

### III.   Defendants' Motion for a New Trial and/or Remittitur

**First**, Plaintiff argues that Defendants did not preserve their objection to Plaintiff's counsel's improper closing statements that Mr. Harris "lied," because they did not object after the Court gave the purported curative instruction, and did not move for a mistrial. (Dkt. No. 170 at pp. pp. 4-5 & 34-35). Plaintiff is wrong on both the law and the facts. In the First Circuit, an issue is preserved for review by objecting at the time the improper closing statements are made *or* moving for a mistrial before the jury returns a verdict. See Computer Systems Engineering, Inc. v. Quantel Corporation, 740 F. 2d 59, 69 (1st Cir. 1984); U.S. v. Azubike, 504 F.3d 30, 39 n. 9 (1st Cir. 2007); see also Wildman v. Lerner Stores Corp., 771 F.2d 605, 609 (1st Cir. 1985) (issue foreclosed due to "failure to object at the time the allegedly improper statements were made *or* move for a mistrial before the verdict was returned") (emphasis added), cited in Dkt. No. 170 at pp. 5. A litigant is not required to do both, nor does Plaintiff cite to any case law so requiring. Where, as here, Defendants immediately objected to Plaintiff's counsel's improper closing arguments, the Court overruled the objections and failed to give a curative instruction *for the jury to disregard the improper statement*, as specifically requested by Defendants *before* the jury's deliberations (see Dkt. No. 152 at pp. 108-109),[13] the objections are preserved for review in the new trial motion. See Fonten Corp. v. Ocean Spray Cranberries, Inc., 469 F.3d 18, 21 (1st Cir. 2006); Polansky v. CNA Ins. Co., 852 F.2d 626, 628 (1st Cir. 1988). Accordingly, there is no waiver or forfeiture of any of the objections raised as a basis for a new trial.

**Second**, Plaintiff expressly concedes that there is no admissible evidence on the record supporting Plaintiff's counsel's mischaracterization of the evidence on damages, to the effect that a psychiatrist

---

[13] Defendants' counsel requested "a contemporaneous instruction to the jury *to disregard that statement specifically made by counsel during closing, and to instruct the jury that the credibility of all the witnesses is for the jury to decide. . . .*" (Dkt. No. 152 at p. 109) (emphasis added). Therefore, the Court did not do "exactly what Abbott requested" in the sidebar after the closing arguments and before the charge. (Dkt. No. 170 at p. 23). Even under the U.S. v. Riccio case cited by Plaintiffs, the curative instruction given by the Court falls short. 529 F.3d 40, 45 (1st Cir. 2008) (court informed jury, *inter alia*, there was no evidence supporting improper statement made by prosecutor, that prosecutor was incorrect in stating otherwise, and specifically told the jury to put improper statement made "out of your mind"). Regardless, once there was an ethical violation in a closing argument and a timely objection, Defendants were not required to request a curative instruction, much less the specific language to be used by the Court. It was incumbent upon the Court to take remedial action. See Polansky, 852 F.2d at 628.

9

supposedly ordered her to take a cruise in order to relax. (Dkt. No. 170 at pp. 36). Plaintiff also does not

contest that the Court overruled Defendants' timely objection at trial regarding this material error, and

ratified Plaintiff's counsel's misstatement of the evidence. As already argued, a misstatement of a fact not in

evidence is error. (Dkt. No. 164 at p. 8-9). Plaintiff tries to diminish the importance of this error, by arguing

that it was superfluous to the issue of liability. However, as argued by Defendants in their opening motion,

counsel's misstatement of fact was relevant to the very central issue of emotional distress damages, which

were Plaintiff's burden to establish. (Id.) Evidently, the improper statements of counsel, and their validation

by the Court, had an impact on the jury that translated to the astronomical emotional damages award in this

case.

   **Third**, regarding Defendants' alleged failure to object to the Court's questioning of witness Miriam

Adames ("Ms. Adames") (see Dkt. No. 170 at pp. 4 and 35), Defendants clarify that they did not raise the

issue of how the Court treated Ms. Adames's testimony as to Mr. Harris's March 19, 2014 e-mail as an

independent ground for a new trial, but rather to give context to why counsel's subsequent improper and

unethical comments during closing arguments about Mr. Harris having "lied," and the Court's lax treatment

of the same, were particularly prejudicial to Defendants' case. (See Dkt. No. 164 at pp. 3-5 & 10). The way

the testimony of Ms. Adames was handled during trial, coupled with a plethora of other improper remarks

made by counsel during closing (see Dkt. No. 164 at p. 4 n.1 & p. 7 n.2) and the misstatement of facts not in

evidence, goes to the totality of the circumstances inquiry that the Court must make in assessing the effect of

counsel's conduct. See Forrestal v. Magendantz, 848 F.2d 303, 309 (1st Cir. 1988). Regardless, even if it

were considered as a separate error, failure to contemporaneously object to improper argument, be it from

opposing counsel or the Court itself, does not necessarily constitute waiver or forfeiture, but merely affects

the applicable standard of review. See Fonten Corp., 496 F.3d at 21 (finding that, "even if the objection

were not preserved, we would still review for plain error in order to correct substantial injustice," where

plaintiff failed to contemporaneously object to opposing counsel's misconduct during trial); U.S. v.

