**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**LUZ GONZALEZ-BERMUDEZ,**

Plaintiff,

v.

**ABBOTT LABORATORIES PR INC.,
ET. AL.,**

Defendants.

CIVIL NO. 14-1620 (PG)

## OPINION AND ORDER

Plaintiff Luz Gonzalez-Bermudez (hereinafter "Plaintiff" or "Gonzalez") filed this action pursuant to the Age Discrimination in Employment Act ("ADEA" or "the Act"), 29 U.S.C. §§ 621-634, against her employer Abbott Laboratories PR Inc. ("Abbott" or "the Company") and her supervisor Kim Perez (hereinafter "Perez"). Plaintiff also raised supplemental state law claims of age discrimination under Puerto Rico's antidiscrimination statute, Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. LAWS ANN. tit. 29, § 146, et seq., as well as claims of retaliation under Puerto Rico's anti-retaliation statute, Law No. 115 of December 20, 1991 ("Law No. 115"), P.R. LAWS ANN. tit. 29, § 194a. After denying defendants' motion for summary judgment, a jury trial was held. At the end of Plaintiff's case in chief, and again before the case went to the jury, defendants moved for judgment as a matter of law under Rule 50(a)(1) of the Federal Rules of Civil Procedure. On both occasions, the court kept the motions under advisement. After deliberating, the jury found in favor of Plaintiff and awarded her $4,000,000.00 ($3,000,000.00 against Abbott; $1,000,000.00 against Perez) in compensatory damages and $250,000.00 in back pay. See Docket No. 138. Pursuant to the doubling provisions of the applicable statutes, the court entered judgment in the amount of

$8,250,000 in both back-pay and emotional damages, plus $250,000 in liquidated damages. See Docket No. 150.

Defendants filed several post-judgment motions seeking various remedies, namely: (1) a renewed motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure (Docket No. 163); (2) a motion for new trial or alternatively for remittitur, under Rules 50(b), 59(a) and 59(e) (Docket No. 164); (3) a motion for relief from judgment or order under Rule 60 and/or motion to alter or amend judgment under Rule 59(e) (Docket No. 165). Below, the court will address the arguments defendants raised in their motion for judgment as a matter of law under Rule 50(b). For the reasons that follow, the court **DENIES** defendants' request.

## I.  STANDARD OF REVIEW

_Rule 50(b) – Motion for Judgment as a Matter of Law_

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, if a party has been fully heard on an issue during a jury trial and a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, an opposing party may file a motion for judgment as a matter of law at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a). Rule 50(b) provides that, if the court does not grant the motion, a party may renew a motion for judgment as a matter of law "[n]o later than 28 days after the entry of judgment — or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged." Fed. R. Civ. P. 50(b). The movant may file the renewed Rule 50(b) motion and may include an alternative or joint request for a new trial under Rule 59. "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Id. As a procedural

matter, the party renewing a motion for judgement as a matter of law pursuant to Rule 50(b) "is required to have moved for judgment as a matter of law at the close of all evidence." Ginorio v. Contreras, No. CV 03-2317 (PG), 2008 WL 11424136, at *2 (D.P.R. June 13, 2008), aff'd sub nom. Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508 (1st Cir. 2009) (citing Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 758 (1st Cir. 1994)). "In addition, this motion must include every claim upon which the party bases its request for judgment as a matter of law. Failure to do so is a 'fatal omission.'" Ginorio, 2008 WL 11424136 at *2 (citing Sanchez v. Puerto Rico Oil Company, 37 F.3d 712, 723 (1st Cir. 1994)).[1]

In examining a Rule 50 motion, "[o]ur review is weighted toward preservation of the jury verdict ... ." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 26 (1st Cir. 2005). "[A] jury's verdict must be upheld unless the facts and inferences, viewed in the light most favorable to the verdict, point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have [returned the verdict]." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009) (quotation marks omitted) (citing Borges Colon v. Roman–Abreu, 438 F.3d 1, 14 (1st Cir.2006)). "[W]e view the facts in the light most favorable to the verdict, deferring 'to the jury's discernible resolution of disputed factual issues.'" Ciolino v. Gikas, 861 F.3d 296, 299 (1st Cir. 2017) (quoting Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010)). "[W]hen a party challenges a jury verdict, it is not our position to evaluate the credibility of witnesses or the weight of the evidence." Long v. Fairbank Reconstruction Corp., 701 F.3d 1, 4 (1st Cir. 2012) (citing Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 37 (1st Cir.2006)).

---

[1] "A party may renew its motion no later than 10 days after the entry of judgment. ... However, only those grounds specified at the close of all the evidence, and no others, are preserved for review." Ginorio, 2008 WL 11424136 at *2 n.3 (citing Correa v. Hospital San Francisco, 69 F.3d 1184, 1192 (1st Cir. 1995)).

## II. DISCUSSION

As follows, the court will discuss each of the arguments defendants raised in their renewed motion pursuant to Rule 50(b) in turn.

### 1. Age Discrimination – Demotion of March 2013

Plaintiff filed age discrimination claims under both ADEA and Law No. 100. The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 446 (1st Cir. 2009) (quoting 29 U.S.C. § 623(a)(1)). A plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2351 (2009). "Law 100 bans employment age discrimination. ... [O]n the merits, claims under both statutes 'are coterminous.'" Morales-Guadalupe v. Oriental Bank & Tr., No. 16-1535 (GAG), 2018 WL 1116544, at *8 (D.P.R. Feb. 26, 2018) (citing Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 18 (1st Cir. 2007)).

Plaintiff's age discrimination claim stems from a demotion she suffered in March of 2013. As follows, the court will summarize some relevant background information for context.

Gonzalez began to work at Abbott in November of 1984 as a medical sales representative with a specialty in nutrition in a Level 12[2] position. See Docket No. 129 at p. 4. Within fifteen years, she moved up the ranks to a Level 14 position and eventually became a Senior Sales Rep. See id. at pp. 5-6. On or about 2005, she became a Product Manager (Level 15). See id. at pp.

---

[2] Exempt and non-exempt positions at Abbott are assigned levels. Exempt employees' levels are in numbers. See Docket No. 125 at pp. 4-5.

6-7. She subsequently became a District Manager, then a Pediatric Unit Manager (Level 17), and then a National Sales Manager (Level 17-18). See id. at pp. 8-10. As the latter, she supervised twenty-eight (28) employees, among them other supervisors and sales reps. See id. at p. 10. Before 2011, Plaintiff had always obtained ratings of Achieved Expectations ("AE") or Exceeded Expectations ("EE") in her performance evaluations. See id. at pp. 11-12.

In November of 2010, Abbott underwent a reorganization ("the Reorganization"), as a result of which the Company eliminated the positions of three employees in its Nutrition Division, namely: Plaintiff, Rocio Oliver ("Oliver") and Dennis Torres ("Torres"). See Docket No. 125 at pp. 46-48. At the time of the Reorganization, Plaintiff was a National Sales Manager (Level 18) and supervised both Oliver and Torres. See Docket No. 129 at pp. 9-10, 12. Instead of terminating their employment, the Company placed these three employees in lower-level positions.[3] See Docket No. 125 at pp. 47-48. Notwithstanding, these employees were notified that they would continue to receive the compensation of the positions they held prior to the Reorganization for an interim period of two years. See id. at p. 48.

As a result of the Reorganization, co-defendant Kim Perez became Plaintiff's supervisor as of January 10, 2011, see Docket No. 129 at p. 14, and Gonzalez was named HCP Institutional Marketing Manager, which was a Level 17 position, see id. at pp. 15-16. Towards the end of 2011, Gonzalez filed a workplace harassment complaint against Kim Perez. Abbott's Human Resources department investigated in accordance with the Company's policies. See Docket No. 125 at pp. 9-11. After investigating Plaintiff's allegations, the Company determined that Kim Perez had not engaged in any wrongdoing, with which Plaintiff disagreed. See Docket No. 130

---

[3] The employees affected by the Reorganization had a duty to apply to other positions during this two-year period, but none of them did. See Docket No. 126 at p. 34; Docket No. 155 at p. 3; Docket No. 129 at p. 19. Gonzalez testified that she did not apply to any position because the Company did not announce vacancies in any position that was graded above the one that she was occupying during this time. See id.

at pp. 124-125. On December 8, 2011, Plaintiff left on sick leave until June 8, 2012. <u>See</u> Docket No. 155 at p. 60.

After the two-year interim period ended in March of 2013, Gonzalez was informed that going forward, she would occupy a Product Manager Level 15 position. <u>See</u> Docket No. 125 at p. 58. That is, between the time of the Reorganization up until March of 2013, the Company decreased Gonzalez's positions three grade levels. Her income was reduced and because she was placed at the upper end of the Level 15 salary range, her salary was capped ("frozen") and despite a good performance, she was unable to receive any salary increases or raises. <u>See</u> Docket No. 129 at pp. 22-23.

In their Rule 50(b) motion, defendants first argue that Plaintiff failed to establish a prima facie case of age discrimination or that age was the "but-for" reason for her readjustment to a lower-level position in March of 2013. In support of their request, defendants argue the following: (1) that she did not suffer an adverse employment action because she voluntarily accepted the demotion to avoid a layoff when she agreed to the terms of the Reorganization, Docket No. 163 at p. 4; (2) that she is not similarly-situated to Oliver and Torres because "they were serving in different jobs with different responsibilities, had different supervisors and were not comparable to Plaintiff in any way," <u>id.</u> at pp. 5-6; (3) that Plaintiff "was not meeting Abbott's legitimate or sensible business expectations and the requirements for her performance" while occupying the Level 17 position during the interim period, <u>id.</u> at pp. 5-6; and, (4) that Plaintiff failed to show that age was the "but-for" reason her position was adjusted downward, <u>id.</u> at pp. 7-9.

As a threshold matter, Plaintiff argues in her opposition that applying the McDonnell Douglas[4] burden-shifting framework at this stage is futile because once a case has been tried on the merits, the analysis should be confined to the ultimate question of discrimination and retaliation. See Docket No. 170. In support, Plaintiff cites Sanchez v. Puerto Rico Oil Co., in which the First Circuit Court of Appeals held that "when, as now, an employment discrimination action has been submitted to a jury, the burden-shifting framework has fulfilled its function, and backtracking serves no useful purpose." 37 F.3d 712, 720 (1st Cir. 1994).

