## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**LUZ GONZALEZ-BERMUDEZ,**

    Plaintiff,

        v.

**ABBOTT LABORATORIES PR INC., ET. AL.,**

    Defendants.

CIVIL NO. 14-1620 (PG)

## OMNIBUS OPINION AND ORDER

Plaintiff Luz Gonzalez-Bermudez (hereinafter "Plaintiff" or "Gonzalez") filed this action pursuant to the Age Discrimination in Employment Act ("ADEA" or "the Act"), 29 U.S.C. §§ 621-634, against her employer Abbott Laboratories PR Inc. ("Abbott" or "the Company") and her supervisor Kim Perez (hereinafter "Perez"). The Plaintiff also raised supplemental state law claims of age discrimination under Puerto Rico's antidiscrimination statute, Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. LAWS ANN. tit. 29, § 146, et seq., as well as claims of retaliation under Puerto Rico's anti-retaliation statute, Law No. 115 of December 20, 1991 ("Law No. 115"), P.R. LAWS ANN. tit. 29, § 194a. The case proceeded to trial and the jury found in favor of Plaintiff, awarding her $4,000,000.00 ($3,000,000.00 against Abbott; $1,000,000.00 against Perez) in compensatory damages and $250,000.00 in back pay. See *Verdict*, Docket No. 138. Pursuant to the doubling provisions of the applicable local statutes, the court entered judgment in the amount of $8,500,000 in both pack-pay and emotional damages, plus an additional $250,000 in liquidated damages. See Docket No. 150.

Defendants filed several post-judgment motions seeking various remedies. The court already denied defendants' motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. See *Opinion and Order*, Docket No. 187. Therein, the court

held that defendants did not meet their burden of showing that the evidence presented at trial, taken in the light most favorable to Gonzalez, was so overwhelmingly inconsistent with the verdict that no reasonable jury could conclude that defendants discriminated and retaliated against Plaintiff. Id. Pending now before the court are: (1) a motion for new trial or alternatively for remittitur, under Rules 50(b), 59(a) and 59(e) (Docket No. 164); (2) a motion for relief from judgment or order under Rule 60 and/or motion to alter or amend judgment under Rule 59(e) (Docket No. 165). For the reasons that follow, the court **GRANTS IN PART AND DENIES IN PART** the defendants' requests.

## I. STANDARDS OF REVIEW

### A. Rule 59 – Motion for New Trial / Motion to Alter Judgment / Motion for Remittitur

Rule 50(b) of the Federal Rules of Civil Procedure provides that if the court does not grant a motion for judgment as a matter of law made under Rule 50(a), "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50. Pursuant to Rule 59(a)(1)(A), the court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; ... ." Fed. R. Civ. P. 59(a)(1)(A). "A trial court may 'set aside a jury's verdict and order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice.'" Sindi v. El-Moslimany, 896 F.3d 1, 13 (1st Cir. 2018) (citing Sanchez v. P.R. Oil Co., 37 F.3d 712, 717 (1st Cir. 1994)).

Alternatively, Rule 59(e) permits a motion "to alter or amend a judgment[.]" Fed. R. Civ. P. 59(e). "A party may ask a court to amend its judgment under Rule 59(e) of the Federal Rules of Civil Procedure based on newly discovered material evidence or an intervening change in the law, or because the court committed a manifest error of law or fact." Casco, Inc. v. John Deere

Constr. & Forestry Co., No. CV 13-1325 (PAD), 2017 WL 4226367, at *2 (D.P.R. Mar. 30, 2017) (citing Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 72 (1st Cir. 2003); Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)). When a party moves for remittitur pursuant to Rule 59(e), "[i]t is within the district court's discretion 'to order a remittitur if such an action is warranted in light of the evidence adduced at trial.'" Climent-Garcia v. Autoridad de Transporte Maritimo y Las Islas Municipio, 754 F.3d 17, 21 (1st Cir. 2014) (citing Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 29 (1st Cir.2012)). "When a movant attacks an award of damages as excessive, a court may remit the award only if 'the award exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it.'" Sindi, 896 F.3d at 13 (citing Trainor, 699 F.3d at 29).

### B.      Rule 60 – Motion for Relief from Judgment

Rule 60(b) provides that a court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60 (b). "Rule 60(b) grants federal courts the power to vacate judgments 'whenever such action is appropriate to accomplish justice.'" Bouret–Echevarria v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 41 (1st Cir.2015) (quoting Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19 [1st Cir.1992]). "Success under that rule requires more than merely casting doubt on the correctness of the underlying judgment." Fisher v. Kadant, Inc., 589 F.3d 505, 512

(1st Cir. 2009) (citing <u>Karak v. Bursaw Oil Corp.</u>, 288 F.3d 15, 19 (1st Cir.2002)). Rather, "[r]elief under Rule 60(b) is 'extraordinary in nature' and is therefore 'granted sparingly.'" <u>Caisse v. DuBois</u>, 346 F.3d 213, 215 (1st Cir. 2003) (citing <u>Karak</u>, 288 F.3d at 19)). A party seeking relief under Rule 60(b) must demonstrate "at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." <u>Fisher</u>, 589 F.3d at 512.

## II. DISCUSSION

### A. Insufficiency of the Evidence

"A district court's power to grant a motion for a new trial is much broader than its power to grant a [motion for judgment as a matter of law]." <u>Jennings v. Jones</u>, 587 F.3d 430, 436 (1st Cir. 2009). "Under Rule 59, '[t]rial judges have more leeway to grant new trials than to set aside verdicts based on insufficiency of the evidence under Rule 50. They may consider their view of the credibility of the witnesses in doing so, but must be careful not to invade the jury's province." <u>Oliveras-Zapata v. Univision Puerto Rico, Inc.</u>, 939 F. Supp. 2d 82, 84 (D.P.R. 2012), (citing <u>Valentin–Almeyda v. Municipality of Aguadilla</u>, 447 F.3d 85, 103 (1st Cir.2006)). Despite this broad authority, the First Circuit Court of Appeals "[has] often emphasized that a 'district judge cannot displace a jury's verdict merely because he disagrees with it' or because 'a contrary verdict may have been equally ... supportable.'" <u>Jennings</u>, 587 F.3d at 436 (citing <u>Ahern v. Scholz</u>, 85 F.3d 774, 780 (1st Cir.1996)).

In their motion, Defendants move for a new trial claiming the evidence was not sufficient to sustain a verdict of age discrimination and retaliation. <u>See</u> Docket No. 164 at page 24. The court disagrees for the reasons already expressed in the court's Opinion and Order (Docket No.

187), incorporated by reference herein. Contrary to defendants' assertions, the evidence on record strongly supported the jury's verdict. As such, the court declines to set aside the jury's verdict and order a new trial. Defendants' motion for a new trial on insufficiency of the evidence grounds is thus **DENIED**.

## B. Prejudicial Errors

In addition to their claim that the evidence was insufficient to support the verdict, defendants also argue that the cumulative effect of the errors committed during trial proceedings mandates a new trial. The court will discuss each alleged error in turn.

### *Court's Interrogation of Adames*

During her case in chief, Plaintiff's counsel extensively questioned Luz Miriam Adames ("Adames"), Abbott's Human Resources Director, about an email Plaintiff received on March 19, 2014 regarding her performance. The court also asked Adames some questions about the email. The email in question was sent by Matt Harris ("Harris"), Abbott's General Manager in Puerto Rico and the Caribbean at the time. In this email, Harris told Plaintiff that she had failed to meet the minimum expectations of several key job competencies during the "last three years," even though Plaintiff had been a finalist for promotion just some months before he sent this email. Because of this discrepancy, the court expressed confusion after Adames responded to the questions about the Company's promotion and performance evaluation processes. See Docket No. 126 at pages 69-72; see also *Opinion and Order*, Docket No. 187 at page 24.

In their motion, defendants complain that the court caused them prejudice by "extensively" asking Adames questions on the subject, by reiterating Plaintiff's counsel's "loaded" questions and by openly expressing "confusion" after she finished testifying. See Docket No. 164 at page 3. As a result, defendants suggest that the court exceeded its power's limitations and claim that the court's intervention unfairly disadvantaged them.

In response, Plaintiff argues that defendants waived or forfeited any challenge to the court's questioning of the witness by failing to timely object. Plaintiff also responded that the court's attempt to clarify Adames' testimony was within "the acceptable range of judicial behavior." See Docket No. 170 at page 4. However, in their reply, defendants clarify that they did not raise this issue as an independent ground for a new trial, "but rather to give context to why counsel's subsequent improper and unethical comments during closing arguments about Mr. Harris having 'lied,' and the Court's lax treatment of the same, were particularly prejudicial to Defendants' case." Docket No. 177 at page 10.

Per the foregoing, the court finds that, not only did defendants fail to timely object to the court's conduct during trial, but also voluntarily abandoned this claim of prejudice in their reply memo (Docket No. 177). The court will thus now move on to their argument regarding the accusations of mendacity against Harris.

### _Plaintiff's Counsel's Lying Accusations Against Harris_

Defendants argue that attorney for Plaintiff engaged in prejudicial misconduct during closing arguments when he accused Harris of lying. See Docket No. 164 at pages 5-7. Despite timely objecting to the characterization of Harris' credibility, defendants also complain that the court denied their strong objections and failed to admonish Plaintiff's counsel. Defendants stress that these statements were particularly harmful because attorney for Plaintiff made them during his rebuttal argument, after which they did not have an opportunity to reply. The relevant portion of the rebuttal argument in the trial transcript reads as follows:

> MR. GONZALEZ: ... Ladies and gentlemen of the jury, since I sat down after completing my opening statement -- closing argument, one thing hasn't changed; they haven't produced a document, contemporary document, that proves that what they were saying is correct. Not one. Not one. I have four that I want to talk to you about. The first one is his statement was that Ms. Gonzalez had a bad performance for two years. Is that what Mr. Harris says? Why do you have to lie? Why do you have to lie?