Hickman, 592 F.2d 931, 936 (6th Cir. 1979) (excusing failure to object to trial judge conduct involving frequent interruptions, extensive cross-examination of defense witness, behavior suggesting disbelief of defense story, and numerous other improprieties; counsel is in difficult position if obliged to object again and again before jury to conduct of judge; plain error occurred); Czajka v. Hickman, 703 F.2d 317, 320 (8th Cir. 1983) (since defendant failed to object to questions and comment by judge, "only plain error would be cause for reversal").

**Fourth**, Plaintiff offers no argument against, and thus concedes, Defendants' contention that any alleged age-related incidents and acts of retaliation that occurred on or before January 1, 2013 were time-barred as a matter of law, and therefore could not be considered as a basis for liability or damages. Plaintiff also expressly concedes that Defendants properly preserved their objection to the Court's surprising refusal to give the Statute of Limitations ("SOL") instruction agreed-upon between counsel and the Court during the charge conference. (Dkt. No. 170 at p. 14 n.9). Plaintiff argues only that the Court's failure to give the legally sound SOL instruction was supposedly harmless, because the jury must have understood its theory of the case to exclude all pre-January 2013 actions as time-barred. (See Dkt. No. 170 at pp. 26-27). However, this is wishful thinking, because the evidence presented to the jury in fact spanned from 2010 to 2014, and included matters relating to legitimate defenses connected to the 2010 reorganization and Plaintiff's exhaustion of medical leave between November 2011 and June 2012. For example, the jury heard evidence on Plaintiff's pre-January 2013 complaints of harassment at Abbott and reporting to the SIFC, as well as her hospitalization in 2011 that, more likely than not, informed their decision to find in favor of Plaintiff and/or award her damages, absent the requisite SOL instruction. (See Dkt. No. 164 at pp. 14-15). No other instruction said that Plaintiff's claims were limited to events that occurred after January 1, 2013, and none of the questions in the verdict form had a time restriction or limited the alleged adverse

employment acts to those that were *not* time-barred.[14] There is therefore no way of knowing that the jury did not take into account legally time-barred events in either its liability findings or the award of damages.[15]

**Fifth**, Plaintiff concedes that the back-pay amount awarded by the jury is unsupported by the evidence, but asks the Court to grant a remittitur of the back-pay amount by applying the Defendants' alternate back-pay calculation of no more than $26,378.19 per year, based on a differential between the grade level 15 position she currently holds and the grade level 18(I) position that ceased to exist in March 2013. (Dkt. No. 170 at pp. 38-39; Dkt. No. 164 at pp.19 n.11). However, Plaintiff does not address Defendants' main argument that no amount of back-pay is warranted in this case, because Plaintiff testified and argued that her expectation in March of 2013 was an assignment to a grade level 17 position, and all such positions were remunerated at lower annual compensations than Plaintiff has been making since her alleged transfer demotion. (Dkt. No. 164 at pp. 18-19); see Watlington v. U.P.R., 751 F. Supp. 318, 331 (D.P.R. 1990). Calculating the differential based on Plaintiff's prior salary at the grade level 18(I) position would also be unsupported by the evidence, because it is not a permissible inference that Plaintiff expected to retain the same salary as provided during the (I) grade period, since the record is clear, and Plaintiff admitted, that when she accepted the (I) grade assignment in 2010 (effective January 2011), she agreed it would be temporary and that her subsequent grade adjustment in 2013 would be appropriate for the position

---

[14] Plaintiff cites to Rios v. Empresas Lineas Maritimas Argentinas, 575 F.2d 986, 990 (1st Cir. 1978), for the proposition that Defendants' failure to object to the verdict form before jury deliberations somehow precludes it from arguing that failure to give the SOL instruction was prejudicial. (Dkt. No. 170 at p. 5 n.12). However, that case dealt with the jury's failure to follow the court's (proper) instructions in returning the verdict, which resulted in inconsistent answers to verdict interrogatories, and the defendants had not objected to *either* the verdict form *or* the second set of instructions given to the jury. Rios, 575 F.2d at 990. That is clearly distinguishable from the complete failure in this case to instruct the jury on a legally material issue impacting liability and damages. The other cases cited by Plaintiff are likewise distinguishable. See Dkt No. 170 at p. 22 (citing Muñiz v. Rovira, 373 F.3d 1, 6 (1st Cir. 2004) (deals with failure to request an instruction *or* object to the charge as given); Putnam Res. v. Pateman, 958 F.2d 448, 456 (1st Cir. 1992) (deals with unorthodox verdict form and charge acquiesced to by plaintiff, not failure to instruct jury on issue material to scope of liability or damages)). Further, the age discrimination jury instruction that Plaintiff points to as putting the matter to rest, does nothing but provide an example of what may constitute an adverse employment action. (Dkt. No. 170 at p. 27, citing Dkt. No.132 at p. 12).