The court agrees with Plaintiff's argument. "To focus on the existence of a prima facie case after a discrimination case has been fully tried on the merits is to 'unnecessarily evade[ ] the ultimate question of discrimination vel non.'" Id. (citing United States Postal Serv. Bd. of Govs. v. Aikens, 460 U.S. 711, 713–14 (1983)). "This is because, at that stage, McDonnell Douglas has served its purpose, and the evaluation of a post-trial motion assesses whether the plaintiff met his overall burden of establishing discrimination." Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 47 (1st Cir. 2013) (citing Sanchez, 37 F.3d at 720). See also Oliveras-Zapata v. Univision Puerto Rico, Inc., 939 F. Supp. 2d 82, 84 (D.P.R. 2012) ("[Defendant] spills a great deal of ink in its 102–page motion arguing that [plaintiff] failed to establish a prima facie case, which, as the First Circuit has noted, is not the correct focus at this juncture."). As a result, the court will confine its review to the ultimate question of discrimination.

Plaintiff also opposes defendants' Rule 50(b) motion on the grounds that defendants ignored the applicable standard of review by failing to present the facts in the light most favorable to the verdict, focusing exclusively instead on the evidence that supported their theory of the case, which the jury clearly rejected. See Docket No. 170 at pp. 20-22. As set forth

---

[4] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

*supra*, the court must "examine the evidence in the light most favorable to the nonmovant and will grant the motion only when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Alejandro-Ortiz v. Puerto Rico Elec. Power Auth. (PREPA), 756 F.3d 23, 26 (1st Cir. 2014) (citations and quotation marks omitted). After review of defendants' motion, the court agrees that what the movants would have the court do is weigh the evidence in their favor and substitute defendants' views for those of the jury without regard to the significant amount of evidence to the contrary. Regardless of how defendants framed their arguments, the court will address these in accordance with the applicable law and standard of review, viewing the facts in the light most favorable towards the preservation of the verdict.

First, defendants claim that Gonzalez voluntarily accepted her demotion to avoid a layoff and that the terms of the Reorganization were explained to her. Citing to Plaintiff's testimony at trial, defendants point out that she "knew that her salary and fringe benefits could be lowered in the future corresponding to the position that would become available" when the two-year period ended. See Docket 163 at p. 4. In contrast to what defendants posit, Plaintiff testified that she understood that once the two-year period ended, her salary and benefits would be readjusted to the HCP Marketing Manager position (Level 17) she was occupying. See Docket No. 129 at pp. 17-19. That is, she understood that she would only suffer a downward adjustment of just one level at the end of the interim period. But such was not the case. Instead, Human Resources Director Luz Miriam Adames ("Adames") and co-defendant Perez informed Gonzalez that the position she was currently occupying was being eliminated and that going forward she would hold the position of Product Manager, which was a Level 15 position. See id. at pp. 16-17. As a result of these news, Plaintiff testified that she felt ill and anxious and was referred to the State Insurance Fund ("SIF") by the doctor that works at the Company. See

Docket No. 130 at pp. 5-6. From this testimony, a reasonable jury could have concluded that Plaintiff did not "accept" the demotion - as defendants propose in their post-judgment motions – because the prospect of having the position she was occupying during the interim period be suddenly eliminated is not something Gonzalez understood at the time of the Reorganization. The court thus rejects this argument in support of their request.

Defendants' second argument is that Plaintiff was not "comparable" or "similarly situated" to Torres and Oliver, the other two employees that were impacted by the Reorganization. According to defendants, these two employees were not similarly-situated to Plaintiff because they were performing other duties for different supervisors and "were not comparable to Plaintiff in any way," Docket No. 163 at p. 5. In addition, defendants argue that both of these employees were within the same protected age group as Plaintiff, thereby diminishing any indication of age bias. See id.

The record in this case shows that subsequent to the Reorganization, Oliver was assigned to a Level 14 position, but continued to receive the salary and benefits of the Level 15 position she previously occupied. In regard to Torres, the Company assigned him to a Level 14 position, but he would continue to receive the salary and benefits of the Level 16 position he used to hold. See Docket No. 125 at p. 48. At the end of the two-year term, both of these employees were assigned to the position they were occupying during this interim period and their salary and benefits were adjusted to the Level 14 positions they were respectively holding. However, as Plaintiff points out, the positions they were holding as incumbents were not eliminated and none of them suffered an additional downward adjustment in March of 2013. As a result, Plaintiff complains that these employees were in fact treated differently, and that age was the basis for this disparate treatment. See Docket No. 170 at p. 25.

"[I]n order to be probative of discriminatory animus, a claim of disparate treatment 'must rest on proof that the proposed analogue is similarly situated in material respects.'" <u>Velez</u>, 585 F.3d at 451 (citing <u>Perkins v. Brigham & Women's Hosp.</u>, 78 F.3d 747, 752 (1st Cir.1996)). "The test is whether a 'prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" <u>Perkins</u>, 78 F.3d at 751 (citing <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 19 (1st Cir.1989)). "While an exact correlation is not necessary, the proponent must demonstrate that the cases are fair congeners." <u>Velez</u>, 585 F.3d 4at 451.

Contrary to defendants' point of view, a reasonable jury may have thought that both Oliver and Torres were "comparable" to Plaintiff in the sense that they were all "in the same boat" in terms of the repercussions of the Reorganization on the status of their employment at Abbott, as well as in regards to the conditions of the offer that the Company made them at the time of the Reorganization. Although their employment situations were not identical, having different posts and responsibilities, their respective situations need not be a carbon copy of each other for purposes of a disparate treatment claim. Consequently, defendants' argument loses a leg to stand on in this regard. And even though both Torres and Oliver were also within the protected age group under the relevant age discrimination laws, it is a fact that both of them were *substantially younger* than Plaintiff: Torres was twelve (12) years younger, whereas Oliver was nine (9) years younger. <u>See</u> Docket No. 126 at pp. 3-5. "The First Circuit Court of Appeals has not set a bright line rule as to age difference that constitutes 'significantly younger,' but has outlined that a three-year age difference is insignificant while a seven-year age difference is significant." <u>Lopez-Rosario v. Programa Seasonal Head Start/Early Head Start de la Diocesis de Mayaguez</u>, 245 F. Supp. 3d 360, 379 (D.P.R. 2017) (citing <u>Williams v. Raytheon Co.</u>, 220 F.3d 16, 20 (1st Cir. 2000) (finding a three-year age difference between plaintiff and

similarly situated employee was "too insignificant to support a prima facie case of age discrimination"); Velez, 585 F.3d 441, 444, 450 n.5 (finding age differences of seven, twenty, and twenty-eight years to be significant)). Per the foregoing, the court finds that sufficient evidence was presented at trial for a reasonable jury to conclude that defendants treated Gonzalez disparately to her younger counterparts when her post was adjusted downward at the end of the two-year interim period.

Defendants next claim that Plaintiff was not meeting Abbott's legitimate performance expectations by March of 2013. They point out that Gonzalez received a PA rating in 2011 and that she admitted during trial to not being able to comply with deadlines and perform all of the duties of the HCP Marketing Manager position. See Docket No. 163 at pp. 5-6. As a result of these failures, her duties were redistributed at Plaintiff's request. See id. at p. 6.

It is an uncontested fact that co-defendant Kim Perez was in charge of developing the job description for the HCP Marketing Manager position to which Gonzalez was assigned after the Reorganization. No one had held this position before. See Docket No. 155 at pp. 31-33. Kim Perez testified in detail about this new position's broad duties and responsibilities. See id. at pp. 34-36. During this testimony, the court noted that as HCP Marketing Manager, Gonzalez supervised "nobody." Id. at p. 34. In contrast, Plaintiff testified that when she held the position of National Sales Manager, she had twenty-eight (28) employees under her supervision. See Docket No. 129 at pp. 9-10. Therefore, a reasonable fact-finder could conclude from these facts that Perez concocted a position with a significant number of accountabilities, but Gonzalez suddenly had no one to delegate on and assist her in their fulfillment. Therefore, a sensible jury could have deemed Plaintiff's request to eliminate some of these duties was warranted, and not a sign of deficient performance. As a matter of fact, a reasonable jury could have inferred that

Perez set Plaintiff up for failure by giving her unattainable goals without the proper supporting staff.[5]

Moreover, given the Plaintiff's track record at Abbott, the jury was right to question defendants' explanations for her demotion. From the time Gonzalez became an Abbott employee in 1984 until the Reorganization, Plaintiff had always obtained ratings of Achieved Expectations ("AE") or Exceeded Expectations ("EE") in her performance evaluations. See Docket No. 129 at pp. 11-12. Plaintiff first received a Partially Achieved ("PA") rating for her job performance in the year 2011, which was after Kim Perez became her supervisor. See id. at p. 30. At any rate, in March of 2013, her most recent job performance evaluation was an AE ("Achieve Expectations"),[6] which dispels defendants' theory that Plaintiff was having competency issues immediately prior to her demotion.

Finally, defendants contend that Plaintiff failed to set forth proof that her age was the "but for" reason for the "adjustment" to her position in March of 2013. See Docket No. 163 at pp. 7-9. Although the court already did away with the burden-shifting framework of analysis at this stage, the court will discuss why defendants' argument is unavailing.

First of all, this court has already held that a reasonable jury could have found enough evidence was presented to support the conclusion that Plaintiff was the victim of disparate treatment on the basis of age when her position was adjusted downward. "Disparate treatment may be 'competent proof that the explanation given for the challenged employment action was

---

[5] See Antonucci v. Life Care Centers of Am., Inc., No. CIV.A. 06-108ML, 2008 WL 417675, at *9 (D.R.I. Feb. 13, 2008) ("Viewing these facts in the light most favorable to Plaintiff, [Plaintiff's supervisor] conceivably ratcheted up Plaintiff's duties in an effort to cause her to underperform."); Zimmerman v. Direct Fed. Credit Union, 121 F. Supp. 2d 133, 144 (D. Mass. 2000), aff'd, 262 F.3d 70 (1st Cir. 2001) ("It could reasonably be found that Zimmerman was unsuccessfully set up to fail by being assigned three presentations to be delivered to the board of directors with minimal time to prepare and no management support.").

[6] See Docket No. 125 at p. 111.

pretextual, provided the plaintiff-employee can make a preliminary showing that others similarly situated ... in all relevant respects were treated [more advantageously] by the employer.'" Aly, 711 F.3d at 46 (citing Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 43–44 (1st Cir.2001)). The evidence of disparate treatment in this case may have caused the jury to reasonably infer that defendants' claims that Gonzalez's lackluster performance resulted in the "elimination" of her Level 17 position were in fact pretextual and not worthy of credence.