MR. CASELLAS: Objection, Your Honor. Objection.

THE COURT: Denied.

MR. GONZALEZ: Why do you have to lie when giving a manual to an employee? Their system, Abbott's system, says that if you "Achieve expectations," you have nothing to worry about, and that is not what Mr. Harris is saying there.

Docket No. 152 at pages 105-106.

Additionally, Defendants claim that the curative instruction the court agreed to give the jury after their renewed objection[1] was "bland" and "amounted to no curative instruction at all." Docket No. 164 at page 10. The curative instruction the court gave the jury after defendants reiterated their objection was the following:

THE COURT: All right. Should we go ahead then with the instructions?

**MR. CASELLAS: Your Honor, will there be a ruling on my motion for a cautionary instruction?**

THE COURT: Yes, there will be a ruling.
...
(WHEREUPON, the following further proceedings were had in open court in the presence and hearing of the jury:)

THE COURT: All right. Now I am going to give you the instructions, and you will hear from the instructions that I give you -- **and I bring this up because there was an argument to the effect that one of the witnesses lied, but as you will hear from my instructions, the credibility of the witnesses is up for**

---

[1] Defendants' renewed objection in the trial transcript reads as follows:
MR. CASELLAS: Whether a witness is lying or telling the truth, that's the function of the jury. I submit that it was a very prejudicial statement for counsel to stand here and tell that a witness is lying on the stand without any foundation on the record that the witness has admitted to saying something that's not correct. That argument by itself is prejudicial, and I request a contemporaneous instruction to the jury to disregard that statement specifically made by counsel during closing, and to instruct the jury that the credibility of all the witnesses is for the jury to decide. The Court overruled my objection. I think there is already a — the jury has been contaminated by counsel's statement that this witness lied, and that's a material issue for the jury of credibility in this case, and **it would be prejudicial if this jury is allowed to make a verdict without a cautionary instruction in that regard.**
Docket No. 152 at pages 108-109 (emphasis ours).

> **you to decide.** And if you, in your consideration of the evidence, you come to a conclusion differently than what was stated in the closing arguments, it's your recollection that prevails, not whatever it was mentioned by the attorneys. So you will be judging the credibility of all the witnesses in this case.

Docket No. 152 at pages 110-111 (emphasis added). Despite the instruction, defendants contend that the prejudice the accusations caused them warrants a new trial.

In her opposition, Plaintiff points out that although the court originally denied defendants' objection, it later did exactly as Plaintiff requested: it gave a timely and curative instruction to the jury. See Docket No. at page 34. Plaintiff contends that defendants are now precluded from raising an untimely objection because they did not object to the court's curative instruction when given and did not request a mistrial before the jury was discharged. See Docket No. 170 at pages 22-23, 34.

The court will address the merits of parties' arguments in turn.

Firstly, the court notes that in support of their request for a new trial, defendants rely heavily on the First Circuit Court of Appeals' holding in Polansky v. CNA Ins. Co., 852 F.2d 626, 627 (1st Cir. 1988),[2] where the Court found that the errors caused by the misconduct of plaintiff's counsel at trial warranted a new trial. In Polansky, the Court cited six instances in which plaintiff's counsel, throughout his closing argument, "was unable to keep his opinions and personal beliefs to himself." Id. at 627. Despite opposing counsel's four objections, "the court stated simply that it would inform the jury that argument of counsel is not evidence ... ."

---

[2] In Polansky, both the Trustee (Glenn Polansky) for a trust that owned an apartment building and the Trust itself (Londonderry Estates Realty Trust) filed breach of contract suit against the insurer (CNA Insurance Company) that had insured against damage to the building. The insurer had refused to reimburse Trustee for the damages the building sustained in a fire on New Year's Day of 1983, in which five people died. The contract also insured Polansky against liability to third parties for personal injuries. CNA refused to reimburse Polansky, claiming that the policy was void because Polansky had set the fire deliberately, had filed a fraudulent claim of damages, and had impeded CNA's investigation of the conflagration through deception. CNA believed that Polansky had set the fire to collect the insurance proceeds and then rehabilitate the apartments. The jury found in favor of plaintiffs and CNA appealed. The First Circuit held that defendant CNA was entitled to a new trial due to the errors caused by the misconduct of plaintiff's counsel at trial. See Polansky v. CNA Ins. Co., 852 F.2d 626 (1st Cir. 1988).

Id. at 628. The Court stated that "[c]ourts have long recognized that statements of counsel's opinions or personal beliefs have no place in a closing argument of a criminal or civil trial." Id. As a result, it found that counsel's statements violated various applicable rules of professional conduct and that the trial court erred "by not dealing promptly with counsel's remarks, upon timely objection by opposing counsel, and informing offending counsel that his expression of personal beliefs and opinions would not be tolerated by the court." Id. But the First Circuit's finding of error is limited to the circumstances in Polansky, where the lower court had simply given a blanket instruction that was not directed at the offending counsel. To that effect, the First Circuit specified that "[a]lone, a blanket instruction from the court that argument of counsel is not evidence will not rectify a violation of this rule." Id. The Court added that "[w]e will be particularly reluctant to condone such behavior of counsel when, as here, there has been timely objection, no provocation by the opposition, and no 'timely curative instruction directed particularly to [counsel's] comments.'" Id. (citing United States v. Young, 470 U.S. 1, 8 (1985)).

In contrast, the court here reconsidered its original denial of defendants' objection and granted their request for a curative instruction. The same was given immediately following the sidebar at the end of rebuttal.  As can be gleaned from the trial transcript, in so doing, the court made specific reference to plaintiff's counsel's comment that one of the witnesses had lied. These important factual differences render Polansky inapposite to the situation at hand, particularly because the instruction given here was both curative and timely.

Alternatively, the court must point out that defendants did not object to the cautionary instruction after it was given. The record shows that after closing arguments, their specific request to the court was granted *as requested*. After the court addressed the matter with the jury, defendants did not complain that the charged instruction was "bland" or not forceful enough until the filing of their post-judgment motions. They waited to complain about the

insufficiency of the cautionary instruction after the verdict was rendered and they lost the case. Their silence, however, rendered them at a huge self-induced disadvantage in light of the applicable rules[3] and caselaw.

To that effect, the First Circuit has held that "silence after instructions ordinarily constitutes a forfeiture of any objections … ." See <u>Muniz v. Rovira</u>, 373 F.3d 1, 6-7 (1st Cir. 2004) (citing <u>Putnam Res. v. Pateman</u>, 958 F.2d 448, 456 (1st Cir.1992)). In <u>Muniz v. Rovira</u>, the defendant argued on appeal "that the district court erred in failing to give a stronger instruction concerning the jury's obligation to render a verdict solely on the basis of the evidence and uncontaminated by undue passion, prejudice, or sympathy." 373 F.3d at 6. The defendant, however, had not requested such an instruction at the charge conference or objected to the charge as given. As a result, the Court held that defendant procedurally defaulted on his claim. <u>Id.</u> (citing Fed.R.Civ.P. 51; <u>Moore v. Murphy</u>, 47 F.3d 8, 11 (1st Cir.1995) (holding that a "failure to object to [jury] instructions at the time, and in the manner, designated by Rule 51 is treated as a procedural default")).

Here, defendants requested a cautionary instruction at sidebar. "The 'purpose of a sidebar objection is to inform the judge exactly what he got wrong and what he should do to remedy the incipient harm.'" <u>Booker v. Massachusetts Dep't of Pub. Health</u>, 612 F.3d 34, 42 (1st Cir. 2010) (holding that employee forfeited objection that jury instruction misstated legal standard applicable to her retaliation claim by not objecting after hearing the final instruction given to jury) (citing <u>DeCaro v. Hasbro, Inc.</u>, 580 F.3d 55, 61 (1st Cir.2009)). The instruction that defendants requested and that addressed their concern was indeed given without objection

---

[3] "Under the procedure outlined in Rule 51, before the trial court charges the jury it must inform the parties of its proposed instructions and receive any objections. … An objection made at that time 'preserves the underlying issue for appeal.'" <u>Booker v. Massachusetts Dep't of Pub. Health</u>, 612 F.3d 34, 40–41 (1st Cir. 2010) (citing Fed.R.Civ.P. 51(b); <u>Surprenant v. Rivas</u>, 424 F.3d 5, 15 (1st Cir.2005)). "The requirements of Rule 51 'are not to be taken lightly' and 'there is a high price to be paid for noncompliance.'" <u>Booker</u>, 612 F.3d at 41 (citing <u>DeCaro v. Hasbro, Inc.</u>, 580 F.3d 55, 60 (1st Cir.2009)).

to the charge. "By failing to object to the ... instruction ... after the charge, [defendants] failed to inform the court that [they] believed the instruction was still problematic, specify the grounds for [their] objection, or give the court an opportunity to correct any error." <u>Booker</u>, 612 F.3d at 42. Pursuant to the foregoing, the court finds that the defendants forfeited their objection to this remedial jury instruction.