[15] The prejudicial nature of this error is underscored by the Court's indication at side bar after the jury charge, that it had admitted pre-January 2013 evidence, not as background evidence, but as substantive evidence relevant to Plaintiff's claims. (Dkt. No. 164 at p. 13). Thus, the omission of the SOL instruction was not harmless.

she had been occupying at the time (i.e., grade level 17). (Dkt. No. 164 at p. 18). Defendants stand by their argument that no back-pay may be awarded on this record.

**Sixth**, Plaintiff argues the Court should make its determination whether to remit the $4,000,000 base award for emotional damages on "the specific evidence and circumstances in the case before it." (See Dkt. No. 170 at pp. 40-41) (citation omitted). Defendants agree with that premise, which informs the standard for a reversal of the award as grossly excessive and unsupported by the evidence, or a remittitur under the "maximum recovery rule." (Dkt. No. 164 at p. 17). Defendants' argument is precisely that the proven facts of this case do not support *any* award for emotional damages, much less one totaling $4,000,000 (before doubling). Just as with the back-pay award, the award for emotional damages must be reversed, or a remittitur ordered because it too is the product of jury speculation or misapprehension of the proper legal standard.  Plaintiff's opposition does not dispute Defendants' showing that the record is devoid of evidence regarding the nature or extent of her alleged emotional distress. (Id. at p. 21-24). Defendants specifically argued that, given the lack of any medical or other expert evidence in this case to buttress Plaintiff's claim that she continued to seek psychiatric treatment after her first medical leave (which is a time-barred event, see id. at p. 21 n.12), it was incumbent upon her to testify as to the level and extent of her psychiatric condition and/or her symptoms during the relevant period (March 2013 – present), and establish the connection between those symptoms and the adverse actions taken against her by Defendants. (Id. at pp. 22-23). Yet, Plaintiff cites to no evidence that she had trouble sleeping or eating, suffered from depression or panic attacks, lost weight, got tension headaches, or incurred any physical manifestation of stress, or had any disruption in her relationship with her family members. Instead, Plaintiff seeks to bolster the award by arguing that Puerto Rican juries have awarded compensatory damages in excess of $1,000,000 in a handful of employment discrimination cases in the last 20 years. (Dkt. No. 170 at pp. 41-42).[16]

---

[16] Plaintiff also proceeds to list elements of her liability theory in a conclusory fashion and without any references to the record, trial transcript or supporting case law. (Dkt. No. 170 at pp. 43-44). This does little to reinforce the unusually large emotional damages

Rather than bolster her argument, these cases further illustrate how excessive and unsupportable the $4,000,000 compensatory damages award is in this case. One of the cases cited by Plaintiff *reversed* as excessive or, in the alternative, ordered a new trial on damages conditioned on a remittitur of a much smaller $1,100,000 compensatory damages award that was supported only by the plaintiff's "own conclusory testimony of how his loss of employment affected him and his family." Oliveras-Zapata v. Univision P.R., 939 F.Supp.2d 82, 85 (D.P.R. 2012) (remittitur of base award from $1,100,000 to $600,000); see also Kerr-Selgas v. Am. Airlines, Inc., 69 F.3d 1205, 1209 (1st Cir. 1995) (district court ordered new trial conditioned on remittitur of base award from $1,000,000 to $400,000, which became $600,000 after other computations by the court, and *after doubling* totaled $1,200,000); Baralt v. Nationwide Mut. Ins. Co., 183 F.Supp.2d 486, 487 (D.P.R. 2002) (noting that the jury award was reversed on appeal in Baralt v. Nationwide Mutual Ins. Co., 251 F.3d 10 (1st Cir. 2001), for insufficient evidence of age discrimination, and remanded for further proceedings on the supplemental claims). The remaining case cited by Plaintiff is otherwise distinguishable, because the jurors were presented with much stronger and concrete evidence (including corroboration through family member testimony) of emotional distress caused by the adverse employment action at issue, which involved a termination and not failure to promote or a reduction in pay grade. See Muñoz v. Soc. Española De Auxilio Mutuo y Beneficiencia de P.R., 671 F.3d 49, 61 (1st Cir. 2012) (leaving undisturbed $1,000,000 compensatory damages award as "overcompensating" plaintiff but not unsupported, where plaintiff testified that, as a result of his termination, he experienced anxiety, bouts of depression, and trouble sleeping, all of which was corroborated at trial by plaintiff's wife's testimony); see also Kerr-Selgas, 69 F.3d at 1207 (case involved rejected sexual advances, disparagement of plaintiff in front of co-workers and clients, intrusive inquiries and derisive comments about her private life and personal appearance).