Second, the court finds that defendants' relentless denials that Gonzalez was "demoted" despite evidence to the contrary support the premise that they had something to hide. In order to give rise to an inference of pretext, the First Circuit has consistently held that "[w]eaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffer can do the trick ... ." Collazo-Rosado v. Univ. of Puerto Rico, 765 F.3d 86, 93 (1st Cir. 2014) (internal citations and quotation marks omitted). For example, Human Resources Director Adames denied that Plaintiff was "demoted" on at least three occasions during trial, see Docket No. 125 at pp. 50, 56, 65, despite being shown the defendants' Answer to the Complaint admitting Plaintiff's allegations that she was demoted. See id. at p. 71; Dockets No. 1, 13 at ¶¶93-96. On several occasions, co-defendant Kim Perez also refused to testify that Plaintiff was "demoted," instead opting to insist that Gonzalez's position was "eliminated" or that she was "transferred" to a Level 15 position. See Docket 123 at p. 11; Docket No. 155 at pp. 110-11; Docket No. 153 at pp. 3-4. This despite being shown a document from Elizabeth Rios ("Rios"), an employee of Abbott's Talent Acquisition group, that stated that Gonzalez had been demoted on March of 2013. See Docket No. 153 at pp. 4-5. But the nail on that coffin was hammered down by Abbott's Senior Talent Acquisition Manager, Taisgali Mendez ("Mendez"), who testified that the document in question was prepared by a careful and competent employee under her supervision, namely, Rios; that it stated that Plaintiff suffered a "demotion" on March 18, 2013;

and, that Abbott's Human Resources Department provided the information contained in this document. See Docket No. 148 at pp. 10-12. In other words, Adames and Kim Perez were both contradicted by both their own co-worker and the documentary evidence.

As it stems from the testimonies on record, Adames and Kim Perez were members of Abbott's top management team and were both closely involved with the decision-making processes that brought this case to court. The demeanor of both of these witnesses during these particular lines of questions was evasive and haughty, as well as stubborn in the face of business documents. "[T]the jury could well have found [their] testimony at trial evasive, in conflict with other evidence, and lacking credibility." United States v. Nichols, 820 F.2d 508, 512 (1st Cir. 1987). "The jury can conclude that an employer who fabricates a false explanation has something to hide; that 'something' may well be discriminatory intent." Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1293 (D.C. Cir. 1998). "If the jury can infer that the employer's explanation is not only a mistaken one in terms of the facts, but a lie, that should provide even stronger evidence of discrimination." Id.; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). In light of the foregoing, it is no wonder why the jury disregarded defendants' theory.

In the alternative, defendants state that "even if the March 2013 **adjustment** constitutes an adverse action, it was **part of the November 2010 restructuring** that resulted in the elimination of Plaintiff's Level 18 HCP Institutional Sales Manager position, which she accepted and is time-barred." Docket No. 163 at p. 4 (emphasis ours). In response, Plaintiff pointed out in her opposition that this so-called "readjustment," "was never mentioned

during trial." <u>See</u> Docket No. 170 at p. 7 n. 18. And because it is a theory raised for the first time in their Rule 50(b) motion, Plaintiff argues it must be deemed waived. <u>See id.</u> The court agrees.

In contrast to what defendants posit in their post-judgment Rule 50(b) motion, the court notes that during their first Rule 50(a), counsel for defendants stated: "[f]irst of all, we gotta make clear that everything that happened **before January 1, 2013**, this Court has already ruled that is time barred." Docket No. 155 at p. 6 (emphasis ours). The so-called "adjustment" to Plaintiff's position took place in March of 2013, two months *after* the cut-off date defendants' counsel deemed was "clear." That is one reason the court finds that defendants' time-barred argument holds no water.

The court also finds that this argument is unavailing for the reasons Plaintiff state. During defendants' second Rule 50(a) motion at the close of evidence, defendants' counsel simply stated that Plaintiff failed to prove that the elimination of her HCP Institutional Marketing Manager position in March of 2013 "was pretextual," and, essentially, that the functions of her position were eliminated at Plaintiff's request. <u>See</u> Docket No. 152 at p. 6. The record shows that prior to the renewed Rule 50(b) motion, defendants never argued that the "adjustment" of March of 2013 was "part of" the Reorganization, or that this claim was time barred.

"A Rule 50(b) motion for judgment as a matter of law is 'bounded by the movant's earlier Rule 50(a) motion.'" <u>Cox v. Massachusetts Dep't of Correction</u>, No. CV 13-10379-FDS, 2018 WL 1586019, at *3 (D. Mass. Mar. 31, 2018) (citing <u>Parker v. Gerrish</u>, 547 F.3d 1, 12 (1st Cir. 2008). "The movant cannot use such a motion as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict." <u>Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico</u>, 554 F.3d 164, 171 (1st Cir. 2009) (citing

Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir.1995)). <u>See also</u> <u>Costa-Urena v.</u> <u>Segarra</u>, 590 F.3d 18, 26 n.4 (1st Cir. 2009) ("It is well-established that arguments not made in a motion for judgment as a matter of law under Rule 50(a) cannot then be advanced in a renewed motion for judgment as a matter of law under Rule 50(b)."). Pursuant to the relevant caselaw, the court must find that defendants waived this argument as grounds for judgment under Rule 50(b).[7]

At any rate, the record belies defendants' new legal theory insofar as the Company's Human Resources Director, Adames, testified that the elimination of Gonzalez's HCP Institutional Manager (Level 17) position was not the result of a reorganization:

> Q. And the elimination of the position 17, okay, in March 2013, was not as a result of a reorganization; would that be correct?
>
> A. No.

*Testimony of Luz Miriam Adames*, Docket No. 125 at p. 58.

---

[7] In their reply, defendants justify their omission complaining that the undersigned cut them short, reason for which they "cannot be faulted for any alleged failure to provide more details since the Court foreclosed the opportunity to make their arguments with any specificity." Docket No. 177 at p. 3 n.1. In support of their argument, defendants cite <u>Blockel v. J.C. Penny Co., Inc.</u>, 337 F.3d 17, 25 (1st Cir. 2003). In <u>Blockel</u>, the First Circuit held that defendant did not waive its arguments due to lack of specificity in its Rule 50(a) motion brought at close of evidence because the motion was cut short by the district judge's pronouncement that motion was considered filed and denied. However, the exchange between counsel and the court was literally four lines. <u>Id.</u> at 25 n.2. Here, defendants argued their Rule 50(a) motions at the close of Plaintiff's case in chief and at the close of evidence. In stark contrast to <u>Blockel</u>, their arguments are compiled in a combined total of fourteen pages of transcript. <u>See</u> Docket No. 155 at pp. 4-13; Docket No. 152 at pp. 4-8. Therefore, this court finds that the case they cite in support of their argument is clearly inapposite because the facts are not even remotely analogous. Nonetheless, the court finds <u>Blockel</u> relevant for its holding that "it is incumbent upon a party to enunciate the specific basis for a motion for judgment as a matter of law." <u>Blockel</u>, 337 F.3d at 25. Defendants' failure to thoroughly argue their Rule 50(a) motion can only be attributed to their three attorneys. "[A] client is bound by the mistakes of his chosen counsel." <u>Rosado-Rios v. Vazquez-Collazo</u>, No. 14-1820 (PG), 2016 WL 2733122, at *4 (D.P.R. May 10, 2016) (citing <u>Miranda-Lopez v. Figueroa-Sancha</u>, 943 F. Supp. 2d 276, 279 (D.P.R. 2013)). "This case is a shining example of the oft-stated precept that '[t]he law ministers to the vigilant not to those who sleep upon perceptible rights.'" <u>Alamo-Hornedo v. Puig</u>, 745 F.3d 578, 582-83 (1st Cir. 2014) (citing <u>Puleio v. Vose</u>, 830 F.2d 1197, 1203 (1st Cir. 1987)).

After careful review of the motion, the record and the applicable caselaw, the court agrees with Plaintiff that defendants did not meet their burden in showing that the evidence presented at trial, taken in the light most favorable to Gonzalez, is so overwhelmingly inconsistent with the verdict that no reasonable jury could come to the conclusion that defendants discriminated against Plaintiff based on her age when she was demoted in March of 2013. The Rule 50(b) motion is thus **DENIED** as to the age discrimination (demotion) claim.

## 2. Retaliation Claims

Plaintiff filed retaliation claims under both ADEA and Law No. 115. In their Rule 50(b) motion, defendants argue that no reasonable jury could have found that defendants retaliated against Plaintiff for engaging in protected conduct.

"In addition to prohibiting age discrimination, the ADEA also protects individuals who invoke the statute's protections." Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 84 (1st Cir.2005) (citing 29 U.S.C. § 623(d)). "Puerto Rico's anti-retaliation statute – Law 115 – is largely 'symmetrical in scope,' and has 'parallel evidentiary mechanisms,' to the anti-retaliation provisions in ... ADEA." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 97 (1st Cir. 2018) (internal citations omitted). "Law 115 also prohibits retaliation for seeking benefits with the State Insurance Fund." Rios v. Municipality of Guaynabo, No. CV 14-1703 (MEL), 2017 WL 3412083, at *3 n.5 (D.P.R. Aug. 9, 2017) (citing Santana-Colon v. Houghton Mifflin Harcout Pub. Co., 81 F. Supp. 3d 129, 136 (D.P.R. 2014)).

Plaintiff's retaliation claims stem from events that followed her demotion. In March of 2013, when Perez and Adames notified Plaintiff of the downgrade in the position she occupied, Plaintiff asked Kim Perez if she could be named *Senior* Product Manager (Level 16) instead of

Product Manager (Level 15). According to Plaintiff, Perez responded that no such position was available at the time. See Docket No. 129 at p. 21. Plaintiff testified that she did not agree with Perez's response because "Senior" titles are simply tied to an employee's years of experience. See id. at p. 21. On the other hand, Kim Perez's position was that the upgrade to "Senior" was based on qualifications and experience; and in addition, the senior manager had to supervise other employees. See Docket No. 153 at p. 8.

After receiving these news, the Company doctor referred Gonzalez to the SIF, where she was placed on rest from March 19, 2013 to July 10, 2013. See Docket No. 130 at pp. 8-9. Shortly after reporting to the SIF, Abbott sent Plaintiff a certified letter dated April 1st, 2013, informing her that if she did not report to work by April 8th, the Company would terminate her employment. See Docket No. 125 at pp. 66-67; Docket No. 130 at pp. 8-9. Out of fear that she would lose her job, Plaintiff returned to work before the mandated rest period was over. See Docket No. 130 at pp. 8-9.