Notwithstanding, "Rule 51 sets forth a procedure for parties to request jury instructions and to object to jury instructions as given." <u>Long v. Abbott</u>, No. 2:15-CV-00291-JAW, 2017 WL 2787605, at *3 (D. Me. June 27, 2017) (citing Fed. R. Civ. P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights.")); <u>see also</u> <u>United States v. Brandao</u>, 448 F.Supp.2d 311 (D.Mass.2006) (it is appropriate for district courts to apply plain error review to post-trial objections concerning jury instructions because of district courts' appellate role in these circumstances) *aff'd*, 539 F.3d 44 (1st Cir. 2008). "Under plain error review, we will consider a forfeited objection only if: (1) an error was committed; (2) the error was 'plain' (i.e. obvious and clear under current law); (3) the error was prejudicial (i.e. affected substantial rights); and (4) review is needed to prevent a miscarriage of justice." <u>Aguayo v. Rodriguez</u>, No. 14-1059 (MEL), 2016 WL 3522259, at *3 (D.P.R. June 21, 2016), *aff'd sub nom.* <u>Mejias-Aguayo v. Doreste-Rodriguez</u>, 863 F.3d 50 (1st Cir. 2017). "The requirement that the error is likely to alter the outcome is particularly important in this context because '[a]n erroneous jury instruction necessitates a new trial only if the error could have affected the result of the jury's deliberations.'" <u>Colon-Millin v. Sears Roebuck De Puerto Rico, Inc.</u>, 455 F.3d 30, 41 (1st Cir. 2006) (citing <u>Allen v. Chance Mfg. Co.</u>, 873 F.2d 465, 469 (1st Cir.1989)). "The standard is high, and 'it is rare indeed for a panel to find plain error in a civil case.'" <u>Long</u>, 2017 WL 2787605, at *3 (citing <u>Diaz-Fonseca v. Puerto Rico</u>, 451 F.3d 13, 36 (1st Cir. 2006)).

After careful review of the trial record, the court finds no indication that the accusation lodged against Harris in rebuttal arguments influenced the final outcome of the trial. If defendants really believe that the jury found in favor of Plaintiff simply because opposing counsel said this witness was lying, defendants sorely disregard the weight of the evidence as a whole. <u>See</u> *Opinion and Order*, Docket No. 187. The court's findings in its Opinion and Order denying defendants' motion for judgment as a matter of law overwhelmingly demonstrate that even if plaintiff's attorney engaged in misconduct, it could not have affected the jury's verdict. Hence, no prejudice ensued from Plaintiff's attorney's comments.

Pursuant to the foregoing, defendants' request for a new trial based on the prejudice caused by the accusations against Harris' credibility and the purported insufficiency of this court's curative jury instruction is **DENIED**.

*<u>Other Claims of Improper Comments (Not Objected)</u>*

The same holding goes for defendants' other claims of improper conduct on the part of Plaintiff's attorney. These instances are itemized in footnote 2 of defendants' motion for new trial. <u>See</u> Docket 164 at page 7 n. 2. Therein, defendants list some remarks made during opening and closing arguments, which they now claim constituted misconduct and were unduly prejudicial. Their explanation for not objecting during trial is simply that it "would have been filled with constant interruptions had Defendants objected to each and every one" of these instances. <u>See</u> Docket No. 164 at page 7 n. 2. Thus, the claims of error are admittedly unpreserved.

"Failure to timely object to an attorney's misconduct will frequently result in the denial of a motion for new trial, but such denials typically occur in cases where a party did not raise the objection at all until after the jury had returned a verdict." <u>Fonten Corp. v. Ocean Spray Cranberries, Inc.</u>, 469 F.3d 18, 21 (1st Cir. 2006).

> In general, the law ministers to the vigilant, not to those who sleep upon perceptible rights. Consequently, a litigant who deems himself aggrieved by what he considers to be an improper occurrence in the course of trial or an erroneous ruling by the trial judge ordinarily must object then and there, or forfeit any right to complain at a later time. The policy reasons behind the raise-or-waive rule are rock solid: calling a looming error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs. Then, too, the raise-or-waive rule prevents sandbagging; for instance, it precludes a party from making a tactical decision to refrain from objecting, and subsequently, should the case turn sour, assigning error (or, even worse, planting an error and nurturing the seed as insurance against an infelicitous result).

United States v. Taylor, 54 F.3d 967, 972 (1st Cir. 1995).

This court is reluctant to view defendants' argument as anything more than an unfounded, *post hoc* attempt to dodge responsibility for their strategic decision to avoid "constant interruptions" during trial. "In any event, [defendants] did not lodge a contemporaneous objection to [plaintiff's] closing, and the allowance of the statements certainly did not rise to the level of plain error." Baker v. Goldman, Sachs & Co., 771 F.3d 37, 58 n. 16 (1st Cir. 2014) (citing Portugues–Santana v. Rekomdiv Int'l Inc., 725 F.3d 17, 26 (1st Cir.2013) (where party fails to object to statements made in closing, claim of improper argument reviewed for plain error)). As a result, the court **DENIES** defendants' claims of prejudicial attorney misconduct for statements they failed to object to.

### *Plaintiff's Cruise Trip*

Defendants raised another claim of attorney misconduct on account of a statement Plaintiff's counsel made during his rebuttal argument regarding a cruise ship Plaintiff took during her second medical leave after reporting to the State Insurance Fund (SIF). See Docket No. 164 at pages 8-9. But again, defendants fail to show prejudice.

One of Plaintiff's claims in this case was related to a letter Abbott sent Plaintiff on April 1, 2013, after she reported to the SIF for a second time. In the letter, the Company informed

her that if she did not report to work by April 8th, Abbott would terminate her employment. During Plaintiff's cross-examination, she admitted that she went on a one-week trip on a cruise ship during her medical leave in March of 2013. See Docket No. 130 at pages 127-128. Subsequently at trial, defendants' attorney made reference to this trip during his closing argument:

> And do you remember what the plaintiff was doing while on medical leave? She took a one-week cruise while on medical leave. She was enjoying a one-week cruise. Is it wrong that the employer is going to try to reach out to her; Report to work, Come back to work? You have been out for the State Insurance Fund already. This is the second time.

Docket No. 152 at pages 94-95. While addressing the jurors, defendants' counsel later questioned: "I ask you this: Is a person who celebrates every year at Abbott's Christmas parties and took a one-week cruise while on medical leave worthy of any compensation for emotional distress?" Docket No. 152 at page 104. Plaintiff's counsel responded to these statements in his rebuttal, which prompted defendants' attorney to object:

> MR. GONZALEZ: ... The case is not based on stories. The case is not based on interpretations. What if the psychiatrist at the State Insurance Fund told her to go on a cruise to relax?
>
> MR. CASELLAS: Objection; there is no foundation for that on the record.
>
> THE COURT: Yes, there is testimony on the record; her testimony.
>
> MR. GONZALEZ: So again -- and I am not taking any more time. Whatever your decision, do it on the evidence. Thank you very much.

Docket No. 152 at page 108.

Outside the presence of the jury, while discussing the issue of the accusations laid against Harris, the court also addressed Plaintiff's counsel's statements regarding the cruise ship trip. To this, defendants' attorney responded: "I didn't raise a point about that right now.

I am more concerned about what counsel said about the credibility of our witness [Harris]." Docket No. 152 at page 110. After this discussion with counsel, the court reminded the jury that it was their recollection of the evidence that ultimately prevailed. [4] See Docket No. 152 at pages 111, 115.

In their post-judgment motion, defendants complain that both opposing counsel's and the court's misstatements regarding the cruise trip were unfairly prejudicial because they were not based on the evidence presented. According to defendants, "[t]he jury had an undisputed factual basis from which to infer that the cruise was a joy ride taken by a plaintiff abusing her medical leave privileges, that is, until Plaintiff's counsel purported to debunk the inference with inadmissible evidence." Docket No. 164 at page 8. Defendants now argue that despite the court's previous ruling that statements from Plaintiff's physicians were hearsay,[5] the court mistakenly confirmed Plaintiff's lawyer's mischaracterization of the evidence in the presence

---

[4] The court notes that prior to closing arguments it had already instructed the jury that:

> The closing arguments are not evidence in the case. Each attorney will argue to you the way that they think the evidence -- what the evidence shows, and the inferences that you may draw from facts which have been proven. But if the attorneys say something is a fact that you think or you remember that is differently, it's your recollection that counts, not the attorneys -- not what the attorneys tell you what they think.

Docket No. 152 at page 68. Thereafter, the court specified:

> Certain things are not evidence. **The arguments and the statements of the lawyers are not evidence.** The lawyers are not witnesses. **What they say in their opening statements and in their closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.** If the facts as you remember them from the evidence differ from the way the lawyers have stated them to you, your memory is the one that controls. The questions and the objections of the lawyers are not evidence. The lawyers have a duty to their client to object when they believe a question is improper under the rules of evidence, and **you should not be influenced by the objections or by my rulings on the objections.**

Docket No. 152 at page 115.

[5] The hearsay ruling was as follows:

> BY MR. GONZALEZ:
> Q. Tell us what happened at the State Insurance Fund in terms of the treatment that you were supposed to receive. ... In 2013. In March of 2013.
> A. The doctor suggested --
> MR. CASELLAS: Objection, Your Honor; Rule 701(a) would not permit this lay witness to give a statement about a diagnosis, if any, by a physician or any other health professional. Also, the statement about what the State Insurance Fund doctor may have told her is inadmissible hearsay.
> THE COURT: That's correct, but she can testify as to what she felt.

Docket No. 130 at pages 7-8.

of the jury. Defendants contend that Plaintiff's counsel's misstatement of the evidence should have instead been stricken from the record after their timely objection.

In her opposition, Plaintiff concedes that the record contains no evidence that Gonzalez's physician recommended that she take a cruise ship in order to relax. <u>See</u> Docket No. 170 at page 36. However, Plaintiff disagrees with Abbott's argument that this misstatement was so harmful as to warrant a new trial. <u>See</u> Docket No. 170 at page 36. According to Plaintiff, the impact of an isolated reference to evidence not in the record is *de minimis* when compared to "the waves of evidence" in support of the verdict. <u>See</u> Docket No. 170 at page 14 n. 38.