---

award in this case, which Defendants have argued must be supported by actual evidence of emotional distress. (Dkt. No. 164 at pp. 22-23); see Oliveras-Zapata, 939 F.Supp.2d at 85.

**Finally**, Plaintiff focuses all of its arguments in the Omnibus Opposition against Abbott as the moving party, without addressing any of the arguments made by Defendants as they pertain to Ms. Pérez. Plaintiff also failed to present evidence connecting an action by Ms. Pérez to her alleged emotional distress. As a result, Plaintiff's opposition concedes all of Defendants' arguments supporting judgment as a matter of law, a new trial and/or remittitur, pertaining to the judgment against Ms. Perez, including the complete lack of evidence to sustain a separate award of emotional damages totaling $1,000,000 (before doubling) against Ms. Pérez in her personal capacity. (Dkt No. 164 at p. 24). This argument, and all others not directly addressed by Plaintiff in her Omnibus Opposition to Defendants' motions, should be deemed conceded or waived by the Court. See Silva, 2011 WL 7096576, at *3; Kinetic Concepts, Inc., 2010 WL 1667285, at *8; Scott, 2014 WL 338753, at *10.

## IV.    Conclusion

As the Court evaluates Defendants' motions and Plaintiff's opposition thereto, it should not lose sight of the fact that there is no direct evidence in this case of any age-based animus or of retaliation. Plaintiff was never subjected to comments about her age, and Plaintiff's age was not discussed in connection with her alleged "demotion" in March of 2013 or her failure to obtain a promotion in 2014. Nor has there ever been any suggestion that Defendants or any of their employees made derogatory comments directed at older people. Likewise, there is no evidence that either Mrs. Perez or Mr. Harris were upset with Plaintiff for having filed her discrimination claim. In fact, there is direct testimony to the contrary. (Dkt. No. 153 at pp. 20 & 106). Plaintiff had to make out both claims for discrimination (limited to the so-called "additional demotion" in March 2013) and retaliation (based on the post-October 15, 2013 actions) based on circumstantial evidence. As explained in their opening motions, and now corroborated by Plaintiff's opposition, in which she failed to directly address any of Defendant's arguments, there is simply not enough evidence on the record for the jury to have reasonably concluded that Defendants' proffered reasons for

taking the supposed adverse actions against Plaintiff were pretext for age-based discrimination or retaliatory for engaging in protected conduct.

**WHEREFORE**, Defendants move the Court to take notice of the above, and grant the relief requested in "Defendants' Renewed Rule 50(b) Motion for Judgment as a Matter of Law" (Dkt. No. 163), "Motion and Memorandum of Law for a New Trial" (Dkt. No. 164), and "Motion for Relief from a Judgment or Order Under Rule 60 and/or Motion to Alter or Amend Judgment Under Rule 59(e)" (Dkt. No. 165).

**WE HEREBY CERTIFY** that on this date we presented the foregoing to the clerk of the Court for filing and uploading to the CM/ECF system, which sends copy of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 19th day of December, 2016.

| | |
|---|---|
| **CASELLAS ALCOVER & BURGOS, P.S.C.** | **O'NEILL & BORGES LLC** |
| *Attorneys for Defendants* | *Attorneys for Defendants* |
| PO Box 364924 | 250 Muñoz Rivera Ave., Suite 800 |
| San Juan, PR  00936-4924 | San Juan, PR  00918-1813 |
| Tel. (787) 756-1400 / Fax (787) 756-1401 | Tel. (787) 764-8181 / Fax (787) 753-8944 |

By:  *s/Ricardo F. Casellas Sánchez*
　　 Ricardo F. Casellas Sánchez
　　 USDC-PR No. 203114
　　 rcasellas@cabprlaw.com

By:  *s/ José Fco. Benítez-Mier*
　　 José Fco. Benítez-Mier
　　 USDC-PR No. 212507
　　 jose.benitez@oneillborges.com

By:  *s/Carla S. Loubriel Carrión*
　　 Carla S. Loubriel Carrión
　　 USDC-PR No. 227509
　　 cloubriel@cabprlaw.com

By:  *s/ Alberto J. Bayouth-Montes*
　　 Alberto J. Bayouth-Montes
　　 USDC-PR No. 228313
　　 alberto.bayouth@oneillborges.com