On September 3, 2013, Kim Perez met with Gonzalez to discuss her midyear review. After a lengthy explanation of the report, Gonzalez testified that she understood that she was "on track" in terms of covering the expectations of her position up to that date. See id. at pp. 11-12. Approximately a month later, on October 15, 2013, Gonzalez's attorneys sent a letter to Kim Perez notifying her that Plaintiff would sue her for age discrimination. See Docket No. 123 at pp. 13-14; Plaintiff's Exhibit 8. Matt Harris ("Harris"), Abbott's General Manager in Puerto Rico and the Caribbean at the time,[8] also received a copy of the letter. See Docket No. 153 at p. 20. On October 29, 2013, Plaintiff then filed an administrative claim of age discrimination before the Anti-Discrimination Unit ("ADU") at the Department of Labor. See Docket No. 130 at p.

---

[8] See *Matt Harris Testimony*, Docket No. 153 at pp. 38-39.

30. On October 31, 2013, Gonzalez also sent Kim Perez an email complaining about being sidelined from some meetings and not having access to presentations. See Docket No. 123 at pp. 18-19; Plaintiff's Exhibit 10.

Pursuant to the Company's policies, every employee complaint must be investigated. See Docket No. 126 at p. 15. In fact, pursuant to this policy, the Company had investigated an internal complaint for workplace harassment that Gonzalez had lodged against Kim Perez in 2011. See id. at p. 15. Despite the policy, Adames testified that an investigation was not conducted at Abbott subsequent to Gonzalez's age discrimination claim at the ADU. See id. at pp. 14, 17. Kim Perez did not order an investigation of Plaintiff's complaints either. See Docket No. 123 at pp. 16, 20. In contrast, Harris testified that Abbott's Legal department in Chicago investigated Plaintiff's claims. See Docket No. 153 at p. 41. Harris sent a letter to Gonzalez on November 20, 2013 – just twenty (20) days after the administrative claim was filed – categorically denying that Abbott had engaged in any discriminatory or retaliatory practices. See id. at pp. 63-66; Plaintiff's Exhibit 11. Yet, Harris admitted that he was not part of this investigation and was unaware of its conclusions (of fact and law). See Docket No. 153 at pp. 63-66.

Two weeks after filing her administrative claim at the ADU, Plaintiff found out through a colleague at Abbott that a Senior Product Manager position had become available. See Docket No. 130 at pp. 30-31. On November 18, 2013, Plaintiff sent a letter to Harris informing him of her interest in the position and stating the Kim Perez's failure to inform her of this vacancy constituted retaliation against her for having complained of discrimination. See Plaintiff's Exhibit 30. Harris responded on November 20, 2013, that the position would be posted soon so both internal and external candidates could apply. See Docket No. 130 at pp. 31-32.

According to Kim Perez, the position had not been approved by Corporate until November of 2013. See Docket No. 155 at p. 93. However, it was Mendez's testimony that Harris had already asked her to post the Senior Product Manager position on LinkedIn back in August 28, 2013, and that the hiring manager for that position was Kim Perez. See Docket No. 148 at p. 15. Mendez also testified that Harris sent her the requisition to post the Senior Product Manager on November 22, 2013, six (6) days after Plaintiff emailed Harris. See id. at p. 17. In the email Harris sent Mendez, he also stated: "[i]t seems like we have a **good external candidate slate**, and I would like to have all interviews completed by December 20th." Docket No. 153 at p. 24 (emphasis ours); Plaintiff's Exhibit 12. According to Mendez, she understood that they had a good group of external candidates for the position from the resumes they had received. See Docket No. 148 at pp. 19-20. However, it was Plaintiff's testimony that Harris' email was not aligned with the Company's policy to give preference to Abbott employees when filling vacancies. See Docket No. 130 at p. 45. According to the testimonies heard, the Company's policy was to offer promotions to qualified Abbott employees before external candidates. See *Adames*, Docket No. 125 at pp. 37-38; *Gonzalez*, Docket No. 130 at p. 32; *Harris*, Docket No. 153 at p. 7.

Mendez also testified that she became aware of Gonzalez's claim of age discrimination during conversations about the selection process that she had with Kim Perez as the position's hiring manager. See Docket No. 148 at pp. 17-18. Mendez agreed that this information was irrelevant for purposes of the recruitment process. See id. at pp. 18-19. Likewise, Adames also admitted that she discussed Gonzalez's age discrimination claim with Perez during the month of December when the selection process was taking place. See Docket No. 125 at p. 99. Adames also discussed Gonzalez's age discrimination claim with Harris and Mendez between October and December of 2013. See Docket No. 126 at p. 25. Nevertheless, Adames admitted that she

knew that an employee's intention to sue the Company for discrimination and/or retaliation cannot be taken into account when considering said employee as a candidate for promotion. See id. at p. 12.

On December 9, 2013, Harris, Perez, Adames and Mendez held a meeting to discuss the selection process for the Senior Product Manager position. Although they discussed the interview guide they would use for the process, Adames' notes of the meeting contain no mention of the business case presentation they would eventually required from the finalists. See Docket No. 148 at pp. 22-23; Docket No. 125 at p. 105. It also stems from the notes of this meeting that its attendees decided to set up a meeting with Abbott's lawyers, even though it was not standard operating procedure to meet with attorneys when a position had to be filled. See Docket No. 125 at pp. 105-106.

Kim Perez and Mendez interviewed Plaintiff for the Senior Product Manager position on or about December 18, 2013. See Docket No. 130 at p. 46. The finalists for the Senior Product Manager position were Gonzalez and two external candidates, Sandra Figueroa and Glorimar Molina. See Docket No. 125 at p. 100. Gonzalez became one of three finalists out of 114 applicants. See Docket No. 123 at p. 26. During the course of this process, Kim Perez testified that she never considered recusing herself from the selection process even though Plaintiff, an applicant and a finalist, had recently filed charges of age discrimination against her. See id. at p. 21. Although Plaintiff – an internal candidate – was a finalist for the position, Adames testified that there was no one "ready now" at Abbott between August 28, 2013 to December 20, 2013 for the Senior Product Manager position. See Docket No. 126 at p. 27.

After the interviews, the finalists were informed that they had to make a presentation to a panel of judges on the following day, that is, on December 19, 2013. See id. at p. 28. The panel

consisted of Mendez, Harris, Kim Perez and Mayra Graulau, a Human Resources Manager at Abbott. See id. at pp. 25-26. To that effect, Plaintiff testified that it was the first time in thirty (30) years at Abbott that the Company required presentations from finalists for a position. See Docket No. 130 at pp. 46-47. According to Kim Perez, it was Mendez's idea to include a presentation stage in the selection process in order to find the best candidate. See Docket No. 155 at p. 96. It was a technique that was previously used in Latin America, one of the regions under Mendez's responsibility. See id. at p. 96.

Upon notification of this unprecedented requirement, Plaintiff testified that she understood that she did not have a real opportunity to obtain the promotion. According to Gonzalez, the process had become a sham intended for her to believe she was actually being considered, especially when most of the panel judges were already aware of her presentation skills. See Docket No. 130 at pp. 48-49. Gonzalez testified that she felt humiliated in front of the other two (2) candidates that had no experience at Abbott, whereas she had demonstrated her skills for thirty (30) years. As a result, she told the judges that "she was uncomfortable with the process" and that she was "withdrawing from the presentation process." Id. at p. 50. Adames, however, understood that Gonzalez was withdrawing from the whole application process. See Docket No. 126 at p. 31.

On December 19, 2013, Mendez wrote Gonzalez an email confirming her withdrawal from the selection process. See Docket No. 130 at p. 51. The following day, Plaintiff responded expressing her continued interest in the position and explaining her reasons for feeling uncomfortable with the presentation portion of the evaluation. See id. at pp. 51-52. On that same day, Mendez replied that they had already chosen another candidate. See id. at p. 52. On

December 19, 2013, the day of the presentations, Glorimar Molina[9] was selected for the position of Senior Product Manager and she was so notified on December 20, 2013. See Docket No. 125 at p. 107. The Company then shut down for the Holidays on December 20, 2013 until January 7, 2014, and Plaintiff went on vacation. See Docket No 153 at p. 75; Docket No. 130 at p. 52. Accordingly, Plaintiff's job performance evaluation period for the year 2013 must have ended on December 20th, the day after the presentations took place. See Docket No. 123 at p. 22.

Upon return from the Holidays in January of 2014, Plaintiff applied to the Regional Sales Manager (Level 18) position that was posted. See Docket No. 130 at p. 54. Harris was the hiring manager for this vacancy. See Docket No. 153 at p. 44. A month later, on February 27, 2014, Plaintiff received her performance evaluation for the year 2013, in which she received a rating of "Partially Achieved" expectations or "PA." See Docket No. 126 at p. 19. It is a Company practice that if an Abbott employee obtains a PA in his/her job performance evaluation, the employee is ineligible for promotion. See Docket No. 153 at p. 46. To that effect, the jury heard Adames testify that if an employee does not achieve expectations during the Company's employee evaluation process, several repercussions may ensue. These include the following: (1) the employee may not receive salary increases; (2) the employee may require an improvement plan; (3) the employee's incentive bonus and merit increase may be impacted; and, (4) the employee cannot be considered for promotion according to Company "policy." Docket No. 125 at pp. 17-20, 72-73. Indeed, Plaintiff believed that she received a PA rating in her evaluation so that she would not qualify for promotion in 2014. See Docket No. 130 at p. 56.

Despite having received a Partially Achieved rating for her performance in 2013, Adames testified that Gonzalez was "considered" for the Regional Sales Manager (Level 18) position

---

[9] In 2015, Glorimar Molina was thirty-three (33) years old and Plaintiff was fifty-five (55) years of age. See Docket No. 126 at p. 3. A significant twenty-two (22) year difference.

that she applied to in January of 2014. See Docket No. 125 at p. 73. Then upon further questioning, Adames changed her tune and stated that Gonzalez was "evaluated" for said position. See id. at p. 74. The court then questioned Adames on the subject, to which she answered that Gonzalez had just "submitted her name for the position." Id. at p. 75. Subsequently, Adames testified that Gonzalez was not considered for the Regional Sales Manager position (Level 18) posted in January of 2014 because Plaintiff failed to meet the minimum expectations of several key job competencies during the "last three years," per an email Harris sent to Gonzalez. See id. at p. 77; Docket No. 153 at p. 52. Despite Adames' testimony, in the Answers to Interrogatories that Abbott submitted during the course of discovery in this case and that Adames signed (Docket No. 125 at p. 42), Gonzalez and Francisco Vargas ("Vargas") were listed as employees who were "considered" for the position of Regional Sales Manager despite the fact that both had obtained a PA rating in their 2013 performance evaluations. See Docket No. 125 at pp. 77-78.