The court agrees with Plaintiff: counsel's brief reference to a fact of such little significance is not the type of trial error that amounts to a miscarriage of justice. "The trial court may order a new trial if 'the verdict is against the clear weight of the evidence, is based upon evidence that is false, or resulted from some trial error and amounts to a clear miscarriage of justice.'" <u>CardiAQ Valve Techs., Inc. v. Neovasc Inc.</u>, No. 14-CV-12405-ADB, 2016 WL 6465411, at *10 (D. Mass. Oct. 31, 2016) (citing <u>Payton v. Abbott Labs</u>, 780 F.2d 147, 152 (1st Cir. 1985), *aff'd*, 708 F. App'x 654 (Fed. Cir. 2017). Here, neither the misstatement of the evidence or the denial of the objection thereto changed the trial's outcome or amounted to a miscarriage of justice given the weight of the evidence in Plaintiff's favor. Although there was no evidentiary basis on record for Plaintiff's counsel's suggestion and for this court's subsequent assertion, the undersigned concludes, nonetheless, that this misstatement, "in the context of the substantial circumstantial evidence supporting the jury's verdict, did not prejudice [defendants] ... ." <u>United States v. Hughes</u>, 211 F.3d 676, 687 (1st Cir. 2000) (citing <u>United States v. Rodriguez–Cardona</u>, 924 F.2d 1148, 1153–54 (1st Cir.1991) (no plain error where improper remarks in government's closing statement did not affect the outcome of the trial given the strength of the government's case against the defendant)).

The argument that had it not been for this misstatement, the jury would have believed that Plaintiff abused her medical leave by going on a "joy ride" and found in defendants' favor is not only farfetched, but also wishful thinking. As the court sees it, there is not a snowball's chance in hell that, absent the purported misstatement, the jury would have found in favor of defendants. On the contrary, "the record reveals that the jury's verdict could hardly have been the result of passion inspired by the brief remarks of the [plaintiff's counsel] but rather was based upon lengthy testimony [and] vigorous argument … ." United States v. Maccini, 721 F.2d 840, 847 (1st Cir. 1983) (citing United States v. Capone, 683 F.2d 582, 587 (1st Cir. 1982)).

At any rate, under the circumstances of this case, the jury instructions given were sufficient to correct the effect of both Plaintiff's counsel's unfounded suggestion during his rebuttal and this court's denial of defendants' objection. See United States v. MacDonald & Watson Waste Oil Co., 933 F.2d 35, 60 n. 31 (1st Cir. 1991) (finding that government's counsel "marginal" misstatements of facts during closing argument were harmless error, especially given the court's instructions that statements by the lawyers are not evidence); United States v. Maccini, 721 F.2d 840, 847 (1st Cir. 1983) ("Additionally, the impact of the prosecutor's misstatements was lessened, if not completely obliterated, by the trial judge's strong and pointed, curative instructions."). As set forth *supra*, the court instructed the jury on **three** separate occasions that their recollection of the evidence prevailed over attorneys' arguments or statements. Additionally, the court apprised them that they should not be influenced by the court's rulings on objections. Hence, any error in admitting the statement about her cruise ship's medical justification does not rise to the level of plain error. See United States v. Fernandez, 94 F.3d 640 (1st Cir. 1996) (finding that prosecutor's misstatements of evidence did not rise to level of plain error given misstatement's brevity and isolation and judge's later instruction to the jurors that counsel's argument did not constitute evidence, but that their

recollection of the facts controlled); <u>United States v. Flaherty</u>, 668 F.2d 566 (1st Cir. 1981)(arguing evidence not presented is harmless error if the judge, on objection, instructs the jury that closing arguments are not evidence and that the jury's recollections control, and if the absent evidence does not weigh heavily on the other evidence).

Pursuant to the foregoing, the court **DENIES** defendants' request for a new trial on account of the misstatement regarding the cruise ship the Plaintiff took during her medical leave.

### <u>Elimination of Statute of Limitations Jury Instruction</u>

Another issue related to the jury instructions is the subject of a claim of error. In essence, defendants complain that the court mistakenly eliminated a jury instruction that specified that any adverse employment action that took place before January 1, 2013 was time-barred by the applicable statute of limitations (SOL). According to defendants, the ruling was inconsistent with the court's Order finding that Plaintiff had waived pre-January 1, 2013 claims, as well as with the discussions held during the charge conference. Defendants argue that the court's "refusal to charge the jury with the SOL instruction was an error of law and a manifest abuse of discretion because it impermissibly allowed the jury to impose liability and award compensation for time-barred and allegedly adverse employment actions or claims pre-January 1, 2013." Docket No. 164 at pages 14-15. Plaintiff opposes this argument on two grounds: that defendants' claim is unsubstantiated and that pursuant to the totality of the record, it was clear to the jury that the Plaintiff was only seeking compensation for her demotion in March of 2013 and for the retaliation that took place thereafter. <u>See</u> Docket No. 170 at page 27. The court agrees with Plaintiff.

As to the applicable standard of review in these situations, the First Circuit has held that "the judge is not obligated to instruct on every particular that conceivably might be of interest

to the jury ... ." <u>Rosa-Rivera v. Dorado Health, Inc.</u>, 787 F.3d 614, 620 (1st Cir. 2015). Rather, "[a] trial court is obliged to inform the jury about the applicable law, but, within wide limits, the method and manner in which the judge carries out this obligation is left to his or her discretion." <u>Elliott v. S.D. Warren Co.</u>, 134 F.3d 1, 6 (1st Cir. 1998). "Consequently, though both sides have a perfect right—indeed, a duty—to advise the judge what type of instructions they believe are fitting, neither is entitled to dictate the turn of phrase the judge should use to acquaint lay jurors with the applicable law." <u>Elliott</u>, 134 F.3d at 6 (1st Cir. 1998) (citing <u>United States v. McGill</u>, 953 F.2d 10, 12 (1st Cir.1992) (warning that no litigant has a license "to put words in the judge's mouth")).

Now, "the real test is whether as a whole 'the instructions adequately illuminate the law applicable to the controlling issues in the case without unduly complicating matters or misleading the jury.'" <u>Rosa-Rivera</u>, 787 F.3d at 620 (citing <u>United States v. DeStefano</u>, 59 F.3d 1, 3 (1st Cir.1995)). "A refusal to give a particular instruction constitutes reversible error only if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case." <u>Estate of Keatinge v. Biddle</u>, 316 F.3d 7, 17 (1st Cir. 2002) (citing <u>Elliott</u>, 134 F.3d at 6).

Here, after defendants objected to the court's refusal to charge the SOL instruction, the court explained that it did not read it because it deemed it would confuse the jury. <u>See</u> Docket No. 152 at page 134. In this court's discretion, the proffered instructions conveyed the thrust of the applicable law and the record was already clear as to the which were Plaintiff's actionable claims. As explained below, the totality of the trial record gives context to the court's stance.

First of all, both the attorneys' statements and the jury instructions established that Plaintiff's demotion in March of 2013 was the only basis for the age discrimination claim. To begin, Plaintiff's attorney stated during opening statements that "[i]n [Plaintiff's] complaint,

Mrs. Gonzalez alleges that those defendants unlawfully discriminated against her due to her age when they **demoted** her ... ." Docket No. 154 at page 4 (emphasis added). Regarding the demotion, defendants' attorney stated as follows during closing arguments: "[f]urther, there's no evidence of any retaliation. The change to Grade Level 15 became effective in March of 2013,"[6] to which Plaintiff's counsel objected: "[o]bjection, Your Honor; that is not Plaintiff's theory. There is no retaliation with the demotion. Exclusively age discrimination, Your Honor."[7]

 The jury instructions also shed light on the age discrimination issue. The instruction on age discrimination stated that once the Plaintiff has established her prima facie case, which included proving "that she was the subject of adverse employment actions by the defendants, for example, **demotion**..., she is entitled to a rebuttable presumption of age-based discrimination; in other words, that the adverse job action, that is, **demotion**, was caused by her age." Docket No. 152 at page 119 (emphasis added); *Jury Instructions*, Docket No. 132 at page 12. The retaliation instruction, which made reference to the age discrimination claim, stated that "even if you do not find that the defendants discriminated against Ms. Gonzalez on account of her age **on her demotion claim**, you may still find that the defendants retaliated against her for engaging in protected conduct." Docket No. 152 at page 120; Docket No. 132 at page 13 (emphasis added). Finally, the Law No. 100 instruction stated, in relevant part, that:

> In order to trigger the presumption that her **demotion** was discriminatory, Ms. Gonzalez has to establish, first, that she was discriminated, that is, **demoted**, or that the defendants failed to select her for the positions to which she applied; second, that the demotion was without just cause; and third, introduce evidence of

---

[6] Docket No. 152 at page 93.
[7] Docket No. 152 at page 92-93.

the mode of discrimination, in this case age, connected to the **demotion**.

See Docket 152 at pages 123-124; Docket 132 at page 18 (emphasis added). It cannot be questioned then, that the only actionable age discrimination claim (the demotion) was substantially incorporated and specified in the charge to the jury.

As to the claims of retaliation, the record was also unequivocal from the very beginning of the jury trial as to when these actionable instances took place. Throughout the trial, parties' attorneys made clear to the jury that the retaliation claims were limited to the adverse employment actions that took place *after* Plaintiff's demotion in March of 2013.