The court notes, however, Plaintiff was a finalist for promotion just one month before applying to the Regional Sales Manager position, for which she was deemed unqualified. At the time Plaintiff became a finalist for the Senior Product Manager position in December of 2013, Kim Perez already knew that Gonzalez's performance warranted a PA rating. See Docket No. 153 at p. 28. But Kim Perez insisted that she did not take Gonzalez's 2013 performance into account during the selection process for the Senior Product Manager position because the Company's "recruiting policy" requires that only the prior year's performance rating be taken into account, see Docket No. 123 at p. 23; Docket No. 155 at pp. 95-96, and Gonzalez had obtained an Achieved Expectations rating in 2012. See Docket No. 155 at pp. 62-63. In fact, Kim Perez testified that she did not share her concerns regarding Plaintiff's current performance with the other members of the selection committee. See Docket No. 123 at p. 23.

Plaintiff disagreed with her evaluation rating and in March of 2014, she requested that the Human Resources department perform an investigation of her results. See Docket No. 130 at pp. 56, 61. Gonzalez also requested to meet with Kim Perez and Harris to discuss her evaluation, and in order to challenge it, she asked that her emails from 2013 be reinstated in her account. See id. at pp. 58-60. According to Plaintiff, the emails contained evidence that she had achieved the goals of her position and completed her assigned projects. See id. at pp. 59-60. However, the Human Resources department responded that the emails could not be retrieved because they had already been deleted. See id. at p. 60.

Plaintiff filed a claim of retaliation before the Equal Employment Opportunity Commission ("EEOC"),[10] and while Plaintiff was attempting to challenge her evaluation, Glamary Perez[11] was appointed to the Regional Sales Manager position. See Docket No. 125 at p. 78. Plaintiff was not interviewed for said post. See Docket No. 130 at p. 54. Although the process began as a competitive one, the Company decided to directly appoint Glamary Perez to the position. See Docket No. 126 at p. 4. Consequently, on March 11, 2014, Gonzalez sent an email to Harris requesting that she be appointed Senior District Manager,[12] which was the position Glamary Perez would leave vacant upon promotion. See Docket No. 125 at pp. 78-79; Docket No. 130 at p. 62; Plaintiff's Exhibit 20. On March 19, 2014, Harris denied her request responding that she had consistently failed to meet Abbott's minimum expectations in several areas for the last three years. See Docket No. 130 at p. 67; Docket No. 153 at p. 46; Plaintiff's

---

[10] See Docket No. 153 at p. 41.

[11] In 2015, Glamary Perez was forty-one (41) years old and Plaintiff was fifty-five (55) years of age. See Docket No. 126 at pp. 3-4. That is a significant fourteen (14) year difference.

[12] Plaintiff had previously occupied the position of District Manager (Level 16) for several years, see Docket No. 129 at p. 8, Docket No. 130 at pp. 53-54; and, she had achieved expectations as an employee in that position, see Docket No. 125 at p. 79.

Exhibit 21. Instead, Harris offered Vickybel Rosario[13] the position of Senior District Manager left vacant by Glamary Perez. See Docket No. 125 at p. 79.

In his email response of March 19th, Harris never told Plaintiff that the Senior District Manager position had already been filled. See Docket No. 153 at pp. 94-95. However, there is evidence on record that by March 4, 2014, a week before Gonzalez's email to Harris, the latter had written an email to Mendez and Adames stating that he wanted to discuss the "backfill succession caused by Glamary's promotion," that is, the "Vicky move," which he thought should to be taken care of before actually announcing Glamary Perez's promotion. See id. at pp. 95-98; Plaintiff's Exhibit 19. Hence, the Senior District Manager vacancy was never posted, and Plaintiff could never apply to it. See Docket No. 130 at p. 67.

In March of 2014, Rocio Oliver, one of the other employees affected by the Reorganization, was offered the position of Senior District Manager (Level 16) for which she did not have to compete. See Docket No. 126 at pp. 48, 50, 59. In addition, Dennis Torres, the other employee affected by the Reorganization, was promoted to Distribution Manager (Level 16) on March 17, 2014. See id. at pp. 52, 60-61; Docket No. 153 at p. 102. Plaintiff, who was their supervisor before the Reorganization, remained at her Level 15 position.

In April of 2014, the Company finalized a document called the Talent Management Review ("TMR") to be sent to corporate. See Docket No. 153 at p. 122; Plaintiff's Exhibit 39. The TMR "is a formal process used to discuss leadership capabilities, strengths and gaps, create an action plan to ensure talent needed will be available to achieve business long range plans. It is the process of identifying and developing individuals with the potential to compete for defined leadership role." Docket No. 153 at p. 112. Harris and his immediate staff, including Kim Perez, prepared the TMR. See id. at p. 113. In the document, Gonzalez had no

---

[13] In 2015, Vickybel Rosario was forty-three (43) years old and Plaintiff was fifty-five (55) years of age. See Docket No. 126 at pp. 3, 5. That is a significant twelve (12) year difference.

developmental actions listed; the TMR just said "N/A" or "not available." <u>See</u> <u>id.</u> at p. 122; Plaintiff's Exhibit 39. Moreover, the document reflected that there was no promotion timing for Gonzalez or potential next moves. <u>See</u> Docket No. 153 at p. 123; Docket No. 125 at pp. 32, 38; Plaintiff's Exhibit 39. According to Adames, this information was not included for Plaintiff because she had obtained a PA in her performance evaluation for 2013. <u>See</u> Docket No. 125 at p. 40. However, Francisco Vargas,[14] another Abbott employee who obtained a PA for his performance in 2013, had promotion timing and potential next moves listed for him in the TMR. <u>See</u> Docket No. 125 at pp. 40-41. In addition, William Palermo, another employee that needed to improve his performance, also had developmental actions listed in the TMR. <u>See</u> Docket No. 153 at pp. 132-133.

According to Harris, it was typical for every employee to have developmental actions in the TMR. <u>See</u> <u>id.</u> at p. 118. Later on in his testimony though, he testified that the developmental actions for employees holding Level 15 positions are not included in the TMR. <u>See</u> Docket No. 152 at p. 120. However, Francisco Vargas and Wilma Diaz,[15] who were also in Level 15 positions, had developmental actions and/or potential next moves listed for them in the TMR. <u>See</u> Docket No. 153 at pp. 128-129.

Finally, in May of 2014, Kim Perez became the General Manager at Abbott upon Harris' departure. <u>See</u> Docket No. 130 at p. 68. Marisabel Aponte then became Plaintiff's supervisor in July of 2014. <u>See</u> <u>id.</u> at p. 68. Gonzalez obtained an AE in her performance evaluation for the years 2014 and 2015 under Aponte's supervision. <u>See</u> <u>id.</u> at pp. 69-70.

---

[14] In 2015, Francisco Vargas was forty-three (43) years old and Plaintiff was fifty-five (55) years of age. <u>See</u> Docket No. 153 at pp. 101-102. That is a significant twelve (12) year difference.

[15] In 2015, Wilma Diaz was fifty-six (56) years old and had held a Level 15 position for the last twelve years, that is, since 2004. <u>See</u> Docket No. 153 at p. 103.

### a. *Failure to Promote*

<u>*Senior Product Manager Position*</u>

In their motion for judgment as a matter of law, defendants argue that Plaintiff was not promoted for the Senior Product Manager position because, unlike the other candidates, she failed to give the presentation that was required and voluntarily withdrew from the selection process. <u>See</u> Docket No. 163 at pp. 12-14. In her opposition, Plaintiff argues that the evidence justified the jury's finding that her withdrawal from the presentation "was reasonable in light of the context in which it took place." Docket No. 170 at p. 27. According to Plaintiff, the following factors contributed to this context: (1) the search for external candidates before making a vacancy announcement internally; (2) deviation from Company policy of favoring qualified internal candidates; (3) Harris' satisfaction with the "external candidate slate" before she was interviewed for the position; (4) panel of judges consisting of potential targets of litigation by Gonzalez; (5) selection committee's discussions about Plaintiff's intention to sue during selection process; (6) discussion of selection process with attorneys; (7) requiring a case presentation for the first time; (8) not investigating her 2013 claims of discrimination and retaliation pursuant to Company policy; and, (9) Kim Perez's incredible assertions that she did not consider Plaintiff's 2013 performance during selection process. <u>See</u> <u>id.</u>

The circumstances that comprise the overall factual picture of this case and enabled to jury to reach its verdict will now be discussed.

As set forth *supra*, before becoming a finalist for the Senior Product Manager position in December of 2013, Plaintiff had asked Kim Perez in March to be appointed to this position. At the time, Perez responded that such position was unavailable, not that Plaintiff wasn't qualified for it. Only five (5) months later, a vacancy for this position was posted on LinkedIn

in August of 2013. Yet, Plaintiff found out through a colleague that the Company was looking *externally* to fill a vacancy for the position she was interested in because Kim Perez did not tell her anything about it when they met to discuss Plaintiff's midyear review in September of 2013. See Docket No. 130 at p. 39. Plaintiff confronted Harris via letter with this information claiming that the failure to inform her of this opening constituted retaliation since at the time, she had already filed her age discrimination claims at the ADU. Harris responded that the Company had not engaged in discrimination or retaliation against her even though he testified not knowing the results of the investigation the Company's legal department was conducting. Therefore, his statements in his response letter were premature and unsupported, to say the least.

And with regards to this investigation, Harris' testimony to that effect was contradicted by Mendez, who testified that the Human Resources department did not conduct an investigation of Gonzalez's claims. Kim Perez also testified during trial that she did not order an investigation of Plaintiff's claims against her, which also evinces a deviation from the Company's policy of investigating *all* employee complaints. The First Circuit recognizes that "pretext can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices." Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 68 (1st Cir. 2008). The jury in this case may have reasonably found this omission to be evidence of pretext.

After receiving Gonzalez's letter, Harris finally ordered the vacancy be announced internally. His email request to Mendez at Human Resources stated that he was already pleased with the "external candidate slate." At the time of this email though, he had not yet reviewed Plaintiff's application or that of any other Abbott employee. In other words, the battle was lost even before it was fought.

During defendants' case in chief, Harris tried to explain the timing of the internal announcement asserting that he had only obtained "budgetary approval" for the position in November of 2013. <u>See</u> Docket No. 153 at p. 43. However, the jury could have reasonably disbelieved him and found that the intention to announce the position internally never existed until Plaintiff complained about the omission. "[T]he irregular timing could have suggested to the jury that a cover-up was afoot." <u>Muñoz v. Sociedad Española De Auxilio Mutuo y Beneficiencia De Puerto Rico</u>, 671 F.3d 49, 57 (1st Cir. 2012). Viewing the facts in the light most favorable to the verdict, the jury plausibly inferred that the Senior Product Manager had not been announced to prevent Plaintiff from applying in retaliation for complaining of age discrimination. The court is not permitted to second-guess the jury's assessment.