The first instance of protected conduct took place when Gonzalez reported to the SIF in March of 2013. Plaintiff's closing argument specified that her claim of retaliation for reporting to the SIF in March of 2013 stemmed from the letter she received in April of 2013 threatening her with termination. See Docket No. 152 at pages 76-77, 85. During defendants' turn, their attorney also clarified that: "Plaintiff is now claiming that her reporting to the State Insurance Fund in March of 2013 was retaliation." Docket No. 152 at page 94.

Thereafter, Plaintiff engaged in protected conduct when her attorneys sent letters to defendants and when she filed her administrative complaints. Plaintiff's attorney explained during closing arguments that Gonzalez had engaged in protected conduct on two instances: when her attorneys sent Kim Perez and Matt Harris a letter complaining of age discrimination and when she filed an administrative claim before the Department of Labor's Anti-Discrimination Unit. See Docket No. 152 at page 77. To that effect, defendants' attorney stated in his closing argument that "[c]oncerning retaliation, the letters threatening litigation by the lawyers were in October of 2013. There was a charge at the Equal Employment Opportunity Commission the year later." Docket No. 152 at page 94.

Subsequent to these instances of protected conduct, defendants rejected Plaintiff for promotion in December of 2013 and 2014, and gave her a negative performance evaluation during this time frame. To that effect, Plaintiff's attorney specified during opening statements that "Mrs. Gonzalez ... alleges that she was **subsequently** retaliated against for having engaged in protected conduct when she was rejected for several positions to which she applied within Abbott and when she was given a negative work performance evaluation." Docket No. 154 at pages 4-5 (emphasis added). The record was thus clear that the protected conduct took place in 2013 and that the retaliatory adverse employment actions took place thereafter, well within the statute of limitations period. Hence, all acts of retaliation attached to Plaintiff's protected conduct were timely. As such, the lack of the SOL instruction could not have had any effect on the jury's appraisal of the retaliation claim.

Pursuant to the foregoing, the court finds that it did not err by not including the SOL instruction: the instructions and the record were clear as to the relevant charges. "Ultimately, a trial judge has wide latitude in deciding how to best communicate complicated rules to the jury," Rosa-Rivera, 787 F.3d at 620, and the court here did not abuse this discretion.

In the alternative, "[a] district court's refusal to grant a proposed jury instruction only constitutes reversible error if it was prejudicial when evaluating the record as a whole." McDonald v. Town of Brookline, 863 F.3d 57, 64 (1st Cir. 2017) (citing McKinnon v. Skil Corp., 638 F.2d 270, 274 (1st Cir. 1981) ("As long as the judge's instruction properly apprises the jury of the applicable law, failure to give the exact instruction requested does not prejudice the objecting party.")). Even though defendants contend that the sizeable award the jury gave Plaintiff demonstrates that she was compensated for events that were time barred, their argument is mere conjecture and lacks support. On the contrary, the court believes the opposite. The bulk of defendants' discrimination and retaliation against Plaintiff took place

within the statute of limitations period: (1) the demotion in March of 2013; (2) the threat of termination in April of 2013 after reporting to the SIF a second time; (3) her exclusion from meetings and withholding of necessary information to perform her duties during 2013; (4) the rejection for promotion in December of 2013; (5) the purportedly unwarranted negative performance review for 2013; (6) the determination to not interview her for promotion in January of 2014 after having just been a finalist for promotion; and, (7) the lack of consideration for promotion in March of 2014. That is, whatever happened before January of 2013 is peanuts when compared to what happened thereafter. In sum, defendants' speculative argument affords them no relief and they have failed to establish prejudice.[8]

Finally, within the context of this claim of error, defendants also explained that they did not object to the verdict form (to presumably include dates) because the court had agreed to charge the jury with the SOL instruction. See Docket No. 164 at page 13. However, after objecting to the court's omission to give out the SOL jury instruction, defendants did not object to or challenge the content of the verdict form. At the time of the objection to the elimination of the SOL instruction, the verdict form had already been distributed to all parties, reviewed and approved. So, after objecting, defendants were well aware that "[n]one of the interrogatories in the Verdict Form had a time restriction. None was circumscribed to alleged adverse employment acts that were not time-barred."[9] Docket No. 164 at page 14. They waited

---

[8] See Giorgio v. Duxbury, No. CV 12-11171-LTS, 2016 WL 1229041, at *8 (D. Mass. Mar. 28, 2016) ("Duxbury has 'pointed to nothing, other than the amount of the award, that might indicate to us that the verdict was the product of undue passion.' ... However, the 'size of the jury's award does not prove the verdict was the product of undue passion.' ... Accordingly, there is no basis upon which to conclude that the jury's verdict was the result of undue passion or unfair prejudice."); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989) (finding jury verdict of $4,500,000 compensatory damages and $600,000 punitive damages against various police officers in civil rights deprivation case was not influenced by passion and prejudice **simply because of size of award**).

[9] The court notes that prior to and during the trial, both parties had the opportunity to submit proposed jury instructions and proposed verdict forms. Much like the final verdict form approved, defendants' *proposed* verdict form (Docket No 120), filed *before* the parties' charge conference, also did not include any time restriction. At the time of defendants' docket filing, the court had yet to agree to charge the jury with the SOL instruction. Hence, defendants' argument that they did not object to the final version of the verdict form because the court had agreed to include the SOL instruction is hardly convincing. The truth of the matter is that they never sought to include such language in the first place.

until after the jury returned an unfavorable verdict to raise this objection for the very first time in their motion for new trial. Therefore, the court agrees with Plaintiff[10] that defendants failed to raise a timely objection to the verdict form. See Azimi v. Jordan's Meats, Inc., 456 F.3d 228 (1st Cir. 2006) (finding that pursuant to Fed. R. Civ. P. 51, employee failed to timely raise punitive damages awards issue where he did not object to jury instructions or to special verdict form until he filed motion for new trial).

Notwithstanding, "[f]ailures to object, unless a true waiver is involved, are [mere forfeitures that are] almost always subject to review for plain error." Diaz-Fonseca, 451 F.3d at 35 (citing Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir.2002). But even plain error review would not help defendants when it is hardly plain that the court erred in choosing not to charge the jury with an instruction on an issue that was clear considering the totality of the record and when no prejudice has been shown. See Quiles v. Kilson, 346 F. Supp. 2d 376, 379 (D. Mass. 2004), aff'd, 426 F.3d 486 (1st Cir. 2005)(denying plaintiffs' motion for a new trial on grounds that verdict form was in error because it failed to limit scope of claim where plaintiffs failed to timely object after jury instructions were delivered and plaintiffs failed to establish that verdict was in error and resulted in clear miscarriage of justice).

Based on the foregoing, the court concludes that the refusal to give the instruction requested by defendants is not error and no prejudice was caused by the omission. Accordingly, the court finds that the instructions given to the jury in this case were proper. The defendants' motion is **DENIED** on those grounds.

### Evidence of Spoliation

Defendants also raise claims of error as to some of the court's evidentiary rulings before and during trial. In their motion, defendants first argue that the court erred by allowing

---

[10] See Docket No. 170 at page 5 n. 12.

Plaintiff to introduce evidence to prove that defendants spoliated her e-mails after a litigation hold should have been in place at Abbott. <u>See</u> Docket No. 164 at pages 15-16. According to defendants, even though the jury was not charged with an adverse inference instruction, the evidence of destruction itself amounted to a sanction and was both inflammatory and unduly prejudicial. <u>See id.</u> In other words, according to defendants, merely questioning witnesses about the lost emails and the legal hold, or lack thereof, was a sanction.

Defendants cite two cases in support of their position that the discovery sanction was unwarranted. The first is <u>Booker v. Massachusetts Dept. of Health</u>, 612 F. 3d 34 (1st Cir. 2010). In <u>Booker</u>, the plaintiff contended that "the court erred in refusing to instruct the jurors that they could draw an adverse inference if they found that defendants destroyed documents relevant to Booker's claims." <u>Booker</u>, 612 F.3d at 45. The plaintiff had submitted a proposed jury instruction on the spoliation of evidence, and during trial, **witnesses were questioned** about their deletion of email correspondence concerning Booker. Notwithstanding, the court refused to give the requested instruction finding defendants had not engaged in the "deliberate spoliation of evidence" that merited such an instruction. Booker objected and appealed, but the First Circuit affirmed and held that the district court had not abused its discretion "in finding that she failed to lay an adequate foundation for a spoliation instruction." <u>Id.</u> at 46.

The second case cited by defendants is <u>Virtual Studios, Inc. v. Stanton Carpet</u>, 2016 WL 5339601 (N.D. Ga. 2016). In <u>Virtual Studios</u>, the district court found that plaintiff had a duty to preserve electronically stored information and "failed to take reasonable steps to preserve the e-mails at issue." <u>Id.</u> at *10. The court concluded that sanctions were warranted because the loss of the e-mails was prejudicial to defendant insofar as the e-mails at issue would have been "helpful in evaluating the merits of the Parties' positions." <u>Id.</u> However, the court declined to

impose sanctions under Rule 37(e)(2)[11] of the Federal Rules of Civil Procedure because defendant had not shown that plaintiff acted in bad faith or with the requisite intent. Id. at *11. Instead, the court found the evidence indicated that the plaintiff was only negligent or careless, which was insufficient to allow the court to give an adverse jury instruction against it. Id. As a result, the court decided to impose sanctions under Rule 37(e)(1) instead, concluding "that the appropriate sanction [was] to allow [defendant] to introduce evidence concerning the loss of the e-mails and to make an argument to the jury concerning the effect of the loss of the e-mails." Id.