To cinch the matter, the jury also heard testimony that the members of the selection committee spoke about Plaintiff's discrimination claim among themselves during the hiring process despite admitting that this information should be irrelevant for promotion purposes. Notwithstanding, they decided to meet with the Company's attorneys before interviewing the candidates, which Adames acknowledged was out of the ordinary. The jury could also have found that the timing of this legal consultation was suggestive of the fact that Plaintiff's claim against defendants was an important consideration in the selection process.

Subsequently, Plaintiff was interviewed by both Mendez and Kim Perez. The latter's testimony with regards to this process may have been received with skepticism by the jury members. First of all, although Kim Perez was the object of Plaintiff's discrimination claims, she testified that she did not recuse herself from the selection committee because she was the hiring manager for the position. Second, Kim Perez testified that she did not consider what she thought was Plaintiff's "deficient" job performance during the current year because according to Company policy, she could only take into account the employee's performance during the

prior year. The jury in this case could have found Kim Perez's assertions under oath to be hard to believe deeming it an almost unsurmountable task to both remain impartial, as well as put aside Plaintiff's subpar performance during the most recent months. Yet, she claimed being able to do both.

"[P]roof that the defendant's explanation is unworthy of credence is ... one form of circumstantial evidence that is probative of intentional discrimination." Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 141 (1st Cir. 2012) (citing Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir.2000)). "An explanation is unworthy of credence when is [sic] suffers from 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions ...' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" Hubbard v. Tyco Integrated Cable Sys., Inc., 985 F. Supp. 2d 207, 228–29 (D.N.H. 2013) (citing Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000)). A reasonable jury could have easily determined that her explanations for remaining in the selection committee and for her approach to the evaluation process were simply implausible, and thus, a pretext for retaliation.

During the course of the selection process, Plaintiff became a finalist along with two other external candidates and was asked to make a case presentation before a panel of judges. To Gonzalez, an Abbott employee for over three decades, this additional requirement was unheard of. What is more, Plaintiff testified that most panel judges had seen her make presentations during the course of her employment as Product Manager. Therefore, they were familiar with her skills. See Docket No. 130 at p. 49. Plaintiff also knew that at least two of the judges, namely, Harris and Kim Perez, were aware of her formal claims of discrimination. Feeling uncomfortable and humiliated, Plaintiff decided to withdraw from the presentation phase of the selection process because she believed the process was a sham.

It is uncontested that the request for a business case presentation was a departure from the ordinary selection process. This may have led the jury to conclude that defendants' real objective was to evaluate the *external* candidates' presentation skills because those were unknown to the judges. Such a conclusion supports Plaintiff's inference that she was not being truly considered for promotion. As a result, a reasonable jury could have found that her withdrawal from the presentation phase of the selection process was warranted since the overwhelming circumstantial evidence showed that her effort and continued participation would have been futile, a finding that is not unheard of in the universe of holdings in employment cases of several other courts. See Miller v. Gruenberg, No. 1:16-CV-856, 2017 WL 1227935, at *6–7 (E.D. Va. Mar. 31, 2017), aff'd as modified, 699 F. App'x 204 (4th Cir. 2017), cert. denied, 138 S. Ct. 2579 (2018) (withdrawal of job application does not bar a plaintiff's discrimination claim of non-selection where there is evidence the plaintiff was coerced into withdrawing from application process); Simpson v. Beaver Dam Cmty. Hosps., Inc., 780 F.3d 784 (7th Cir. 2015) (physician's withdrawal of his application did not bar his race discrimination claims against hospital where chief of staff's warning indicated that it would have been futile for physician to maintain his application); Qu v. Bd. of Regents of Univ. of Minnesota, No. CIV. 08-1843 RHK/JSM, 2009 WL 2900334, at *7 (D. Minn. Sept. 2, 2009)(the withdrawal of an employment application might not undermine a plaintiff's prima facie case if his application would have been futile); Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 762–63 (4th Cir.1998), rev'd on other grounds, 527 U.S. 1031 (1999) (finding that voluntary withdrawal does not show prima facie case of discrimination where there is no indication "it was futile to apply or that [the employer] prevented her from applying"). Pursuant to the foregoing, a reasonable jury could have found that defendants' purported non-retaliatory reason for not selecting her was pretextual.

Defendants' alternative argument in support of their decision not to promote Plaintiff for the Senior Product Manager position is that Glorimar Molina, one of the external candidates, was more qualified than Gonzalez. See Docket No. 163 at pp. 12-14. In their motion, defendants contend that Molina had a degree in business administration and a master's degree in marketing, versus Plaintiff, who did not have any formal education in business administration or any post graduate degrees. See id. at p. 13. In addition, they claim that Molina had more relevant work experience, particularly in the Caribbean market. Id. In her opposition, Plaintiff first argues that she should have been *offered* the position pursuant to the Company's policy of favoring qualified internal employees when filling vacancies. In that respect, Plaintiff argues that defendants deviated once again from established policies in retaliation for having engaged in protected conduct, and instead, selected Glorimar Molina, who is substantially younger than Gonzalez by twenty-two (22) years. See Docket No. 170 at pp. 12-13.

"When an employer claims to have hired or promoted one person over another on the basis of qualifications, the question is not which of the aspirants was better qualified, but, rather, whether the employer's stated reasons for selecting one over the other were pretextual." Rathbun v. Autozone, Inc., 361 F.3d 62, 74 (1st Cir. 2004). "In line with the business judgment rule, '[c]ourts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions.'" Deslauriers v. Napolitano, 738 F. Supp. 2d 162, 179 (D. Me. 2010) (citing Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir.1991)). "Qualifications are notoriously hard to judge and ... more must be shown than that the employer made an unwise personnel decision by promoting 'X' ahead of 'Y.'" Rathbun, 361 F.3d at 74. Nevertheless, "there may be situations in which the difference in qualifications is so stark as to support an inference of pretext." Id. at 75. "Or, perhaps, there may be situations in which a great number of individual employment decisions, each of which arguably can be

justified as a business judgment, may in cumulation present so one-sided a picture as to raise an inference of pretext." Id.

With regards to the candidates' differences in education, the court notes that Plaintiff's degrees, or lack thereof, had not previously prevented Abbott from promoting her to a **Level 18** position, in which she supervised twenty-eight employees, including other supervisors. Considering this information, the jury may have reasonably afforded little credit to this purported non-retaliatory reason for not having selected Plaintiff for a Level 16 position. The jury may have also discounted defendants' grounds for their choice because Molina only had eleven years of total work experience *vis-à-vis* Plaintiff, who had almost thirty years of experience at Abbott. Therefore, this case is definitely not one in which the successful applicant's qualifications are so obviously superior to those of Plaintiff as to undermine the legitimacy of her claims. And in combination with both the age difference and the suspicious circumstances surrounding the selection process that were previously-discussed, the jury may have hardly been persuaded by defendants' assertions that Molina possessed superior qualifications. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

Defendants' "choice between the three candidates was highly discretionary but: 'Discretion may be exercised in ways which are discriminatory or retaliatory.'" Deslauriers v. Chertoff, No. CIV. 07-184-B-W, 2009 WL 1032854, at *31 (D. Me. Apr. 16, 2009), aff'd, 640 F. Supp. 2d 104 (D. Me. 2009) (citing DeCaire v. Mukasey, 530 F.3d 1, 20 (1st Cir. 2008)). Moreover, "the temporal proximity between the [administrative] complaint and the decision not to select [plaintiff] is a significant consideration." Chertoff, 2009 WL 1032854 at *31

(citations omitted). <u>See also</u> <u>Mesnick</u>, 950 F.2d at 828 (finding that evidence of temporal proximity of an employee's protected activity to an employer's adverse action, *inter alia*, is one source of circumstantial evidence that, theoretically, can demonstrate retaliation). In sum, the totality of the circumstances in this case may have led a reasonable jury to conclude that defendants' non-retaliatory reasons to not promote Gonzalez to the Senior Product Manager position were merely a pretext for retaliation after complaining of age discrimination.

<u>*Regional Sales Manager and Senior District Manager*</u>

Defendants also argue that Plaintiff was not qualified for the Regional Sales Manager and the Senior District Manager positions for which she was not selected in early 2014. <u>See</u> Docket No. 163 at pp. 15-17. According to defendants, Plaintiff was rendered ineligible for promotion because of the "Partially Achieved" expectations rating she received in her evaluation. Moreover, defendants argued that Plaintiff lacked the relevant experience for the job both in the Caribbean region and with the distributors sector. In contrast, Glamary Perez, the selected candidate, had a master's degree in business administration and an excellent track record in sales at Abbott.

In her opposition, Plaintiff notes the inconsistencies regarding whether or not she was "considered" for the position. <u>See</u> Docket No. 170 at p. 16. On the one hand, there is evidence on record, such as Abbott's Answers to Interrogatories, that Plaintiff was "considered" for the Regional Sales Manager position despite having received a PA rating. However, Adames' explanations shifted at trial having first testified that Gonzalez was considered and eventually denying it. In addition, Plaintiff also points out that Abbott suddenly aborted the competitive selection process for the position and appointed Glamary Perez, who was fourteen (14) years younger than Gonzalez and had less experience than her.

After learning of Glamary Perez's promotion, Plaintiff requested to be promoted to the position Glamary would leave vacant, but once again, Plaintiff was denied. According to defendants in their motion, the Company offered Vickybel Rosario the position because she was more qualified than Plaintiff, had been identified as a key talent in the TMR process and unlike Plaintiff, had excellent evaluations. See Docket No. 163 at p. 17. In response, Plaintiff argues that she was not promoted to this position in retaliation for having engaged in protected conduct, and points to the events that are temporally proximate to this selection process as evidence of pretext.

First of all, Gonzalez points out that the Company never informed her that Glamary Perez was selected to the Regional Sales Manager position. After finding out on her own, she sent an email to Harris on March 11, 2014 asking if she could be offered Glamary Perez's Senior District Manager position, which would become vacant. See Docket No. 130 at p. 62; Plaintiff's Exhibit 20. On March 19, 2014, Harris responded that she was not qualified for promotion having obtained an unsatisfactory rating in her most recent evaluation and informed her that for the last three years she had demonstrated "several key job competency issues that require significant improvement." Plaintiff's Exhibit 21. Defendants rely on this document to ground their claim that Plaintiff failed to meet expectations. However, Plaintiff rightfully indicates that Harris' assertions therein are mistaken because in at least one of those three years, namely, in 2012, she had obtained an Achieved Expectations rating in her performance evaluation.