Contrary to defendants' contention, a reading of these cases actually supports this court's ruling on the matter. In its Opinion and Order, this court held that Abbott had a duty to preserve Plaintiff's emails and that she was prejudiced by Abbott's failure to do so. See Docket No. 106 at page 38. This failure, whether for carelessness or bad faith, warranted sanctions. However, the undersigned was unable to grant the Plaintiff's specific request for an adverse inference instruction to the jury because of the lack of evidence at the summary judgment stage that Abbott had acted with the requisite "intent to deprive" under Rule 37(e)(2). Id. Hence, the court decided to allow evidence to that effect during trial. Specifically, this court held that "[t]he matter .. be revisited at trial and determined upon completion of the presentation of evidence." Id.

---

[11] Rule 37(e)(2) of the Federal Rules of Civil Procedure states as follows:
> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(2).

During trial, Adames testified about the Company's legal hold policy and the issue of the lost emails. Adames admitted that she could not produce the emails Plaintiff had requested in order to challenge the negative performance review she received for 2013. See Docket No. 125 at page 60. Adames also testified that while she understood that the litigation hold applied to her own e-mails, she was not sure how Abbott's legal department applied the policy in regard to Gonzalez's emails. See Docket No. 126 at pages 22-23. Notwithstanding, Adames believed that Gonzalez could have saved the emails herself. See Docket No. 126 at page 67.

Plaintiff also testified about the deleted e-mails during her direct examination. She claimed these messages detailed her achievements and her efforts to complete projects. At the time Plaintiff requested them, defendants had rejected her for promotion to an available vacancy because she was purportedly not meeting expectations. According to Plaintiff, however, these messages would have allowed her to properly refute the performance rating she received. See Docket No. 130 at pages 59-60. Attorney for defendants did not object during this line of questioning. On the contrary, during cross examination, defendants' counsel went into detail about the failed litigation hold and, in turn, attempted to place the blame of the lost emails onto Plaintiff by suggesting that she failed to preserve those emails herself. Id. at 128-130.

As stated by Plaintiff in her opposition, Gonzalez "decided not to seek an adverse inference instruction regarding the spoliation issue." Docket No. 170 at pages 37-38 n. 71. Yet defendants *still* complain. Despite their failure to object and the testimony they themselves elicited during Plaintiff's cross-examination, they now complain that the court *erroneously* allowed proof on the destruction of these e-mails. Worse yet, in support of their argument, defendants cite a case that precisely supports the undersigned's evidentiary ruling: that when a party fails to preserve evidence when litigation is anticipated, and this negligence or

carelessness causes prejudice to the other party, the court may allow the prejudiced party to introduce evidence about this loss and make an argument to the jury concerning the effect of this loss. See Virtual Studios, 2016 WL 5339601, at *11. The court is thus at a loss to understand how the cases defendants cite support the opposite of what this court held. Nevertheless, the court will not do their legwork.

"It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). "[A] litigant has an obligation to spell out its arguments squarely and distinctly,' or else forever hold its peace." Id. The court finds that defendants failed to meet this burden with regards to the issue of spoliation. Accordingly, the defendants' motion is **DENIED** on the grounds that the court erred in allowing evidence of spoliation to be introduced at trial.

### Admission in Evidence of Plaintiff's Lawyer's Letter

Defendants argue that the court erred by allowing three exhibits to be introduced into evidence, namely: (1) Plaintiff's notice of age discrimination charge sent to Harris and Perez by Plaintiff's attorney and dated October 15, 2013 (Plaintiff's Exhibit 8); (2) an e-mail dated March 11, 2014, written by Plaintiff and sent to Harris and Perez complaining of age discrimination and retaliation (Plaintiff's Exhibit 20); and, (3) an e-mail dated November 18, 2013, sent by Harris to Adames with Plaintiff's letter of November 18, 2013 attached, in which Plaintiff informed Harris that she knew a vacancy was only announced externally and stating she felt discriminated and retaliated against by not having been informed (Plaintiff's Exhibit 30). During trial, defendants objected to the admissibility of these documents because they purportedly contained "unsubstantiated statements and conclusions of law made by counsel and plaintiff of 'discrimination' concerning the 'illegality' of Defendants' actions. They were

inadmissible hearsay and improper lay opinions or should have been excluded as not probative or unfairly prejudicial." Docket No. 164 at page 16. Defendants argue that the court's error was prejudicial when coupled with the court's other errors. Id.

In support of their claim, defendants cited the rules of evidence, as well as Polansky, 852 F.2d at 629. In the cited portion of the case, the First Circuit simply held that Polansky's attorney's remarks during opening and closing statements referring to the decedents' families' claims against the insurer were "completely irrelevant" to the claims being tried before the jury because "[t]hese families were not parties to the suit and this argument was made for clearly inflammatory purposes." Polansky, 852 F.2d 629. The court is mystified as to how Polansky's holding supports defendants' argument that the documentary evidence in question should have been deemed inadmissible. Defendants simply do not explain. And if defendants attempt to imply that this evidence was unduly inflammatory, the facts of Polansky are clearly inapposite, and thus, useless for comparison purposes. Once again, the court feels the need to stress that "[t]he court will not do counsel's work," Gonzalez-Bermudez v. Abbott Labs. PR Inc., 214 F. Supp. 3d 130, 156 (D.P.R. 2016), and independently find grounds for their argument or make connections where there obviously are none.

What is more, contrary to defendants' argument, this court has previously deemed that comparable exhibits are admissible in evidence. One of such cases is Colon-Fontanez v. Municipality of San Juan, 671 F. Supp. 2d 300, 312 (D.P.R. 2009), aff'd, 660 F.3d 17 (1st Cir. 2011), where this court summarily dismissed a municipal employee's complaint against the Municipality of San Juan and others, alleging defendants discriminated and retaliated against her on the basis of her disability in violation of the Americans with Disabilities Act (ADA), as well as other federal and state statutes. One of the documents the court considered was a letter that the Municipality sent to plaintiff, in which it denied her request for advance sick leave and

noted her pattern of absenteeism. The plaintiff objected to the admissibility of this letter "**without citing any authority**, on the basis that the letter constitutes inadmissible hearsay." Id. at 312 n. 16 (emphasis added). Instead, the court agreed with the defendant and held "that the letter is admissible because it is a business record, allowed under Federal Rule of Evidence 803(6) 'Records of Regularly Conducted Activity.' In addition, the letter is relevant not for the truth of the matter asserted, but for its effect on the recipient." Id.

Another such example is Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1 (1st Cir. 2007), where the plaintiff, a career municipal employee, appealed the district court's dismissal of her claim of political discrimination and retaliation against the municipality, its mayor, and its vice mayor. Among other things, the First Circuit reviewed the district court's limited admission into evidence of some letters exchanged between the plaintiff and defendants. One of these letters sent by "[plaintiff's] attorney to the mayor's office served the purpose of giving the defendants notice of a claim." Id. at 11. A second letter from plaintiff's attorney to the mayor reiterated plaintiff's request for a transfer, and a third letter announced his intention to file a lawsuit. See id. at 12. Upon review of a motion in limine, the district court had "allowed the Letters into evidence, but only 'for the limited purpose of negating defendants' contention that plaintiff herself requested a transfer.'" Id. at 7. The Court of Appeals reversed the district court's determination and stated that "[plaintiff] should have been permitted to use the Letters as evidence that the mayor personally had notice of her claims, an indispensable element of her theory of liability, rather than simply as evidence that she had not requested a transfer ... ." Id. at 12 (1st Cir. 2007).

The same rulings hold here: the exhibits in question were properly admitted into evidence as both business records and proof of defendants' knowledge that Plaintiff engaged in protected conduct and believed she was the victim of illegal discrimination and retaliation. This

knowledge was a crucial element of Gonzalez's case. See Torres-Medina v. Dep't of the Army, No. CV 15-2085 (BJM), 2018 WL 3155001, at *3 (D.P.R. June 25, 2018) ("Causality assumes a link between the decision-maker, the protected activity, and the adverse action. The link consists of knowledge. To that end, the retaliating party must be aware of the protected activity that he is believed to be retaliating against.") (citations omitted).

Defendants' argument is not only without legal merit, but also accommodating. Curiously, they do not seek to exclude documents containing language that would be deemed similarly conclusory under their line of reasoning, but that instead, supports *their* theory of the case. Plaintiff noted this lack of consistency on defendants' part, responding that Abbott's argument is "bogus" because other exhibits contain "unsubstantiated statements" that would have to be excluded on the very grounds defendants now raise to challenge the admission of other exhibits. See Docket No. 170 at page 9 n. 22. For example, Plaintiff's Exhibit 21 (Harris' email response to Plaintiff denying any discrimination or retaliation against her and explaining that her poor performance accounted for lack of promotion) is an example of Harris' own conclusory statements as to *the absence* of discrimination and retaliation against Plaintiff and her lack of qualifications for promotion. If Plaintiff's counsel's letter and her e-mail complaints could not be admitted into evidence for fear that a jury would believe the truth of the matter asserted, then by the same token, Harris' email conclusorily stating that Plaintiff was *not* discriminated against and was unqualified for promotion should have also been stricken on the same grounds. Yet, defendants conveniently disregard the content of Harris' e-mail for purposes of their claim of error. Defendants' contradictory stance thus prompts the court to remind their attorneys of a well-known idiom: "counsel in glass houses ought not throw stones." Serra v. Quantum Servicing, Corp., 747 F.3d 37, 40 n. 2 (1st Cir. 2014).

Pursuant to the foregoing, the court **DENIES** the defendants' claim that the court erred by allowing the admission into evidence of the exhibits listed *supra*.