Gonzalez also points out that pursuant to the documentary evidence on record, another much younger Abbott employee, namely, Vickybel Rosario, had already been preselected for the Senior District Manager position at the time of Harris' email response. On March 4, 2014, Harris had written an email to Mendez and Adames requesting to "get aligned" on the matter of the "backfill succession caused by Glamary's promotion" before making any public

announcements. <u>See</u> Plaintiff's Exhibit 19. According to this email, Vickybel Rosario, who is twelve (12) years younger than Plaintiff, would be *offered* the position Glamary left vacant before announcing Glamary's promotion. Harris sent this email fifteen (15) days before responding to Plaintiff. However, Harris stayed mum about these personnel moves in his response to Plaintiff.

As can be gleaned from the record, Plaintiff was given an unsatisfactory performance evaluation a month after being selected as a finalist for promotion at the end of 2013. This precluded her from qualifying for promotion in 2014. According to defendants' theory, Gonzalez went on vacation on December 20th, 2013, and when she returned from the Holidays, she was suddenly not a qualified candidate for promotion and had several competency issues that needed immediate improvement, as per Harris' email. And while Plaintiff was attempting to challenge her 2013 performance evaluation to no avail, the Company swiftly and surreptitiously preselected two much younger employees to fill two vacancies that Gonzalez was interested in without having these candidates engage in a competitive process. And although preselection alone does not violate ADEA when it's based on qualifications, courts have found that "preselection is relevant to the employer's motivations and 'operates to discredit the employer's proffered explanation for its employment decision.'" <u>Napolitano</u>, 738 F. Supp. 2d at 181–82 (citing <u>Goostree v. State of Tennessee</u>, 796 F.2d 854, 861 (6th Cir.1986)). <u>See also</u> <u>Ham v. Washington Suburban Sanitary Comm'n</u>, 158 Fed.Appx. 457, 470 (4th Cir.2005) (stating that preselection can support a finding of pretext in conjunction with other evidence); <u>Coble v. Hot Springs Sch. Dist. No. 6</u>, 682 F.2d 721, 728–29 (8th Cir.1982) (finding that evidence of preselection discredited the school district's proffered legitimate explanation)).

"[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 69 (2006). From the evidence as a whole, the jury in this case could have reasonably and sensibly found that defendants' explanations were less than forthcoming. The cumulative effect of defendants' irregularities in the promotional processes, deviations from established policies, shifting explanations, stealthy personnel moves, contradictions and inconsistencies weighed heavily in the minds of the jury. <u>See</u> <u>Santiago-Ramos</u>, 217 F.3d at 56 (finding a plaintiff can establish pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons). All told, the evidence presented at trial was enough to support the jury's finding of retaliation.

Other circumstantial evidence points in a similar direction. For one, not only were defendants selecting substantially younger candidates for vacancies and promotions, but there is also proof that in March of 2014, the other two employees affected by the Reorganization, Oliver and Torres, were promoted to Level 16 positions while Gonzalez, their former supervisor, remained at a Level 15 position. A reasonable jury could conclude from this evidence that these employees were similarly-situated in the face of the Reorganization but were treated differently because of their age or because neither had filed complaints of age discrimination against Kim Perez and the Company. <u>See</u> Docket No. 153 at p. 6.

The record also reflects that the two employees that were over 50 years of age (Wilma Diaz and Gonzalez) were stuck at Level 15 positions, whereas substantially younger employees were being selected or promoted without having to apply or compete for positions. A plaintiff may show that the employer's reason is a pretext for discrimination with evidence of "statistical evidence showing disparate treatment by the employer of members of the protected class."

Mesnick, 950 F.2d at 824. Pursuant to the foregoing, the jury also had sufficient statistical evidence to infer pretext.

Finally, during trial, the Plaintiff stressed the fact that the Company's Talent Management Review document for 2014 had neither "promotion timing" or "potential moves" or "developmental actions" listed for her. See Plaintiff's Exhibit 39. A cursory review of this document shows that this lack of information was a departure from the usual practice. Moreover, the reasons Adames and Harris gave for this lack of information were all proven to be inconsistent, if not false.

From the evidence presented at trial, the court finds that defendants cannot properly argue that there was a complete absence of evidence to support the verdict. On the contrary, the evidence from which the jury could have reasonably concluded that defendants retaliated against the Plaintiff by failing to promote her was overwhelming. Defendants' motion for judgment as a matter of law is thus **DENIED**.

### b. *"Partially Achieved" Performance Evaluation*

Defendants argue that they did not retaliate against Plaintiff by giving her an unwarranted "Partially Achieved" or PA rating in her 2013 performance evaluation. See Docket No. 163 at pp. 14-15. First, they contend that Plaintiff herself admitted that she did not meet deadlines and needed improvement in her communication skills.[16] See id. Second, defendants set forth that pursuant to the applicable law, the only relevant inquiry is whether Abbott

---

[16] In support of this argument, defendants refer to the jury trial transcript where Plaintiff supposedly admitted having "no evidence" that Kim Perez gave her "bad evaluations to discriminate or retaliate against her." See Docket No. 163 at p. 15 (citing Docket No. 130 at p. 106). According to defendants, this admission warrants "the dismissal of all the claims." See Docket No. 163 at p. 15. However, the court found no such content in the cited material. "The court will not do counsel's work," Diaz–Morales v. Rubio–Paredes, 170 F. Supp. 3d 276, 289 (D.P.R. 2016), and ferret the extensive record of this case to find this so-called "admission."

*believed* that Plaintiff was performing below expectations, not whether she *actually* was underperforming or whether Plaintiff subjectively thought she was not. See id.

In response to this argument, Plaintiff pointed out to portions of her trial testimony where she explained how Kim Perez excluded her from meetings and kept important information from her that was essential to the performance of her duties. See Docket No. 170 at p. 13; Docket No. 130 at pp. 42-45. The record reflects that Kim Perez and Plaintiff often had differing explanations for events that transpired during the course of their working relationship as supervisor and subordinate. Nevertheless, a reasonable jury could have deemed Plaintiff's account more credible than Kim Perez's and concluded that the latter sabotaged Plaintiff's ability to achieve expectations in retaliation for Plaintiff having filed claims of age discrimination against her.

Some inconsistencies also stem from the way Plaintiff's supervisors handled her purported performance shortcomings. The first has to do with the implementation of the Company's Performance Improvement Plan ("PIP"). Adames testified that a PIP is usually recommended when an employee obtains a PA in his/her evaluation for **two** consecutive years,[17] and Harris' email stated that Gonzalez had been displaying competency issues for **three** consecutive years.[18] Despite supposedly displaying sub-par performance for three years, Kim Perez did not mention placing Plaintiff in an improvement plan during her 2013 mid-year review in September of 2013. See Docket No. 130 at pp. 38-39. On the contrary, Plaintiff testified that after this mid-year evaluation, she believed she was "on track" to receiving an "AE" ("Achieved Expectations") in her final performance evaluation. But after her formal claim

---

[17] See Docket No. 125 at pp. 90-92.
[18] See Docket No. 153 at p. 52.

of age discrimination at the ADU just a month later, everything took a "downward turn." <u>See</u> Docket No. 170 at pp. 14-16.

The fact remains though, that Gonzalez was *never* placed on a PIP,[19] and according to Plaintiff, neither Harris or Kim Perez devised a plan to enable her to improve her performance.[20] On the other hand, the defendants' position is that they did not deviate from Company policy with regards to their performance evaluations of Gonzalez. According to defendants, they did not place her on a PIP because she did not fail to meet expectations for two consecutive years after having obtained a "satisfactory evaluation" in her 2012 performance review. <u>See</u> Docket No. 163 at pp. 21-22. However, this *post hoc* explanation is not aligned with Harris' statements in his March 2014 email to Plaintiff.

As to the corrective measures taken to help Plaintiff improve, defendants contend that in 2012 they created an "action plan" for Plaintiff to achieve goals "in the areas where she was having difficulties." <u>See</u> <u>id.</u> at p. 22. In support of this statement, defendants refer to her 2012 performance evaluation, which defendants admitted in the previous paragraph was "satisfactory" and precluded the implementation of a PIP. <u>Id.</u> at p. 21. That is, defendants' use of Gonzalez's 2012 performance evaluation is twofold and ambiguous. On the one hand, Gonzalez's 2012 performance evaluation states she achieved expectations and prevented the implementation of a PIP, but this document is also the source of a corrective program devised to aid her improve her consistently deficient performance. Defendants cannot have the cake and eat it too. A reasonable jury could plausibly not believe defendants' knotty theory.

---

[19] <u>See</u> Docket No. 125 at p. 92.
[20] <u>See</u> Docket No. 130 at p. 68.

The second inconsistency in the record has to do with defendants' communications with Plaintiff regarding her performance shortcomings. First, when Plaintiff emailed Harris in November of 2013 stating her interest in the Senior Product Manager position, Harris never mentioned the competency issues that would hinder her possibilities for a promotion. See Docket No. 130 at p. 37. This was just four (4) months before the email he sent her about her ineptitude for promotion. Second, Kim Perez admitted that for the most part, she communicates with her team through emails because that is her management style. See Docket No. 123 at p. 11; Docket No. 155 at p. 58. In fact, Plaintiff had complained back in 2011 that Kim Perez sent a lot of emails. See Docket No. 123 at pp. 10-11. But other than Harris' email of March of 2014, defendants did not produce one email from Kim Perez in which she admonished or corrected or reprimanded Plaintiff for her subpar performance, which defendants now contend is the real reason for Plaintiff's negative evaluation and stasis in a Level 15 position. "The absence of such evidence is a factor that the jury reasonably could consider in deciding this issue." Trainor v. HEI Hosp., LLC, 699 F.3d 19, 28–29 (1st Cir. 2012) (citing Benders v. Bellows & Bellows, 515 F.3d 757, 763–64 (7th Cir.2008)) (defendant not entitled to judgment as a matter of law where defendant was unable to produce memorandum, email, or other internal writing substantiating its non-retaliatory reason for terminating the plaintiff in the midst of negotiations). Plaintiff's formal claim of discrimination and retaliation preceded the documentary evidence defendants produced to prove Plaintiff's performance shortcomings, and given the sequence of events, the jury could have reasonably inferred that the negative performance review was retaliatory.