### *Cumulative Effect*

Defendants also request that the court order a new trial based on the cumulative error doctrine. "In assessing whether reversal is warranted under the cumulative-error doctrine, this court evaluates whether '[i]ndividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect.'" United States v. Candelario-Santana, 834 F.3d 8, 26 (1st Cir. 2016) (citing United States v. Laureano–Perez, 797 F.3d 45, 79 (1st Cir. 2015)). "Of course, '[a]bsent any particularized error, there can be no cumulative error.'" Candelario-Santana, 834 F.3d at 26 (citing Williams v. Drake, 146 F.3d 44, 49 (1st Cir. 1998)).

In the case at hand, there were either no such errors or they were not deemed prejudicial. As such, the court finds the cumulative error argument to be meritless. See Granfield v. CSX Transp., Inc., 597 F.3d 474, 492 n. 14 (1st Cir. 2010) (declining to order a new trial based on the cumulative error doctrine where district court committed no errors).

## B. Back Pay Award

### *Remittitur*

The jury awarded Plaintiff $250,000 in back pay. See *Verdict*, Docket No. 138 at page 2. In their motion, defendants argue that the court should vacate the back pay award because there was no evidentiary support for this amount. See Docket No. 164 at page 21. Alternatively, defendants contend that the back pay award is excessive and "must be remitted to no more than $79,134.57, which is the maximum amount awardable for back-pay that could be sustained on the admissible evidence." Id. Per defendants' calculation, this amount is "the differential between her current salary since March 2013 at the grade level 15 position, and her salary at

the grade level 18(I) position that ceased to exist in March 2013." See id. at page 19 n. 11. In other words, the annual differential between both grades ($26,378.19) multiplied times three (3) years (2013-2016) yields the suggested amount. Id.

In her response, the Plaintiff "agrees with Abbott that her back pay amounted to $26,378.19 per year." Docket No. 170 at page 38. However, she disagrees with "the length of time during which the back pay should be calculated. Gonzalez's back-pay from March 18, 2013 until October 31, 2016 amounts to 43 ½ months at a monthly rate of $2,198.18 ($26,378.19 ÷ 12) for a total of $95,620.83." Id. at pages 38-39. Despite Plaintiff's concession, defendants insist in their reply that no evidentiary support existed for an award of back pay. See Docket No. 177 at pages 12-13.

"With respect to economic damages such as backpay, 'the jury is free to select the highest figures for which there is adequate evidentiary support.'" Oliveras-Zapata, 939 F. Supp. 2d at 85 (citing Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 29 (1st Cir.2010) ). Here, Plaintiff testified that after her demotion from a grade 18 to a grade 15 in March of 2013, she no longer had stock options available,[12] her base salary was reduced by approximately $10,000,[13] her prospective salary increases were frozen because she was capped in that lower grade,[14] the company car was a lower level car,[15] and her incentive bonus decreased by half or more.[16] In addition to Plaintiff's testimony, Plaintiff's Exhibit 29 contains the figures defendants used to calculate their suggested salary differential. See id. at page 19 nn. 10 & 11. In light of the foregoing, the court finds that there was sufficient support on the record for the jury to find that a back pay award was warranted.

---

[12] Docket No. 129 at page 14.
[13] Docket No. 129 at page 22.
[14] Docket No. 129 at pages 23-24.
[15] Docket No. 130 at pages 71-72.
[16] Docket No. 130 at page 72.

Although a back pay award was appropriate, the court agrees with defendants that the amount of the award was excessive. "When a movant attacks an award of damages as excessive, a court may remit the award only if 'the award exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it.'" <u>Sindi v. El-Moslimany</u>, 896 F.3d 1, 13 (1st Cir. 2018) (citing <u>Trainor v. HEI Hosp.</u>, LLC, 699 F.3d 19, 29 (1st Cir. 2012)). Thus, the court **GRANTS IN PART and DENIES IN PART** defendants' request that the back pay award be remitted to an amount supported by the evidence. The back pay award is hereby reduced to $95,620.83, which is the monthly differential of $2,198.18, corresponding to the forty three and a half (43½) months between her demotion in March of 2013 until entry of judgment in October of 2016.

### *No Doubling Under Local Law*

The jury in this case made a finding of willfulness. <u>See</u> *Verdict*, Docket No. 138 at page 2. "Willfulness is an issue in ADEA cases because the statute entitles a prevailing plaintiff to doubled backpay in situations involving 'willful violations.'" <u>Sanchez v. Puerto Rico Oil Co.</u>, 37 F.3d 712, 721 (1st Cir. 1994) (citing 29 U.S.C. § 626(b)). Before entering judgment, Plaintiff moved the court to enter an award of liquidated damages equal to the back pay award and to double the back pay award in the compensatory damages calculation under local law. <u>See</u> Docket No. Docket No. 143. The court granted this request (Docket No. 149) and entered judgment accordingly (Docket No. 150).

In a separate motion for relief from judgment or to alter or amend judgment (Docket No. 165), defendants argue that the court erred by essentially tripling the back pay award. In her response, Plaintiff simply made reference to the arguments set forth in her original request that these damages be tripled when a finding of willfulness exists. <u>See</u> Docket No. 170 at page 1 n. 1.

The main ground for defendants' argument is this district court's holding in <u>Pratt v. Premier Salons, Inc.</u>, 181 F. Supp. 3d 158 (D.P.R. 2015), where a jury found in favor of employees, awarded back pay and emotional damages, and found that defendants acted willfully in discriminating against employees on the basis of their age. Like here, the back pay award was *not* exclusively limited to the ADEA claim. <u>See id.</u> at 160 n. 2. After the plaintiffs in <u>Pratt</u>[17] moved to amend the judgment, Judge Pedro A. Delgado ruled that the employees were entitled to twice the amount the jury had awarded for back pay under the liquidated damages provision of the ADEA, but not to an additional doubling of this amount under Puerto Rico's Law 100. <u>See id.</u> at 161. The court did not believe it was "feasible to bypass the Puerto Rico Supreme Court's description of Law No. 100," and its most recent decisions unequivocally characterizing the local statute's doubling mechanism as punitive. <u>Id.</u> at 160 (citing <u>Ramirez Ferrer v. Conagra Foods PR</u>, 175 P.R. Dec. 799, 816, 826 (2009); <u>Guardiola Alvarez v. Depto. de la Familia</u>, 175 P.R. Dec 668, 681–682 (2009); <u>Cruz Roche v. De Jusus</u>, 182 P.R. Dec. 313, 327 (2011); <u>Belk Arce v. Martinez</u>, 146 D.P.R. 215, 240 (1998); <u>Lopez Vicil v. ITT Intermedia</u>, 142 P.R. Dec. 857 (1997)). Accordingly, the court imposed punitive liability by awarding back pay and liquidated damages for the same amount under the ADEA, but denied the request for an additional doubling of the base back pay award to increase that liability under Law No. 100. <u>Pratt</u>, 181 F. Supp. 3d at 161. The court's objective was precisely "to prevent the double recovery that plaintiffs request." <u>Id.</u> at 160 n. 2.

The undersigned finds the conclusion in <u>Pratt</u> to be well-reasoned an on-point, and thus, **GRANTS** defendants' request (Docket No. 165). The Plaintiff's award will include back pay

---

[17] The court notes that the plaintiffs in <u>Pratts</u> were represented by the same attorneys as Gonzalez. Hence, Plaintiff's attorneys are thoroughly familiar with Judge Pedro A. Delgado's holding. The court will refrain from discussing whether it believes that Gonzalez's attorneys purposely misled the court in their original motion (Docket No. 143) by omitting any reference to this case. Nevertheless, attorneys are strongly cautioned against this practice going forward.

and liquidated damages for the same amount, but the amount of the back pay award will not be included in the doubled compensatory damages calculation under the local statutes.

## C. Remittitur of Compensatory Damages

The jury in this case awarded Plaintiff $4,000,000 in compensatory damages ($3,000,000 - Abbott; $1,000,000 - Kim Perez), before doubling under the local statutes. See *Verdict*, Docket No. 138. In their motion, defendants argue that the jury's compensatory damages award must be vacated, or alternatively remitted, because it was excessive and disproportionate to the proven injury. See Docket No. 164 at pages 22-24. Defendants characterize the evidence regarding the nature of Plaintiff's suffering and medical conditions as meager, noting that "Plaintiff did not offer in evidence any medical records or medical expenses, nor did she offer medical expert testimony to buttress her claim of mental anguish." Id. at page 22. Defendants also point out that, in contrast, she admitted she took a one-week cruise during her medical leave, and attended the Company's holiday parties and kick off meetings, where she had a good time. As a mitigating factor, defendants contend that although she may have feared for her job, defendants never terminated her from her employment. Id. at page 24. In short, defendants contend that Gonzalez's testimony regarding her emotional damages was too general and unspecific, and as such, did not warrant such a large award. Defendants suggest that the court remit "the total award to no more than $100,000 total ($90,000 - Abbott; $10,000 - Mrs. Perez), which is the highest amount of damages for emotional distress for which there is adequate evidentiary support." Id. at page 24 (citing Koster v. Trans World Airlines, Inc., 181 F.3d 24, 36 (1st Cir. 1999) (affirming remittitur from $716,000 to $250,000 in age discrimination case with evidence of anxiety, insomnia, damaged family life and heartburn, but no evidence that plaintiff ever sought medical treatment)).

In response, Plaintiff references several cases where the jury awarded large sums to the employee-plaintiff. See Docket No. 170 at pages 39-42. Plaintiff argues that the sum is warranted because, among other things, she was the victim of not one, but **six** different adverse employment actions in less than two years. See Docket No. 170 at page 42. Finally, Gonzalez restates the emotional injuries suffered through the years, such as: the lack of job security, the lack of upward mobility, the negative impact on her self-esteem, the rejection she has suffered, and the fear of continuing to work with Kim Perez as General Manager. Id. at 43. In sum, Gonzalez concludes that the court should not alter the jury's award.