Another discrepancy is apparent when one juxtaposes defendants' claim that Plaintiff had competency issues for three consecutive years versus the fact that Plaintiff was a finalist for promotion at the very end of 2013, when Kim Perez already knew that she had partially

achieved expectations. And although Kim Perez denied considering what she deemed was Plaintiff's deficient 2013 performance in the selection process for the Senior Product Manager position, as stated *supra*, a jury could have simply rejected this testimony as inherently implausible or unbelievable. But having picked Plaintiff as a finalist out of 114 applicants despite her poor performance is inconsistent with defendants' goal to pick the "best candidate" for the position. In this regard, the court finds that this incongruency credits Plaintiff's theory that her selection as a finalist was a sham intended to deceive her into thinking she was genuinely being considered for promotion, only to have her chances for advancement shattered with a negative performance evaluation shortly thereafter. See Santiago-Ramos, 217 F.3d at 56 (finding a plaintiff can establish pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons).

All told, the court finds that the jury in this case could have reasonably found that defendants deviated from the Company's performance evaluation policy and that the shifting explanations they offered were incongruous. Deviations from established Company policy have been recognized as evidence of pretext. See Dunn v. Trustees of Boston Univ., 761 F.3d 63, 73 (1st Cir. 2014) ("[T]his court has recognized that deviation from established policy or practice may be evidence of pretext."). The overall factual picture in this case could have sensibly led a juror to disbelieve defendants' contention that their decision to give Plaintiff a negative performance review was based purely on a poor performance record. On the contrary, the evidence supported the jury's conclusion that the performance issues that Kim Perez and Harris pointed out to Plaintiff in 2014 in her final evaluation and in *one* email, respectively, were a pretext to cover up their real motive: retaliation for having complained of age discrimination.

In light of the foregoing, the court finds that Plaintiff presented enough evidence of pretext for a jury to reasonably conclude that Plaintiff's negative performance evaluation was unwarranted and resulted from defendants' desire to retaliate against Plaintiff for having filed claims of age discrimination and retaliation. Accordingly, defendants' motion for judgment as a matter of law is **DENIED** on these grounds.

### c. SIF Letter

Pursuant to Article 5(a) of the Workers' Compensation Act, better known as the State Insurance Fund Corporation Law, Law No. 45, P.R. LAWS ANN. tit. 11, § 7, an employee "who suffers a work-related injury or accident and reports to the Fund for treatment, has an absolute right to reinstatement to her position once she is discharged from the Fund (i.e., from medical treatment), provided she seeks reinstatement within twelve months of her injury or accident." Rivera-Flores v. Puerto Rico Tel. Co., 64 F.3d 742, 750 (1st Cir. 1995). See also Martinez v. Eagle Glob. Logistics (CEVA), No. CIV. 09-02265 PG, 2011 WL 3843918, at *20 (D.P.R. Aug. 26, 2011) ("The Supreme Court of Puerto Rico has found that Article 5(a) has two components: (1) the obligation to keep the injured employee's job available for one year and, (2) the obligation to reinstate him after the SIF discharges him, so long as the employee seeks reinstatement within the one year reserve period and he meets the three statutory conditions.")(citing Grillasca–Pietri v. Portorican American Broadcasting Co., Inc., 233 F. Supp. 2d 258, 265 (D.P.R.2002)). "[T]he Puerto Rico Supreme Court has held that seeking SIF benefits qualifies as protected activity under Law 115." Santana-Colon v. Houghton Mifflin Harcourt Pub. Co., 81 F. Supp. 3d 129, 136 (D.P.R. 2014) (citing Feliciano Martes v. Sheraton, 182 P.R. Dec. 368, 395 (2011)).

Defendants argue that the SIF exhaustion notice did not constitute retaliation because a threat is not an adverse employment action "under ADEA" and because they had a legitimate non-retaliatory reason for notifying her that she had exhausted her reserve period. <u>See</u> Docket No. 163 at pp. 10-11. In response, Plaintiff's opposing argument is twofold. First, she argues that the SIFC Law does not "mandate termination of the employee" after the one-year reserve period expires and a reasonable jury could have deemed the letter as an act of retaliation in violation of Law No. 115 because it contained a threat of termination.[21] <u>See</u> Docket No. 170 at p. 9 n.21. Second, Plaintiff purports that defendants are precluded from moving for judgment as a matter of law on this issue because they did not raise it in their Rule 50(a) motions. <u>See</u> <u>id.</u> at p. 4 n.8. In their reply, defendants justify this omission complaining that the judge cut them short during their oral arguments pursuant to Rule 50(a).[22] <u>See</u> Docket No. 177 at p. 3 n.1.

After carefully reviewing defendants' Rule 50(a) motions, the court agrees with Plaintiff in both of her arguments. In their preverdict motions, defendants failed to advance their sufficiency of the evidence argument regarding Plaintiff's Law No. 115 retaliation claim for having reported to the SIF. As previously set forth, a renewed motion for judgment as a matter of law pursuant to Rule 50(b) "is bounded by the movant's earlier Rule 50(a) motion. ... As a result, the movant cannot use such a motion as a vehicle to introduce a legal theory not distinctly articulated in its Rule 50(a) motion." <u>Cornwell Entm't, Inc. v. Anchin, Block & Anchin, LLP</u>, 830 F.3d 18, 25 (1st Cir. 2016) (citing <u>Parker v. Gerrish</u>, 547 F.3d 1, 12 (1st Cir. 2008))(internal citations and quotation marks omitted). The court holds that defendants are

---

[21] "An employee establishes a prima facie case under Law 115 by proving that (1) he engaged in one of the protected activities set forth in the ... Act and (2) he was subsequently discharged, **threatened** or suffered discrimination at work." <u>MVM Inc. v. Rodriguez</u>, 568 F. Supp. 2d 158, 176–77 (D.P.R. 2008)(emphasis ours)(citing P.R. LAWS ANN. tit. 29 § 194a(a); <u>Irizarry v. Johnson & Johnson</u>, 150 P.R. Dec. 155, 164 (2000)). <u>See also</u> <u>Figueroa v. J.C. Penney Puerto Rico, Inc.</u>, No. CIV. 07-1258 JAG, 2010 WL 4861497, at *8 (D.P.R. Nov. 29, 2010) ("Employees must establish that a protected activity was carried out and that termination, **threats** or discrimination were suffered.").

[22] As previously discussed, this court has already held that this argument lacks merit. <u>See</u> *supra* note 7.

procedurally barred from seeking judgment as a matter of law on this issue. In addition, this particular retaliation claim was filed pursuant to Law No. 115,[23] not ADEA, as defendants argued in their Rule 50(b) motion. Defendants simply missed the mark, and thus, their motion for judgment as matter of law as to Plaintiff's Law No. 115 retaliation claim for having reported to the SIF is **DENIED**.

### 3. Willful Violation

Defendants argue that "[t]he evidence presented at trial also does not support a finding of willful violations of federal law." Docket No. 163 at p. 23. According to them, there was no evidence showing "knowing or reckless disregard of Plaintiff's ADEA rights," id., and the jury's finding to that effect is unsupported "given the lack of strength of her prima facie case and the absence of pretext." Id. In response, Plaintiff stated that Abbott waived or forfeited its challenge to the sufficiency of the evidence related to the issue of "willfulness" because it did not raise it in its Rule 50(a) motions, allowed the court to charge the jury on the issue, and failed to object its inclusion in the verdict form. See Docket No. 170 at p. 5. In their reply, defendants justify their omission by complaining that the judge cut them short during their Rule 50(a) motions before the case was submitted to the jury.[24] See Docket No. 177 at p. 3 n.1. Defendants add that Plaintiff also failed to object to the waiver.[25] See id. at p. 3.

---

[23] See *"Fifth Cause of Action" in Complaint*, Docket No. 1 at p. 19.

[24] As previously discussed, this court has already held that this argument lacks merit. See *supra* note 7.

[25] In their reply (Docket No. 177), defendants argue that Plaintiff's failure to object to defendants' waiver of this argument at the Rule 50(a) stage also precludes them from objecting in their Rule 50(b) opposition memoranda. See Docket No. 177. In support of their position, defendants cite U.S. v. Taylor, 54 F.3d 967, 972 (1st Cir. 1995) and include an explanatory parenthetical that states as follows: "(party's pre-verdict oral Rule 50(a) motion did not contain facts and law that entitled it to judgment whereas its post-verdict written Rule 50(a) motion did; because opposing party failed to object when initially made orally, opposing party waived right to object on specificity grounds)." Docket No. 177 at p. 3. But Taylor is a bank robbery criminal case that obviously does not include a discussion of Rule 50 of the Federal Rules of **Civil** Procedure. In addition, the "raise-or-waive rule" discussion it includes is in the context of an attorney's duty to object to an "improper occurrence" or an erroneous ruling by the trial judge." Taylor, 54 F.3d at 972. Simply put, the defendants' "explanatory parenthetical" does not explain any of Taylor's holdings and can only be regarded as an exercise of wishful thinking or fictional creativity

Plaintiff's Second Cause of Action in her complaint was precisely "Willful Violation Under ADEA." Docket No. 1 at pp. 17-18. After carefully reviewing defendants' Rule 50(a) motions, the court agrees with Plaintiff that defendants failed to advance their sufficiency of the evidence argument in regard to this claim in their preverdict motions. As previously set forth, a movant cannot file a Rule 50(b) motion at the post-trial stage introducing a legal theory not distinctly articulated in the Rule 50(a) motion. See Costa-Urena, 590 F.3d at 26 ("It is well-established that arguments not made in a motion for judgment as a matter of law under Rule 50(a) cannot then be advanced in a renewed motion for judgment as a matter of law under Rule 50(b)."). The court holds that, as a result, defendants are procedurally barred from seeking judgment as a matter of law on the issue of willfulness, and their motion is **DENIED** on those grounds.

### 4. Back Pay and Compensatory Damages

Defendants finally argue that Plaintiff failed to present evidence from which a jury could award back pay and compensatory damages. See Docket No. 163 at pp.23-24. Therein, defendants incorporate their discussion in their Motion for New Trial. See Docket No. 164. Accordingly, the court will defer the discussion of this argument to the opinion adjudging said motion.

### III. CONCLUSION

The court finds that defendants that have failed to meet their burden in showing that the evidence in the record, taken in the light most favorable to Gonzalez, is so overwhelmingly

---

on the part of defendants' counsel. Defendants would have this court find that opposing counsel is required to raise an objection in the face of a moving counsel's careless silence or omission. But defendants' logic puts the cart before the horse. At any rate, the undersigned will not deem defendants' counsel misquotation as an attempt to intentionally mislead the Court.

inconsistent with the verdict that no reasonable jury could come to the same conclusion. Although the issue of backpay is **HELD IN ABEYANCE**, the rest of their renewed motion for judgment as a matter of law pursuant to Rule 50(b) is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, October 30, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PÉREZ-GIMÉNE
SENIOR U.S. DISTRICT JUDGE**