As previously set forth, "a district court has discretion to order a remittitur if such an action is warranted in light of the evidence adduced at trial." Trainor, 699 F.3d at 29. "Remittitur is a practice used in connection with civil cases tried by jury, whereby the court may grant the plaintiff an election to remit a stated portion of the amount awarded as damages, or submit to a new trial." Santos Arrieta v. Hosp. Del Maestro, Inc., No. CV 15-3114 (MEL), 2019 WL 4060466, at *12 (D.P.R. Aug. 28, 2019) (citations omitted).

In the case at hand, the defendants complain about the award's excessiveness, arguing that the sum is not consonant with the evidence. The First Circuit has "noted that 'the obstacles which stand in the path of' such claims of excessiveness 'are formidable ones.'" Smith v. Kmart Corp., 177 F.3d 19, 30 (1st Cir. 1999) (citing Wagenmann v. Adams, 829 F.2d 196, 215 (1st Cir.1987)). "Translating legal damage into money damages is a matter peculiarly within a jury's ken, especially in cases involving intangible, non-economic losses ... ." Travers v. Flight Servs. & Sys., Inc., 808 F.3d 525, 540 (1st Cir. 2015) (citations and quotation marks omitted). Hence, the court "will not disturb an award of damages because it is extremely generous or because we think the damages are considerably less." Muñoz v. Sociedad Española De Auxilio Mutuo y Beneficiencia De Puerto Rico, 671 F.3d 49, 61 (1st Cir. 2012) (citing Koster, 181 F.3d at 34).

"Remittitur is called for where an award is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 44 (1st Cir. 2011) (citing Acevedo–Garcia v. Monroig, 351 F.3d 547, 566 (1st Cir.2003)). "In reviewing an award of damages, the district court is obliged to review the evidence in the light most favorable to the prevailing party ... ." Wortley v. Camplin, 333 F.3d 284, 297 (1st Cir. 2003).

In this case, the evidence supporting the award for compensatory damages consisted of Gonzalez's own testimony. During trial, Gonzalez testified that when she was informed of her demotion she suddenly felt her chest tighten and other symptoms of anxiety. See Docket No. 130 at page 5. She immediately saw the Company doctor, who referred her to the State Insurance Fund. Id. at 6. She was placed on rest, but this period was cut short when she received a letter from the Company stating that if she did not return to work shortly, she would lose her job. Id. at pages 8-9. She reported to the SIF's doctor and requested to be sent back to work even though she still "did not feel well" because she "could not be left without a job." Id. at page 9. After Gonzalez returned to Abbott, she experienced a myriad of work-related discriminatory and retaliatory incidents that took seven days of trial to address. A summary of these events can be found in the court's Opinion and Order of October 30, 2018 (Docket No. 187), and is hereby incorporated by reference.

It stemmed from Gonzalez's testimony that on top of the anxiety that the news of her demotion caused, she also endured additional pain and suffering. Plaintiff spoke about the humiliation she felt when she was a finalist for promotion along with two individuals with no experience at Abbott[18] and when Kim Perez wanted her to attend a seminar for beginners, even though she had been in the Company for more than thirty years.[19] Plaintiff also testified that

---

[18] Docket No. 130 at page 50.
[19] Docket No. 130 at pages 120-121.

she endured a pattern of hostility against her, felt discriminated against, and feared losing her job.[20] Gonzalez also admitted at trial that she was still in treatment with her psychiatrist.[21] Although she did not present any medical testimony to bolster her claim of emotional damages, it has long been held that "such testimony although helpful is not required to show emotional harm … ." Tuli, 656 F.3d at 45 (citing Koster, 181 F.3d at 35).

The question here boils down to whether remittitur of the jury's $4 million compensatory damages award should be granted. Having heard the evidence, the court finds that the award Plaintiff received was *excessively* generous, even when she suffered emotional damages for some years. The court recognizes that a "jury's assessment of the appropriate damages award is entitled to great deference,"[22] but the trial evidence does not support such a large award, particularly where Plaintiff did not detail her symptoms, did not lose her job, and admitted to feeling more "comfortable" and "at ease" since working under her new supervisor.[23]

The court must now determine the appropriate amount, an exercise in which "[a]wards in comparable cases are instructive." Aponte-Rivera v. DHL Sols. (USA), Inc., 650 F.3d 803, 811 (1st Cir. 2011). In addition to the cases defendants and plaintiff cited for guidance, the court independently examined remittitur issues and damages awards upheld in the employment discrimination and retaliation context in our Circuit. See McPadden v. Wal-Mart Stores E., L.P., No. 14-CV-475-SM, 2016 WL 4991488, at *3 (D.N.H. Sept. 16, 2016) (finding jury award of $500,000.00 in compensatory damages for workplace discrimination claims was generous and substantial but not grossly disproportionate to plaintiff's emotional injuries and mental suffering after being fired); Oliveras-Zapata, 939 F. Supp. 2d 82 (D.P.R. 2012) (remitting

---

[20] Docket No. 130 at pages 72-73.
[21] Docket No. 130 at page 134.
[22] Guzman v. Boeing Co., 366 F. Supp. 3d 219, 228 (D. Mass. 2019) (citing Monteagudo v. Asociacion de Empleados del Estado Libre Asociado, 554 F.3d 164, 174 (1st Cir. 2009)).
[23] Docket No. 130 at page 70.

"grossly disproportionate" award of $1,100,000 in compensatory damages to $500,000, where former employee filed claims alleging violations of the ADEA, Title VII, and Puerto Rico law, and evidence of compensatory damages consisted entirely of his own often conclusory testimony asserting emotional distress and economic hardship, but he did not seek any medical or psychological help); Wirshing v. Banco Santander de Puerto Rico, 254 F. Supp. 3d 271, 276 (D.P.R. 2015) (finding jury's $351,018.34 compensatory damages award was commensurate with noneconomic damages awards that have been upheld in the employment discrimination context); Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 554 F.3d 164 (1st Cir. 2009) (finding that jury's award of $333,000 in compensatory damages to employee for her sexual harassment claims against employer, under Title VII and Puerto Rico laws, was neither grossly excessive as would shock conscience of Court of Appeals, nor exaggeratedly high, precluding remittitur of damages award, since award was proportionate to harm suffered by employee and commensurate with non-economic compensatory damage awards in other Title VII and employment discrimination cases); McDonough v. City of Quincy, 452 F.3d 8, 22 (1st Cir.2006) (upholding $300,000 award where "bulk of the award" was for emotional distress in the form of humiliation, damage to reputation, and strained family relations); Rodriguez–Torres v. Caribbean Forms Mfg., Inc., 399 F.3d 52, 64 (1st Cir.2005) (affirming $250,000 emotional distress award where plaintiff testified that employment discrimination caused her marriage to suffer and a depression "for quite some time" even though testimony was unsupported by expert medical evidence).

"It goes without saying that 'converting feelings such as pain, suffering, and mental anguish into dollars is not an exact science'... ." Guzman v. Boeing Co., 366 F. Supp. 3d 219, 228 (D. Mass. 2019) (citing Correa v. Hosp. San Francisco, 69 F.3d 1184, 1198 (1st Cir. 1995)).

But after careful review of the record and analogous cases, the court **GRANTS IN PART** the defendants motion requesting remittitur and hereby finds that $450,000 ($400,000 against Abbott; $50,000 against Kim Perez)[24] is the maximum award that can be justified based on the facts of this case. The $450,000 award, if accepted by Plaintiff, is then doubled to $900,000.00 pursuant to the Puerto Rico statutes. If Plaintiff refuses to remit, a new trial will be held on <u>all</u> issues, not only the issue of damages.[25]

### III. CONCLUSION

Pursuant to the foregoing, the court hereby **GRANTS IN PART and DENIES IN PART** the defendants' "Motion and Memorandum of Law for a New Trial" (Docket No. 164) and **GRANTS** the defendants' "Motion for Relief from a Judgment or Order under Rule 60 and/or Motion to Alter or Amend Judgment under Rules 59(e)" (Docket No. 165). The court remitted the back pay award to $$95,620.83. The court also remitted the compensatory damages award against Abbott to $400,000 and against Kim Perez to $50,000, both of which are doubled pursuant to local law. The total award is as follows:

| | |
|---|---|
| Back Pay | $95,620.83 |
| Liquidated Damages | $95,620.83 |
| Compensatory Damages (Abbott) | $800,000.00 |
| Compensatory Damages (Perez) | $100,000.00 |
| **Total** | **$1,091,241.66** |

---

[24] Although defendants submit that the award against Kim Perez is unsupported by the evidence, <u>see</u> Docket No. 164 at page 24, the court disagrees. Gonzalez's workplace complaints began when Kim Perez became her direct supervisor and the court will not disturb the jury's finding of liability.

[25] A new trial on all issues is warranted because "given the nature of the claims raised by Plaintiff, her damage claims are so intertwined with her underlying claims regarding liability that a retrial on solely damages would result in juror confusion too substantial to overcome with instructions and caveats from the court." <u>Nieves v. Municipality of Aguadilla</u>, No. 3:13-CV-01132 JAF, 2015 WL 3932461, at *11 (D.P.R. June 26, 2015).

Plaintiff shall inform the court **within 30 days** of entry of this order if she will remit to the amount ordered above. If Plaintiff refuses to remit, the court will order a new trial be held.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 30, 2019.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**